1  WENDY C. YORK, SBN 166864
2  TIMOTHY B. NELSON, SBN 235279
   **YORK LAW CORPORATION**
3  1111 Exposition Boulevard, Building 500
   Sacramento, CA 95815
4  Telephone: 916-643-2200
   Facsimile: 916-643-4680
5
   Attorneys for Plaintiff and the Class
6

*ORIGINAL FILED*

*FEB 28 2008*

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  ROBERT WATTS, on behalf of himself         CASE NO.:
11  individually and all others similarly situated,

                                              CV  08        1296

12              Plaintiffs,

13       vs.                                  **CLASS-ACTION COMPLAINT**
                                              **AND DEMAND FOR JURY TRIAL**  JT
14  ALLSTATE INDEMNITY COMPANY, an
    Illinois corporation; ALLSTATE
15  INSURANCE COMPANY, an Illinois            BY FAX
    corporation; ALLSTATE PROPERTY
16  AND CASUALTY INSURANCE
    COMPANY, an Illinois corporation; and
17  DOES 1 through 100, inclusive,

18              Defendants.

19

20       Plaintiff ROBERT WATTS, ("Plaintiff"), on behalf of himself individually and on behalf

21  of all others similarly situated, brings this class-action complaint against Defendants ALLSTATE

22  INDEMNITY COMPANY, ALLSTATE INSURANCE COMPANY, and ALLSTATE

23  PROPERTY AND CASUALTY INSURANCE COMPANY (hereinafter "ALLSTATE or

24  "Defendants") alleging the following:

25  ////

26  ////

27  ////

28
                                  -1-

10357287.tif - 2/29/2008 10:37:34 AM

**INTRODUCTION**

1.     This is a class action brought by Plaintiff ROBERT WATTS, on behalf of himself and on behalf of all others similarly situated, against Defendants ALLSTATE for various causes of action.

2.     This Class Action Complaint asserts claims for relief for the following: 1) breach of contract; 2) bad faith; 3) breach of the implied covenant of good faith and fair dealing; 4) fraud/misrepresentation; 5) unfair competition; and 6) racketeer influenced and corrupt organizations violations.

3.     Plaintiff ROBERT WATTS petitions this Court to allow him to represent and prosecute claims against Defendants ALLSTATE in class action proceedings on behalf of all those similarly situated.

**I.**

**JURISDICTION**

4.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2), because complete diversity exists between the plaintiff and each defendant, and the amount in controversy exceeds $75,000.   Defendant ALLSTATE CORPORATION was incorporated in Delaware, and Defendants ALLSTATE INDEMNITY COMPANY and ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY were organized in Illinois.   Plaintiff and many others similarly situated reside within the state of California.

5.     This Court has jurisdiction over Plaintiff and Class Members' Racketeer Influenced and Corrupt Organization claim under 18 U.S.C. §§ 1964(a) and (c).

/ / / /

/ / / /

6.     This Court has jurisdiction over Plaintiff's and Class Members' claims for injunctive relief and restitution and other ill-gotten benefits arising from Defendants ALLSTATE's unlawful and/or unfair business practices under Business & Professions Code §§ 17203 and 17204.

## II.

## VENUE

7.     Venue as to Defendants ALLSTATE is proper in the Northern District of California pursuant to 28 U.S.C. § 1391.  Defendants ALLSTATE either maintain headquarters or other offices, transact business, and/or have agents in the Northern District of California, and Defendants ALLSTATE are otherwise within this Court's jurisdiction for purposes of service for process.  Defendants ALLSTATE also operate numerous offices and auto-repair shops in the Northern District of California.  Finally, a substantial portion of the transactions and wrongs that are the subject of this Complaint, including the failure to inspect and repair seat belts and seat belt pretensioners, occurred in substantial part in the Northern District of California.  Defendants ALLSTATE have received substantial compensation in the Northern District of California by doing business in the Northern District of California and engaging in numerous activities that have had and continue to have an effect in the Northern District of California.

8.     The obligations and liability referenced in this complaint arose in the Northern District of California and elsewhere in the country.  The unlawful acts alleged herein have a direct effect on Plaintiff and those similarly situated throughout the Northern District of California and throughout the country.

/ / / /

/ / / /

/ / / /

-3-

## III.

## PARTIES

**A.     Plaintiff**

**ROBERT WATTS**

9.     Plaintiff ROBERT WATTS is an individual and a resident of California.  Plaintiff ROBERT WATTS purchased and/or renewed an auto policy from ALLSTATE during the time period in question.  Plaintiff ROBERT WATTS brings this Class Action on behalf of himself and on behalf of all individuals who are similarly situated.

**B.     Defendant ALLSTATE Insurance Company**

10.     Defendants ALLSTATE INDEMNITY COMPANY, ALLSTATE INSURANCE COMPANY, and ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY ("Defendants", "ALLSTATE", or "Defendants ALLSTATE") have insured and continue to insure millions of drivers, many of whose cars have been involved in collisions in which the vehicle's seat belt tensioners activate.  Defendants ALLSTATE instituted a uniform policy and scheme to refrain from underwriting the inspection and replacement of seat belts in post-collision ALLSTATE-insured vehicles.  This policy violates many of ALLSTATE's various insurance agreements and endangers the safety of its insureds.

## IV.

## OVERVIEW OF ALLSTATE'S BAD FAITH AND WRONGFUL CONDUCT

11.     This class-action lawsuit arises out of an ongoing wrongful scheme and common course of conduct by ALLSTATE, one of the largest auto insurers in the country, to blatantly deny its policyholders the benefits due under their automobile insurance policies and callously expose its policyholders to danger of physical injuries or death.  The purpose of this scheme was, and is, for ALLSTATE to improve its profitability by refusing to replace, repair, or inspect

-4-

seatbelts in its policyholders' vehicles that were damaged and made unsafe in automobile collisions.

12.    ALLSTATE has provided and continues to provide automobile insurance coverage to Plaintiff and members of the putative class (collectively referred to hereinafter as "Class Members") by issuing automobile insurance policies (hereinafter "auto policies" or "auto policy") and policy endorsements throughout the State of California during the Class Period (as defined herein). These auto policies and endorsements provided automobile collision insurance and/or comprehensive automobile insurance to Plaintiff and Class Members for vehicles listed in the insurance policy declarations (hereinafter referred to as ALLSTATE-insured vehicles). Plaintiff and Class Members previously paid and continue to pay all premiums due under their auto policies and endorsements for each of their ALLSTATE-insured vehicles, and they have satisfied and continue to satisfy all other conditions the policies require them to perform.

13.    During the Class Period ALLSTATE has utilized a standard form auto policy and endorsement, which ALLSTATE prepares and issues to its nationwide sales force from its home office in Illinois. All of the ALLSTATE policyholders have the same rights, and ALLSTATE has the same obligations under the terms of that standardized form auto policy and endorsement. Plaintiff and Class Members' form auto policies and endorsements with ALLSTATE provide that ALLSTATE will "repair or replace" damaged property as a result of automobile accidents. The form auto policies and endorsements require ALLSTATE to restore Plaintiff and Class Members' automobiles to their "physical condition at the time of loss."

14.    Upon information and belief, Plaintiff alleges that all passenger automobiles sold in the United States during the Class Period have been equipped with seat belts. Most, if not all, seat belts in automobiles sold in the United States during the Class Period included the following parts or components:  (1) a lap and or shoulder belt, which is a length of webbing material

-5-

designed to rest over the seat occupant's lap and chest; (2) anchors, which secure the seat belt to the automobile; (3) a buckle, which is designed to lock the seat belt into place around the seat occupant; (4) a retractor, which is a spool connected to the belt webbing and is designed to retract the belt and take slack out of the belt in the normal process of wearing and adjusting the seat belt; (5) a retractor locking mechanism, which is designed to lock the seat belt's retractor spool based on the car or the seat belt's movement; (6) a "tensioner," "pretensioner," or "tensioner system" (hereinafter collectively referred to as "tensioner"), which is designed to tighten up any slack in the seat belt webbing by pulling in on the seat belt in the event of a collision.  The entire seat belt assembly including the aforementioned parts and components are hereinafter referred to collectively as "seat belt(s)."  Seat belts operate to lock and/or take the slack out of the belt webbing in the event of a collision thereby protecting vehicle passengers and drivers from serious injury or death.

15.   Plaintiff further alleges, upon information and belief, that seat belts are designed for one use and not multiple accidents.  Most, if not all, automobile owner manuals in the United States during the Class Period have required that seat belts be inspected by a certified and/or qualified technician or replaced after an auto accident occurs.  The impact in an accident reduces the effectiveness of a seat belt permanently because it elongates the webbing and it may damage or render inoperable other parts of the seat belt assembly including the retractor locking mechanisms, the anchors, and/or the tensioners.  Problems such as excessive slack, broken locking mechanisms, or faulty tensioners leave the seatbelt incapable of providing protection to the occupants of a vehicle and may actually cause serious injuries in the event of an accident.

16.   Plaintiff further alleges that during the Class Period the manufacturers of the seat belts in Plaintiff and Class Members' ALLSTATE-insured vehicles and/or the vehicle manufacturers have cautioned that seat belts must be inspected and/or replaced after an

automobile collision.  The seat belt and vehicle manufacturers have further warned that the failure to inspect, maintain, or replace seat belts after a collision can result in serious injury or death. These recommendations have appeared in vehicle and part manuals and industry guidelines that ALLSTATE had knowledge of throughout the Class Period.

17.    Based upon information and belief, Plaintiff alleges that ALLSTATE was aware of studies which concluded that seat belts in vehicles involved in an accident would be subject to future failure and should be checked for possible damage and/or replaced to avoid likely danger to vehicle occupants.

18.    Plaintiff further alleges on information and belief that during the Class Period ALLSTATE had knowledge that proper inspection of seat belts requires a number of steps, including but not limited to: examination and testing of the belts by a qualified examiner, examination and testing of the seat belt hardware, road testing, and/or examination of the warning lights.  Further, ALLSTATE has acknowledged and adopted the industry standards on collision repairs, including but not limited to standards developed by the Inter-Industry Conference on Collision Repairs ("I-CAR"), which require a full and proper inspection of seat belts and seat belt systems.

19.    Upon further information and belief, Plaintiff alleges that during the Class Period ALLSTATE knew that (1) seat belt manufacturers and vehicle manufacturers required that seat belts be replaced or inspected by a certified and/or qualified technician after an auto accident occurred; (2) that insurance industry standards required the proper inspection of seat belts after an accident; and (3) the failure to inspect or replace seat belts in post-collision vehicles could result in serious injury or death.

20.    Despite knowing that seat belts had to be replaced or inspected and that the failure to do so could result in serious injury or death, ALLSTATE adopted a uniform policy to refuse to

-7-

pay for seat belt replacement or inspection in any ALLSTATE-insured vehicle involved in an automobile accident.   Pursuant to and as part of this policy ALLSTATE has uniformly or routinely refused to conduct, authorize, or pay for the inspection of seat belts or seat belt parts or otherwise replace the seat belts on vehicles involved in collisions.   ALLSTATE failed to disclose this policy to Plaintiff and the Class Members and further acted to conceal this policy from its policyholders.

21.     Plaintiff is informed and believes and thereon alleges that, despite knowing the proper techniques for and the industry standards related to seat belt inspection and repair, ALLSTATE did not train its employees to inspect seat belts or important seat belt parts during the Class Period.  ALLSTATE instead trained its employees to avoid writing the inspection or repair of seat belts into estimates for repair of vehicles involved in a collision.

22.     Plaintiff is informed and believes and thereon alleges that during the Class Period Defendant ALLSTATE adopted uniform policies and practices that actually or constructively notified ALLSTATE affiliated auto-repair shops that ALLSTATE was unwilling to authorize the post-collision repair or inspection of seat belts and/or seat belt parts in Plaintiff and Class Members' ALLSTATE-insured vehicles.   ALLSTATE further refused to authorize payment or pay for the inspection, repair, or replacement of seat belts or seat belt parts by auto-repair shops during the Class Period.

23.     At the time ALLSTATE adopted its policy to refuse the repair or inspection of seat belts, ALLSTATE knew or had reason to know that the refusal to repair or replace seat belts or seat belt parts increased the likelihood that ALLSTATE's policyholders would sustain serious bodily injury or death.  ALLSTATE further knew that the failure to underwrite the post-collision repair or inspection of seat belts or seat belt parts in Plaintiff and Class Members' ALLSTATE-

-8-

insured vehicles amounted to an incomplete restoration of its policyholders' vehicles, in violation and breach of Plaintiff and Class Members' ALLSTATE auto policies and endorsements.

24.     Plaintiff is informed and believes and thereon alleges that Defendant ALLSTATE has accomplished its California and federal law violations through systematic policies, procedures, and practices that permitted ALLSTATE to wrongfully avoid underwriting the post-collision repair or inspection of Plaintiff and Class Members' seat belts in their ALLSTATE-insured vehicles.  Through its systematic policies, procedures, and practices ALLSTATE has breached its auto policy and endorsement insurance contracts with Plaintiff and Class Members and committed first-party insurance bad faith, as well as unlawful, unfair, and fraudulent business practices.

25.     Plaintiff is informed and believes and further alleges that ALLSTATE owns and operates its own national chain of auto-repair shops, in part to facilitate the implementation of its wrongful and uniform policy to refrain from underwriting the post-collision repair or inspection of seat belts or seat belt parts in Plaintiff and Class Members' ALLSTATE-insured vehicles.

26.     Plaintiff is informed and believes and thereon alleges that Defendants ALLSTATE wrongfully instituted a uniform policy failing to underwrite the post-collision repair or inspection of seat belts or seat belt parts in Plaintiff and Class Members' ALLSTATE-insured vehicles in order to increase its profits.  Plaintiff further alleges that ALLSTATE actively concealed this policy from its policyholders, including Plaintiff and Class Members, and was willing to risk the future cost of litigation that might occur as a result of their deliberate silence.

27.     While assuring its policyholders that "accidents happen," ALLSTATE represented in standardized materials that ALLSTATE policyholders would "continue to feel the safety ALLSTATE provided from the beginning."  Indeed, ALLSTATE's well-worn slogan before and throughout the Class Period was: "You're in good hands with Allstate."

28.    The language in ALLSTATE's form auto policies and endorsements falsely assured Plaintiff and Class Members that ALLSTATE would repair or replace and restore to pre-loss condition all property damaged as a result of automobile accidents involving ALLSTATE-insured vehicles. These representations were (1) knowingly false; (2) made with intent to defraud Plaintiff and the Class Members for the purpose of retaining Plaintiff and Class Members as customers of ALLSTATE; and (2) made to avoid the expense of underwriting the necessary repairs to policyholders' ALLSTATE-insured vehicles.

29.    As a result of ALLSTATE's misconduct and breach of their own form auto policies and endorsements, Plaintiff and Class Members have been damaged and seek injunctive relief and monetary compensation and other civil remedies under Rule 23 of the Federal Rules of Civil Procedure.

30.    The running of the Statute of Limitations has been suspended with respect to any claims which Plaintiff or other Class Members have brought or could bring as a result of the unlawful and fraudulent concealment and course of conduct alleged herein. ALLSTATE, through the various devices and conduct described herein, affirmatively and fraudulently concealed the existence of their unlawful scheme and course of conduct from Plaintiff and Class Members. Plaintiff and Class Members had no knowledge of ALLSTATE's scheme and unlawful conduct, or any of the facts which might have led to the discovery of ALLSTATE's wrongdoing before filing this Complaint.

31.    In 1992, ALLSTATE hired McKinsey & Co. ("McKinsey"), a global management consulting company which assists corporate executives in identifying ways to improve the performance of the company, to "redesign" ALLSTATE's claims-handling procedures. The "new" claims handling procedure was implemented by ALLSTATE in 1995. According to the

McKinsey reports, the claims handling procedure would increase ALLSTATE's stock price and add $700 million to ALLSTATE's revenues.

32.    The engagement of McKinsey lasted approximately five years, during which time McKinsey constantly updated ALLSTATE management in reports and power-point presentations ("McKinsey reports"). Certain of the McKinsey reports came to light in *Geneva Hager v. Allstate Ins. Co.*, 98-cl-2482, Fayette Circuit Court Kentucky, a civil action filed by an ALLSTATE policyholder against ALLSTATE alleging bad faith claims handling. During the trial in October, 2007, the attorney for plaintiffs in the *Geneva Hager* matter outlined how the McKinsey reports essentially detail a course of action designed to avoid paying claims, and when claims were paid—pay less.

33.    According to a July 9, 2006 article in the *Lexington Herald-Leader*, the McKinsey reports were obtained by attorneys in several additional civil cases, but were all subject to protective orders, until a bad faith claim was asserted in New Mexico ("New Mexico litigation"). In the New Mexico litigation, the attorney for the plaintiff in that matter refused to consent to a protective order. ALLSTATE argued that the McKinsey reports were trade secrets, and appealed the trial court's findings that they did not constitute trade secrets. Following the unsuccessful appeal on that order two years later, ALLSTATE refused to turn over the McKinsey reports, leading to the entry of a default judgment against ALLSTATE, which again ALLSTATE appealed.

34.    On July 18, 2007, a report was issued titled "The 'Good Hands' Company or a Leader in Anti-Consumer Practice? Excessive Prices and Poor Claims Practices at the Allstate Corporation." This report was written by J. Robert Hunter ("Hunter Report"). J. Robert Hunter is one of the nation's leading insurance consumer advocates and was or currently is the Director of Insurance for the Consumer Federation of America.

-11-

35.    The Hunter Report made the following specific findings regarding ALLSTATE's claims handling practices:

> In 1992, Allstate adopted the "Claims Cores Process Redesign" (CCPR) system recommended by McKinsey & Company. As explained in the book "From 'Good Hands' to Boxing Gloves," the CCPR was intended to "radically alter our whole approach to the business of claims." McKinsey saw the CCPR as a "Zero Sum Game."
>
> As the key element of CCPR, Allstate uses a program known as "Colossus," sold by Computer Sciences Corporation (CSC). CSC sales literature touted Colossus as "the most powerful costs savings tool" and also suggested that, "the program will immediately reduce the size of bodily injury claims by up to 20 percent." As reported in the book "From 'Good Hands' to Boxing Gloves," . . . any insurer who buys a license to use Colossus is able to calibrate the amount of 'savings' it wants Colossus to generate . . . If Colossus does not generate 'savings' to meet the insurer's needs or goals, the insurer simply goes back and "adjusts" the benchmark values until Colossus produces the desired results.
>
> Programs like Colossus are designed to systematically reduce payments to policyholders without adequately examining the validity of each individual claim. The use of these programs appears to sever the promise of good faith that insurers owe their policyholders. Any increase in profits that results from arbitrarily selected reductions in claims payments cannot be considered to be legitimate. The introduction of these systems could explain part of the decline in benefits that policyholders have been receiving as a percentage of premiums paid in recent years by Allstate and later, to a lesser degree, by the insurance industry. Most, but not all, major insurance companies are now using Colossus. In most cases the purchase of the system was made by insurers following the marketing efforts of CSC, which promise significant savings in claims costs.

36.    The McKinsey reports will demonstrate universal, company-wide policies and procedures in place at ALLSTATE to arrive at powerful, cost-saving tools to systematically deny, reduce, or minimize the amount of money paid on personal injury and property damage claims.

**V.**

**PLAINTIFF ROBERT WATTS'S CLAIM**

37.    In or about late 2005 or early 2006, Plaintiff ROBERT WATTS purchased and/or renewed an auto policy from ALLSTATE. At that time, Mr. Watts was provided a copy of ALLSTATE's form auto policy and endorsement. The auto policy and endorsement covered Mr. Watts's 2005 Honda Civic Sedan LX as an ALLSTATE-insured vehicle.

-12-

38.    Pursuant to the policy and endorsement provided to Mr. Watts, ALLSTATE was obligated to repair or replace property damaged in the event of a collision and restore the 2005 Honda Civic to its condition at the time of loss.  In the portion of the auto policy endorsement addressing "Auto Collision Insurance" the policy states the following regarding coverage:

> **Allstate** will pay for the direct and accidental loss to **your** insured **auto** or a non-owned auto (including insured loss to an attached trailer) from a collision with another object or by upset of that **auto** or trailer…

39.    The portion of the auto policy endorsement addressing "Limits of Liability" further explains the coverage provided under the policy:

> **Limits Of Liability**
>
> **Allstate's** limit of liability is the least of:
>
> **1.** the actual cash value of the property or damaged part of the property at the time of loss, which may include a deduction for depreciation; or
>
> **2.** the cost to repair or replace the property or part to its physical condition at the time of loss using parts produced by or for the vehicles manufacturer, or parts from other sources,…

40.    On March 29, 2006, Plaintiff's ALLSTATE-insured 2005 Honda Civic was significantly damaged in a collision.  The front driver and passenger seat belts in Plaintiff's vehicle locked and took on significant force.  Enough force was absorbed and/or distributed during the accident to cause the passenger riding in Plaintiff's vehicle to suffer a fractured rib, as well as other injuries.  The driver of the vehicle sustained serious neck injuries.  Following the accident, the seat belts in Plaintiff's vehicle were not in the same physical condition they were in at the time of the accident/loss and needed to be inspected, repaired, and/or replaced.

-13-

41.    On or about March 30, 2006, an auto body shop prepared a visible damage quote, estimating the damage to Plaintiff's vehicle and the cost of repair at $6,660.18.

42.    The visible damage quote from the auto body shop was provided to an ALLSTATE appraiser who reviewed the visible damage quote and prepared a corrected estimate on or about March 31, 2006, authorizing the repair of Plaintiff's vehicle at the cost of $6,534.77. ALLSTATE's corrected estimate did not include the cost of repair, replacement, or inspection of the seat belts in Plaintiff's ALLSTATE-insured 2005 Honda Civic.

43.    At the time ALLSTATE prepared its corrected estimate and authorized the repairs for Plaintiff's vehicle, ALLSTATE knew that the automobile owner's manual for Plaintiff's vehicle strongly warned that, in the event of an accident, all seat belts must be inspected and replaced, or else serious injury or death may result. ALLSTATE further knew that industry standards required the proper inspection and replacement of seat belts following an auto accident like the one in which Plaintiff's vehicle was involved.

44.    In April 2006, the auto body repair shop repaired Mr. Watts's car based on ALLSTATE's corrected estimate, fixing the front bumper, front door side, headlamps, hood panels, fenders, condenser, radiator, and various other parts for $6,734.23. ALLSTATE underwrote the repairs and charged Mr. Watts his $500 deductible. The final invoice, which ALLSTATE paid, did not include the cost of repair, replacement, or inspection of the seat belts in Plaintiff's ALLSTATE-insured 2005 Honda Civic.

45.    During the course of the repairs to his vehicle, Plaintiff ROBERT WATTS requested that ALLSTATE inspect the seatbelts and pretensioners in Plaintiff's vehicle. ALLSTATE refused to provide coverage for the costs of inspecting and repairing the seatbelts and pretensioners in his vehicle.

46.    Despite ALLSTATE's contractual obligation to repair or replace the damaged parts in Plaintiff's ALLSTATE-insured vehicle and to restore the vehicle to its pre-loss condition, ALLSTATE did not inspect or repair the seat belts in Plaintiff's 2005 Honda Civic, leaving it dangerously unsafe.

## VI.

## CLASS ACTION ALLEGATIONS

47.    Plaintiff brings this action, on behalf of himself and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.   The Class that Plaintiff seeks to represent is composed of and defined as follows:   (a) any person insured by ALLSTATE for any length of time from 1998 to the present who was involved in a collision in which automatic seat belt tensioners activated, after which ALLSTATE failed to underwrite the inspection and/or replacement of the seat belts in the vehicle.

48.    The class identified in paragraph 47 is believed to consist of well over one million members and joinder of all such class members in this lawsuit is impracticable.   Further, the disposition of the claims of all class members is a benefit to the parties and to the Court.

49.    Though the exact number and identity of class members is not presently known, they can be best identified through coordinated discovery pursuant to this class action.

50.    This action may be maintained as a class action principally because of Rule 23(b)(2), as Defendants have acted or refused to act on grounds generally applicable to the Class. Defendants' misconduct, as alleged herein, warrants an injunction requiring they abandon their current uniform practice of declining to underwrite the post-collision inspection and replacement of seat belts and  seat belt tensioners in Allstate-insured vehicles.

51.    This action may also be maintained as a class action pursuant to Rule  23(b)(3) because the many questions of law and fact common to class members clearly predominate over

individual questions affecting members of the class. The common issues of law and fact relate to issues salient to the case, including whether Defendants, in violation of their insured's auto insurance policy, failed to underwrite the post-collision inspection and replacement of seat belts and seat belt tensioners in Allstate-insured vehicles.

52.    Class action is superior to other forms available for fair and efficient adjudication because the damages suffered by individual litigants may make it impractical for them to pursue their claims against Defendants. Individualized litigation may lead to incongruous and conflicting judgments against Defendants. A single adjudication would present fewer management difficulties and reduce the burden on the court.

53.    Plaintiff, on behalf of himself, and all others similarly situated, will fairly and adequately protect the interests of all members of the class, in connection with which he has retained attorneys experienced in the prosecution of class action cases. Plaintiff is able to fairly and adequately protect the interests of all members of the class because it is in his best interest to prosecute the claims alleged herein to obtain full compensation due to him. Proposed class counsel has the necessary experience and skill to prosecute the action on behalf of the class.

54.    Under the facts and circumstances alleged herein, class action proceedings are superior to any other methods available for both fair and efficient adjudication of the claims of each class member who is or was any person insured by ALLSTATE for any length of time from 1998 to the present who was involved in a collision in which automatic seat belt tensioners activated, after which ALLSTATE failed to underwrite the inspection and/or replacement of the seat belts in the vehicle. Joinder of individual members of the class is not practical. In light of the allegations made, individual litigation would be inappropriately burdensome and costly. Proceeding as a class action is superior, not only for citizens bringing suit, but also the courts of the nation.

-16-

55.     To process individual cases would increase both the expenses and the delay not only to class to members, but also to Defendants and the Court.  In contrast, a class action of this matter will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

56.     Notice of the pendency and of any result or resolution of litigation can be provided to class members by the usual forms of publication or such other methods of notice as deemed appropriate by the Court.

57.     Without class certification, the prosecution of separate actions by individual members of the Plaintiff class would create a risk of inconsistent or varying adjudications with respect to individual members of the proposed class that would establish incompatible standards of conduct for Defendants.

58.     Defendants have acted or refused to act in numerous aspects generally applicable to the whole class, making thereby final injunctive relief appropriate with regard to members of the class as a whole.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

59.     Plaintiff repeat and reallege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

60.     Plaintiff and Class Members paid all premiums due under the policy, submitted all proofs of loss required under the policy, and performed all other conditions the policy required them to perform.

61.     Plaintiff and Class Members' auto insurance policy with ALLSTATE provides

-17-

that ALLSTATE will restore the policyholder's car to its pre-loss condition after a collision. In the portion of the auto policy endorsement addressing "Auto Collision Insurance" the policy states the following regarding coverage:

> **Allstate** will pay for the direct and accidental loss to **your** insured **auto** or a non-owned auto (including insured loss to an attached trailer) from a collision with another object or by upset of that **auto** or trailer…

The portion of the auto policy endorsement addressing "Limits of Liability" further explains the coverage provided under the policy:

> **Limits Of Liability**
>
> **Allstate's** limit of liability is the least of:
>
> **1.** the actual cash value of the property or damaged part of the property at the time of loss, which may include a deduction for depreciation; or
>
> **2.** the cost to repair or replace the property or part to its physical condition at the time of loss using parts produced by or for the vehicles manufacturer, or parts from other sources,…

62. If the automatic seat belt tensioners activate as a result of a collision, the seat belts must be inspected and, if necessary, replaced. The failure to replace activated seat belt tensioners can result in serious bodily injury or death.

63. Because ALLSTATE failed to inspect and/or replace the seat belts in Plaintiff and Class Members' post-collision ALLSTATE-insured vehicles, ALLSTATE breached the policy agreements.

64. ALLSTATE is also liable for any punitive or exemplary damages in an amount commensurate with ALLSTATE's ability to pay and sufficient to deter such conduct in the future.

65. Defendant ALLSTATE is also liable for civil penalties.

-18-

66.    Accordingly, Plaintiff and the Class respectfully request that the Court award judgment and relief in their favor as described herein.

## SECOND CAUSE OF ACTION

### BAD FAITH

67.    Plaintiffs repeat and reallege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

68.    In handling Plaintiff and Class Members' auto insurance claims, Defendants ALLSTATE acted unreasonably by failing to underwrite the inspection and/or replacement of the seat belts in Plaintiff and Class Members' post-collision ALLSTATE-insured vehicles. Defendants ALLSTATE's conduct was unreasonable in the following respects:

A.    Forcing Insured to Seek Legal Redress.  By purposely failing to underwrite the post-collision inspection or replacement of ALLSTATE-insured vehicles, ALLSTATE forced Plaintiff to file this Class Action Complaint. This manner of legal redress is the only remedy available to Plaintiff and Class Members.

B.    Deception.  Defendant ALLSTATE, aware of the hazardous and potentially fatal consequences of failing to repair activated seat belt tensioners, nonetheless instituted a uniform policy to refrain from investigating post-collision seat belts despite their obligation to restore these ALLSTATE-insured vehicles to their pre-loss condition.

C.    Exploitation.  In the course of underwriting the repairs to Plaintiff and Class Members' ALLSTATE-insured vehicles, ALLSTATE prevented third party auto-repair shops from inspecting and repairing post-collision seat belts despite the obvious need to do so.

-19-

### THIRD CAUSE OF ACTION

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

69.   Plaintiffs repeat and reallege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

70.   Plaintiff and Class Members are informed and believe and thereon allege that Defendants ALLSTATE breached the implied covenant of good faith and fair dealing in the following respects:

        A.    Defendants ALLSTATE unreasonably implemented a uniform scheme to decline to underwrite the post-collision inspections and repairs of the seat belts in Plaintiff and Class Members' ALLSTATE-insured vehicles, despite its contractual obligation to restore the vehicles to their pre-loss state.

        B.    Defendant ALLSTATE unreasonably exerted its considerable influence to prevent third party auto-repair shops from inspecting and repairing the seat belts in Plaintiff and Class Members' post-collision ALLSTATE-insured vehicles.

71.   Defendant ALLSTATE's unreasonable refusal to underwrite the post-collision inspections and repairs of the seat belts in Plaintiff and Class Members' ALLSTATE-insured vehicles amounts to a failure to perform a duty owed to Plaintiff and Class Members. As a direct and proximate result of the unreasonable conduct of Defendants, Plaintiff and Class Members have been required to retain attorneys to obtain benefits due to them under the policy.

72.   As a direct result of the tortuous conduct of Defendants, Plaintiff and Class Member were damaged and injured. Plaintiff and Class Members are therefore entitled to recover:

A.  Reasonable attorneys' fees incurred by Plaintiff and Class Members in obtaining policy benefits in an amount to be proved at time of trial;

73.  The refusal of Defendants to carry out their obligation under the auto insurance policy to investigate and underwrite the repairs of activated seat belt tensioners in post-collision ALLSTATE-insured vehicles was done with conscious disregard of the rights of the Plaintiff and Class Members to receive the benefits due them under the policy.

## FOURTH CAUSE OF ACTION

### FRAUD/MISREPRESENTATION

74.  Plaintiffs repeat and reallege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

75.  At all relevant times herein, ALLSTATE represented to Plaintiff and Class Members that it would completely restore their post-collision ALLSTATE-insured vehicles.

76.  Said representations were false and known to be false when made because, pursuant to its uniform and company-wide scheme, ALLSTATE was unwilling to and ultimately did not underwrite the post-collision inspection and repair of the seat belts in Plaintiff and Class Members' ALLSTATE-insured vehicles.

77.  To their detriment, Plaintiff and Class Members reasonably relied upon said representations in continuing to drive allegedly repaired vehicles that nonetheless contained possibly life-threatening defects.

78.  Said representations were made with the intent and purpose of retaining Plaintiff and Class Members as ALLSTATE policyholders and avoiding the expense and trouble of underwriting the necessary repairs to the insured's ALLSTATE-insured vehicles.

79.  By virtue of the foregoing, Defendants acted fraudulently, recklessly and in conscious disregard for the rights and safety of its insured, including Plaintiff and Class

-21-

1    Members, and consequently realized a financial benefit. Accordingly, Defendants are required to

2    disgorge those financial benefits.

### FIFTH CAUSE OF ACTION
### UNFAIR COMPETITION
### (BUS. & PROF. CODE §§ 17200-17208)

80.    Plaintiff repeats and realleges each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

81.    Beginning at an exact date unknown to Plaintiff but at least since 1998,

Defendants ALLSTATE have committed acts of unfair competition, as defined by California

Business and Professions Code section 17200, by engaging in the following practices:

A.    Defendants ALLSTATE developed and implemented a uniform policy to avoid
       underwriting the inspection and replacement of seat belts in post-collision
       ALLSTATE-insured vehicles.

B.    Defendants ALLSTATE unreasonably implemented a uniform scheme to decline
       to underwrite the post-collision inspections and repairs of the seat belts in Plaintiff
       and Class Members' ALLSTATE-insured vehicles, despite its contractual
       obligation to restore the vehicles to their pre-loss state.

C.    Defendants ALLSTATE unreasonably exerted their considerable influence to
       prevent third party auto-repair shops from inspecting and repairing the seat belts in
       Plaintiff and Class Members' post-collision ALLSTATE-insured vehicles.

82.    Defendant ALLSTATE's conduct has violated various provisions of the California

Insurance Code, including, but not limited to, sections 1874.85-1874.87, sections 11580 *et seq.*.

83.    Defendants ALLSTATE's policies and practices, including the development and

implementation of a uniform policy to avoid underwriting the inspection and replacement of seat

belts in post-collision ALLSTATE-insured vehicles, despite its contractual obligation to restore

-22-

the vehicles to their pre-collision state, and the exertion of Defendants ALLSTATE's considerable influence to prevent third party auto-repair shops from inspecting and repairing the seat belts in Plaintiff and Class Members' post-collision ALLSTATE-insured vehicles, violate various provisions of California's Insurance Code, including but not limited to sections 1874.85 *et seq.*, sections 11580 *et seq.*, and consequently constitutes unlawful business acts and practices within the meaning of Business and Professions Code section 17200.

84.    The harm to Plaintiff and members of the class and the general public outweighs the utility of Defendants ALLSTATE's policies and practices, and consequently, Defendants ALLSTATE's policies and practices, including the development and implementation of a uniform policy to avoid underwriting the inspection and replacement of seat belts in post-collision ALLSTATE-insured vehicles, despite its contractual obligation to restore the vehicles to their pre-collision state, and the exertion of Defendants ALLSTATE's considerable influence to prevent third party auto-repair shops from inspecting and repairing the seat belts in Plaintiff and Class Members' post-collision ALLSTATE-insured vehicles, constitute unfair business acts or practices within the meaning of Business and Professions Code section 17200.

85.    Defendants ALLSTATE's practice and policy of failing to underwrite the post-collision inspections and repairs of the seat belts in Plaintiff and Class Members' ALLSTATE-insured vehicles, and failure to restore Plaintiff and Class Members' ALLSTATE-insured vehicles to their pre-loss condition, is likely to mislead Plaintiff and Class Members and the general public, and, consequently, constitutes fraudulent business acts or practices within the meaning of California Business and Professions Code section 17200.

86.    The unlawful, unfair and fraudulent business practices of Defendants ALLSTATE, as described above, present a continuing threat to Plaintiff, Class Members, and members of the public in that Defendants ALLSTATE's policies and practices expose Plaintiff, Class Members,

-23-

and members of the public to danger of physical injuries or death.  Seat belt and vehicle manufacturers have warned that the failure to inspect, maintain, or replace seat belts after a collision can result in serious injury or death.

87.     Plaintiff, and members of the class he seeks to represent, have suffered injury in fact and have lost money or property due to the unfair, unlawful, and fraudulent activities and actions of Defendants.

88.     Accordingly, Plaintiffs and the Class respectfully request that the Court award judgment and relief in their favor as described herein.

## SIXTH CAUSE OF ACTION

### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS VIOLATIONS
### (18 U.S.C. §§ 1961-1964 )

89.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

90.     ALLSTATE constitutes an "enterprise" as that term is defined in 18 U.S.C. § 1961(4).  ALLSTATE is a corporation that is and continues to be engaged in activities that affect interstate commerce.

91.     The Enterprise, a nationally renowned insurer, failed to honor its obligation to restore to their pre-loss condition Plaintiff and Class Members' post-collision vehicles.  The Enterprise implemented this uniform policy by using its considerable leverage to prevent third party auto-repair shops from inspecting or repairing ALLSTATE-insured post-collision vehicles.

92.     Pursuant to 18 U.S.C. § 1964, Plaintiff and Class respectfully request that the Court order Defendant ALLSTATE to disgorge all proceeds derived from any violation of 18 U.S.C. § 1962.

/ / / /

/ / / /

## VII.

## **DEMAND FOR JURY TRIAL**

93. Plaintiffs and the Class hereby demand a jury trial on all issues of fact or law so triable.

## VIII.

## **DECLARATORY RELIEF**

94. Plaintiffs repeat and reallege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

95. There is a real and actual controversy between Plaintiff and Class Members and Defendants as to whether ALLSTATE wrongfully refused to underwrite the post-collision inspections and repairs of Plaintiff and Class Members' ALLSTATE-insured vehicles.

96. The facts alleged in the aforesaid paragraphs demonstrate the existence of an actual controversy, show standing and ripeness, and establish that a declaratory judgment will serve the useful purpose of resolving the legal issue between Plaintiff and Class Members and Defendants. Plaintiff and Class Members pray for a declaratory judgment pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, addressing the matters set forth in this complaint.

97. The declaratory relief sought under said Act is a judgment on behalf of the Plaintiff Class as defined above, declaring that Plaintiff and Class Members' ALLSTATE auto insurance policies, which were drafted by Defendants, obligated Defendants to underwrite the post-collision inspections and/or repairs of the seat belts in Plaintiff and Class Members ALLSTATE-insured vehicles.

98. Plaintiff and Class Members reasonably fear that they are at risk and may be again subjected to Defendants' unlawful actions, and seek a judicial declaration that Defendants'

-25-

conduct deprived Plaintiff and Class Members of their contractual rights under the laws of the state of California.

99.     Plaintiff and Class Members additionally seek any further necessary and proper relief as set forth below, pursuant to 28 U.S.C. §§ 2201, 2202.

## IX.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself and the Class Members he seeks to represent in this action request the following relief:

A.     That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     That the Court find that ALLSTATE has violated Business and Professions Code § 17200 by developing and implementing a uniform policy of wrongfully declining to underwrite the post-collision inspections and repairs of ALLSTATE-insured vehicles;

C.     That the Court find that ALLSTATE has violated 18 U.S.C. § 1962(c) by preventing third party auto-repair shops from inspecting and repairing defective seat belt tensioners in ALLSTATE-insured vehicles;

D.     That the Court find that ALLSTATE has violated 18 U.S.C. § 1962(c) by operating its own line of auto-repair shops in part to further its implementation of its uniform scheme to wrongfully avoid underwriting post-collision inspections and repairs to ALLSTATE-insured vehicles;

E.     That the Court find that ALLSTATE's violations as described have been knowing and willful;

/ / / /

/ / / /

F.    That ALLSTATE be ordered and enjoined to pay restitution to Plaintiffs and the Class due to ALLSTATE's unlawful and/or unfair and/or fraudulent activities, pursuant to Business and Professions Code §§ 17200-05;

G.    That ALLSTATE further be enjoined to cease and desist from unlawful and/or unfair and/or fraudulent activities in violation of Business and Professions Code § 17200, pursuant to § 17203;

H.    That Plaintiffs and the Class be awarded reasonable attorneys' fees and costs pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and/or other applicable law.

I.    For punitive and exemplary damages in an amount commensurate with ALLSTATE's ability to pay and sufficient to deter such conduct in the future;

J.    That the Court award such other and further relief as this Court may deem appropriate.

DATED: February 29, 2008                    YORK LAW CORPORATION


By:_____
        WENDY C. YORK
        TIMOTHY B. NELSON
        Attorneys for Plaintiff and the Class