1   SONIA MARTIN (State Bar No. 191148)
    SONNENSCHEIN NATH & ROSENTHAL LLP
2   525 Market Street, 26th Floor
    San Francisco, CA 94105
3   Telephone: (415) 882-5000
    Facsimile:  (415) 882-0300
4
    Attorneys for Defendants
5   ALLSTATE INDEMNITY COMPANY,
    ALLSTATE INSURANCE COMPANY, and
6   ALLSTATE PROPERTY AND CASUALTY
    INSURANCE COMPANY
7

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                        OAKLAND DIVISION

12   ROBERT WATTS, on behalf of himself          No. CV 081236
     individually and all other similarly situated,
13                                               DEFENDANTS ALLSTATE INDEMNITY
                 Plaintiffs,                     COMPANY,  ALLSTATE INSURANCE
14                                               COMPANY, AND ALLSTATE PROPERTY
          vs.                                    AND CASUALTY INSURANCE'S:
15
     ALLSTATE INDEMNITY COMPANY, an              (1)  NOTICE OF MOTION AND MOTION
16   Illinois corporation, ALLSTATE                   TO DISMISS OR, ALTERNATIVELY,
     INSURANCE COMPANY, an Illinois                   TO STAY PENDING APPRAISAL,
17   corporation, ALLSTATE PROPERTY                   AND
     AND CASUALTY INSURANCE
18   COMPANY, an Illinois corporation; and       (2)  SUPPORTING MEMORANDUM OF
     DOES 1 through 100, inclusive                    POINTS AND AUTHORITIES
19
                 Defendants.                     Date:      June 24, 2008
20                                               Time:      1:00 p.m.
                                                 Place:     Courtroom 3
21                                               Before:    Hon. Saundra Brown Armstrong

22

23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................. 1

II.     FACTUAL ALLEGATIONS ................................................................... 2

III.    LEGAL STANDARD .............................................................................. 4

IV.     ARGUMENT .......................................................................................... 4

        A.    Plaintiff Has Failed As A Matter of Law to Allege Any Claim For
              Which Relief Can Be Granted Because Allstate Fully Complied With
              The Terms of Its Policy......................................................................... 4

              1.    Allstate Does Not Have a Policy Obligation to Inspect Seatbelts
                    Or To Satisfy Vague "Industry Standards" By Inspecting
                    Plaintiff's Vehicle. ..................................................................... 5

              2.    To The Extent Plaintiff Claims His Seatbelts Were Actually
                    Damaged, This Action Must Be Stayed Pending Completion of
                    Appraisal. ................................................................................... 7

        B.    Plaintiff's "Bad Faith" Claims Fail As A Matter of Law Because The
              Complaint Fails to Allege A Cognizable Breach of Contract Claim. ................. 10

        C.    The Complaint Fails to State a Claim for "Fraud/Misrepresentation." ............... 11

              1.    The Complaint Fails to Plead "Falsity" With Specificity. ..................... 12

              2.    Plaintiff Alleges No Damages Caused By Any Alleged
                    "Misrepresentation." ................................................................. 13

        D.    Plaintiff Fails to State a Claim for Unfair Competition Under Business
              & Professions  Code §§ 17200-17208. .............................................. 14

        E.    The Complaint Fails to Plead a Cause of Action Under RICO. ................... 16

        F.    At A Minimum, Allstate Insurance Company and Allstate Property and
              Casualty  Insurance Company Should Be Dismissed Because Plaintiff
              Had No Contractual  Relationship With Them And Has Failed To
              Plead Any Allegations Against Them........................................................ 18

V.      CONCLUSION ..................................................................................... 19

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

CASE NO.  C 08-1236

ALLSTATE'S MOTION TO DISMISS
OR, ALTERNATIVELY, TO STAY

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abramson v. Brownstein,*
  897 F.2d 389 (9th Cir. 1990)..................................................................... 4

*Allwaste, Inc. v. Hecht,*
  65 F.3d 1523 (9th Cir. 1995)..................................................................... 17

*Bell Atlantic Corp. v. Twombly,* --,
  U.S. -- 127 S. Ct. 1955 (2007)................................................................. 4

*Comwest v. American Operator Services, Inc.,*
  765 F. Supp. 1467 (C.D. Cal. 1991) ......................................................... 17

*Gilmore v. Interstate/Johnson Lane Corp.,*
  500 U.S. 20 (1991)...................................................................................... 9

*In re GlenFed, Inc. Securities Litigation,*
  42 F.3d 1541 (9th Cir. 1994)........................................................... 11, 12, 13

*Glenn K. Jackson Inc. v. Roe,*
  273 F.3d 1192 (9th Cir. 2001) ................................................................. 14

*Knievel v. ESPN,*
  393 F.3d 1068 (9th Cir. 2005)................................................................ 1, 3

*Lancaster Community Hospital v. Antelope Valley Hospital District,*
  940 F.2d 397 (9th Cir. 1991)................................................................... 17

*Navarro v. Block,*
  250 F.3d 729 (9th Cir. 2001)..................................................................... 4

*Neubronner v. Milken,*
  6 F.3d 666 (9th Cir. 1993)......................................................................... 12

*Nordberg v. Trilegiant Corp.,*
  445 F. Supp. 2d 1082 (N.D. Cal. 2006) ................................................... 17

*Ove v. Gwinn,*
  264 F.3d 817 (9th Cir. 2002).............................................................. 16, 17

*Sever v. Alaska Pulp Corp.,*
  978 F.2d 1529 (9th Cir.1992)................................................................... 17

*In re Silicon Graphics, Inc. Sec. Litigation,*
  183 F.3d 970 (9th Cir. 1999)................................................................. 1, 3

*Sonnier v. State Farm Mutual Automobile Insurance Co.,*
  509 F.3d 673 (5th Cir. 2007)........................................................... 1, 6, 7

*Warren v. Fox Family Worldwide, Inc.,*
  328 F.3d 1136 (9th Cir. 2003)................................................................... 4

*Wool v. Tandem Computers, Inc.,*
  818 F.2d 1433 (9th Cir. 1987)................................................................. 11

*Yourish v. California Amplifier,*
  191 F.3d 983 (9th Cir. 1999)................................................................... 12

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

CASE NO.  C 08-1236

ALLSTATE'S MOTION TO DISMISS
OR, ALTERNATIVELY, TO STAY

**STATE CASES**

*Aguilar v. Atlantic Richfield Co.*,
    25 Cal. 4th 826 (2001) .......................................................................... 13

*Alliance Mortgage Co. v. Rothwell*,
    10 Cal. 4th 1226 (1995) ...................................................................... 13

*Austero v. National Casualty Co. of Detroit, MI*,
    84 Cal. App. 3d 1 (1978).................................................................... 11

*Bardin v. DaimlerChrysler Corp.*,
    136 Cal. App. 4th 1255 (2006) ...................................................... 15, 16

*Broughton v. Cigna Healthplans of California*,
    21 Cal. 4th 1066 (1999) ........................................................................ 9

*Camelot-By-The-Bay Condo. Association v. Scottsdale Insurance Co.*,
    27 Cal. App. 4th 33 (1994) ................................................................... 5

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999) ........................................................................ 15

*Coast Plaza Doctors Hospital v. Blue Cross of Cal.*,
    83 Cal. App. 4th 677 (2000) ................................................................. 8

*Community Assisting Recovery, Inc. v. Aegis Security Insurance Co.*,
    92 Cal. App. 4th 886 (2001) .......................................................... 6, 8, 9

*Conrad v. Ball*,
    24 Cal. App. 4th 439 (1994) ............................................................... 16

*Cronus Investments v. Concierge Services*,
    35 Cal. 4th 376 (2005) ......................................................................... 8

*Cynthia D. v. Super. Ct. (San Diego)*,
    5 Cal. 4th 242 (1993) .......................................................................... 16

*Egan v. Mutual Of Omaha Insurance Co.*,
    24 Cal. 3d 809 (1979) ........................................................................ 11

*Empire West v. Southern California Gas Co.*,
    12 Cal. 3d 805 (1974) ........................................................................ 13

*Farmers Insurance Exch. v. Superior Court*,
    137 Cal. App. 4th 842 (2006) ............................................................. 15

*Federal Insurance Co. v. Superior Court (Mackey)*,
    60 Cal. App. 4th 1370 (1998) ............................................................... 8

*Gautier v. General Telephone Company*,
    234 Cal. App. 2d 302 (1965) .............................................................. 18

*Gold v. Gibbons*,
    178 Cal. App. 2d 517 (1960)............................................................... 18

*Hall v. State Farm Mutual Automobile Insurance Co.*,
    215 F. App'x. 423, 2007 WL. 215662 (6th Cir. 2007)....................... 1, 7

*Joaquin v. Geico General Insurance Co.*,
    2008 WL. 53150 (N.D. Cal., Jan. 2, 2008) .......................................... 6

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

-iii-

ALLSTATE'S MOTION TO DISMISS
OR, ALTERNATIVELY, TO STAY

*Levy v. State Farm Mutual Automobile Insurance Co.,*
        150 Cal. App. 4th 1 (2007) .............................................................. 1, 5, 6, 7, 16

*Louise Gardens of Encino Homeowners' Association, Inc. v. Truck Insurance Exch.,*
        *Inc.,* 82 Cal. App. 4th 648 (2000) ............................................................. 8

*Love v. Fire Insurance Exchange,*
        221 Cal. App. 3d 1136 (1991)............................................................. 10, 11

*Maler v. Superior Court,*
        220 Cal. App. 3d 1592 (1990)................................................................ 14

*Market Insurance Corp. v. Integrity Insurance Co.,*
        188 Cal. App. 3d 1095 (1987)................................................................. 8

*Melican v. Regents of the University of Cal.,*
        151 Cal. App. 4th 168 (2007) ................................................................ 18

*Michael v. Aetna Life & Casualty Insurance Co.,*
        88 Cal. App. 4th 925 (2001) ................................................................... 7

*Miller v. Western General Agency, Inc.,*
        41 Cal. App. 4th 1144 (1996) ................................................................ 10

*Molko v. Holy Spirit Association,*
        46 Cal. 3d 1092 (1988) .......................................................................... 13

*Monarch Plumbing Co. v. Ranger Insurance Co.,*
        No., S-06-1357, 2006 WL. 2734391 (E.D. Cal., Sept. 25, 2006) .................... 3

*Nagy v. Nagy,*
        210 Cal. App. 3d 1262 (1989)............................................................ 11, 14

*Nowlon v. Koram Insurance Ctr., Inc.,*
        1 Cal. App. 4th 1437 (1991) .................................................................. 15

*Paulfrey v. Blue Chip Stamps,*
        150 Cal. App. 3d 187 (1983)................................................................... 6

*People v. McDaniels,*
        21 Cal. App. 4th 1560 (1994) ................................................................ 16

*Ray v. Farmers Insurance Exch.,*
        200 Cal. App. 3d 1411 (1988)................................................................. 6

*Rodriguez v. American Technologies, Inc.,*
        136 Cal. App. 4th 1110 (2006) ................................................................ 9

*SafeCo Ins. Co. of America v. Superior Court,*
        216 Ca.App.3d 1491, 1494 (1990)........................................................... 14

*San Diego Housing Committee v. Industrial Indemnity,*
        68 Cal. App. 4th 526 (1998) ................................................................. 10

*Seidman & Seidman v. Wolfson,*
        50 Cal. App. 3d 826 (1975)...................................................................... 9

*Stansfield v. Starkey,*
        220 Cal. App. 3d 59 (1990)................................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

-iv-

ALLSTATE'S MOTION TO DISMISS
OR, ALTERNATIVELY, TO STAY

*Textron Fin'l Corp. v. National Union Fire Insurance Co. of Pittsburgh,*
    118 Cal. App. 4th 1061 (2004) ................................................................ 14

*Unetco Industries Exchange v. Homestead Insurance Co.,*
    57 Cal. App. 4th 1459 (1997) ................................................................ 10

*Vikco Insurance Services, Inc. v. Ohio Indemnity Co.,*
    70 Cal. App. 4th 55 (1999) ................................................................ 15

*Waller v. Truck Insurance Exch.,*
    11 Cal. 4th 1 (1995) ................................................................ 10

*Warren-Guthrie v. Health Net,*
    84 Cal. App. 4th 804 (2000) *overruled on another point in* ................................ 8

*Williams v. Wraxall,*
    33 Cal. App. 4th 120 (1995) ................................................................ 14

## FEDERAL STATUTES

9 U.S.C. § 2 ................................................................................................ 8
9 U.S.C. § 3 ................................................................................................ 9
9 U.S.C. § 4 ................................................................................................ 9
18 U.S.C. § 1961 ........................................................................................ 17
18 U.S.C. 1962(c) ...................................................................................... 17
Federal Rule of Civil Procedure 9(b) ........................................................ 11
Federal Rule of Civil Procedure 12(b)(6) ................................................ 1, 4

## STATE STATUTES

California Business & Professions Code § 17200 ............................. 14, 15, 16
California Business & Professions Code §17208 ............................. 14
California Code of Civil Procedure § 1281 ................................. 8, 9
California Insurance Code § 1871 ............................................. 14

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

-v-

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND TO THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that on June 24, 2008, at 1:00 p.m. or as soon thereafter as counsel may be heard, in Courtroom 3 of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, 400 South in Oakland, California, defendants Allstate Insurance Company, Allstate Indemnity Company and Allstate Property Casualty Insurance Company will move, and hereby do move, to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, move for an order dismissing or staying this action because Allstate has invoked the appraisal provision in plaintiff's insurance policy.

Allstate's motion will be and is based upon this Notice, the following Memorandum Of Points and Authorities, all pleadings, records and documents on file herein, and such additional evidence and argument as may be properly introduced in support of the motion.

ALLSTATE'S MOTION TO DISMISS
OR, ALTERNATIVELY, TO STAY

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In this putative class action, plaintiff asserts claims for breach of contract, bad faith, fraud, unfair competition and RICO violations arising from the handling of his claim under an automobile insurance policy issued by Allstate Indemnity Company ("Allstate").[1] All of plaintiff's claims are premised on the allegation that Allstate "[refrained] from underwriting the inspection and replacement of seat belts in post-collision Allstate-insured vehicles." (Compl., ¶ 10.) Plaintiff seeks to represent a putative class of policyholders "who [were] involved in a collision in which automatic seat belt tensioners activated, after which Allstate failed to underwrite the inspection and/or replacement of the seat belts in the vehicle." (*Id.*, ¶ 47.) The Complaint, however, fails to identify any provision in plaintiff's insurance policy requiring Allstate "to inspect" for hypothetical damage, or to pay for such an inspection.[2]

Allstate seeks dismissal because plaintiff cannot state any claim based on an alleged failure to inspect seatbelts where (as here) the policy imposed no such obligation on Allstate, and where plaintiff alleges no actual physical damage to his vehicle that Allstate refused to repair. *See, e.g., Levy v. State Farm Mutual Automobile Ins. Co.*, 150 Cal. App. 4th 1 (2007), *Sonnier v. State Farm Mut. Auto Ins. Co.*, 509 F.3d 673 (5th Cir. 2007), *Hall v. State Farm Mut. Automobile Ins. Co.*, 215 F. App'x. 423, 2007 WL 215662 (6th Cir. 2007).

As a threshold matter, plaintiff does not (and cannot) allege a requisite element of a breach of contract claim — namely, breach of any provision of his insurance policy. Likewise, plaintiff's failure to allege that Allstate breached its contractual obligations — or committed any wrongdoing at all — defeats all of his claims for relief. While each of plaintiff's claims individually suffers

---

[1] Plaintiff's auto policy was issued by Allstate Indemnity Company. As set forth in section IV(F), the other two defendants should be dismissed because the Complaint fails to allege any connection to plaintiff, contractual or otherwise.

[2] Because plaintiff has not attached the policy to his Complaint, it is attached hereto as Exhibit A. Because the policy was referenced in Plaintiff's Complaint, it does not convert this motion into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005); *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).

-1-

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    from myriad pleading deficiencies, all the claims fail as a whole because Allstate complied with

2    the terms of its policy.

3       Alternatively, a stay or dismissal of plaintiff's claims is warranted because Allstate has

4    invoked its right to appraisal.  To the extent plaintiff alleges his seat belts were physically

5    damaged due to the collision, and are therefore in need of repair, there is no dispute as to the

6    existence of  coverage because Allstate's policy covers "direct and accidental loss" to plaintiff's

7    vehicle.  Rather, there is only an isolated dispute as to the amount of plaintiff's loss.  In that case,

8    plaintiff's policy contains an appraisal clause which, if invoked by either party, requires the

9    completion of an appraisal process before commencement of a lawsuit.  Because Allstate has

10    elected to pursue appraisal, the policy's explicit terms preclude any suit unless and until the

11    appraisal is completed.

12       Finally, and in any event, Allstate Insurance Company and Allstate Property and Casualty

13    Insurance Company must be dismissed because they are not parties to plaintiff's insurance policy

14    and the Complaint contains no factual allegations directed to them.

15       For the following reasons, Allstate respectfully requests this Court to enter judgment in its

16    favor, or in the alternative, to dismiss or stay plaintiff's claims.[3]

17    ## II.  FACTUAL BACKGROUND

18       Plaintiff is a named insured under an automobile policy issued by Allstate Indemnity

19    Company.  (*See* Compl., ¶ 37.)  He is a resident of California (*id.*, ¶ 9), and his policy is subject to

20    California law.  (*See* Exhibit A at Policy Endorsement, p. 1.)

21       Part VII of plaintiff' policy addresses "Protection Against Loss to the Auto" and contains

22    Coverage DD Auto Collision Insurance.  (*Id.* at 18.)  Specifically, the Auto Collision coverage

23    provides that "Allstate will pay for direct and accidental loss to your insured auto . . . from a

24    collision with another object or by upset of that auto . . . ."  (*Id.*)  Part VII also includes a

25    "Payment of Loss By Allstate" provision, which provides that Allstate "may pay for the loss in

26    _____

27    [3] Allstate's counsel contacted plaintiff's counsel to "meet and confer" prior to filing this motion,
in conformance with the Court's Standing Order.  However, a meet and confer could not be
28    arranged due to counsel's availability.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

CASE NO.  C 08-1236        ALLSTATE'S MOTION TO DISMISS
             OR, ALTERNATIVELY, TO STAY

1    money, or may repair or replace the damaged or stolen property" (*id.* at 21), as well as a "Limits

2    of Liability" provision that expressly limits Allstate's liability to the lower of "the actual cash

3    value" or "the cost to repair or replace" the damaged property less the applicable deductible (*id.* at

4    Policy Endorsement, p 11).

5        Like most auto policies, plaintiff's policy contains a "Right to Appraisal" provision, which

6    specifies the contractual procedures for resolving a disagreement over the amount of a loss

7    resulting from a collision:

8        **RIGHT TO APPRAISAL**

9        **Both you and Allstate have a right to demand an right**
10       **to demand an appraisal of the loss.  Each will appoint**
         **and pay a qualified appraiser.  Other appraisal**
11       **expenses will be shared equally.  The two appraisers,**
         **or a judge of a court of record, will chose an umpire.**
12       **Each appraiser will state the actual cash value and the**
         **amount of loss.  If they disagree, they'll submit their**
13       **differences to the umpire.  A written decision by any**
         **two of these three persons will determine the amount**
14       **of the loss.**

15   *Id.* at 21.  Plaintiff's policy is conditioned on his compliance with the policy provisions, including

16   the appraisal provision.  (*See Id.* at 2 ("If you . . . comply with the policy terms, Allstate, relying on

17   the information you have given us, makes the following agreements with you."); *Id.* at 22 ("No one

18   may sue [Allstate] under this coverage unless there is full compliance with all the policy terms.").)

19       On March 29, 2006, plaintiff's Allstate-insured vehicle was involved in a collision, and

20   was repaired by an auto body repair shop the following month.  (Compl., ¶¶ 40, 44.)  Plaintiff

21   contends Allstate breached the policy by failing to inspect or repair the vehicle's seatbelts after

22   the accident.  (*Id.*, ¶ 46.)  To the extent this raises a dispute over the amount of the loss, Allstate

23   has invoked its right to submit that dispute to appraisal under the policy.  Specifically, Allstate's

24   counsel sent a letter to plaintiff's counsel demanding an appraisal of the loss.  (*See* Exhibit B.)[4]

25

26   [4] This document does not convert this motion into one for summary judgment because the
     document is undisputed and is central to plaintiff's claims.  *See Knievel*, 393 F.3d at 1076-77 (9th
27   Cir. 2005); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d at 986; *Monarch Plumbing Co. v.
     Ranger Ins. Co.*, 2006 WL 2734391, at *2 (E.D. Cal., Sept. 25, 2006).
28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

-3-

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint or a claim for relief therein for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) dismissal is proper where there is either a lack of a "cognizable legal theory" or the "absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citations omitted).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, -- U.S. --, 127 S.Ct. 1955, 1974 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965.

In evaluating a motion to dismiss, all material allegations in the complaint are accepted as true. *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990).  Conclusory allegations or legal characterizations cast in the form of factual allegations, however, may be disregarded. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

As explained below, the Court should dismiss plaintiff's Complaint in its entirety. Alternatively, the Court should dismiss or stay plaintiff's Complaint because Allstate has invoked its right to appraisal under the policy.

### IV.    ARGUMENT

**A.    Plaintiff Has Failed As A Matter of Law to Allege Any Claim For Which Relief Can Be Granted Because Allstate Fully Complied With The Terms of Its Policy.**

Each of plaintiff's claims and requests for relief is premised on the allegation that Allstate failed to comply with the terms of its policy.  As demonstrated below, this allegation cannot be sustained as a matter of law.

Allstate's obligations to plaintiff are limited to those in the policy.  To the extent plaintiff claims Allstate somehow breached its contractual obligations by failing to "inspect" his vehicle's seatbelts, or to otherwise comply with general "industry standards," courts have conclusively found that Allstate owes no such duty.  Moreover, to the extent plaintiff contends the seatbelts in his vehicle suffered actual damage and Allstate should pay for their repair or replacement, Allstate

-4-

ALLSTATE'S MOTION TO DISMISS
OR, ALTERNATIVELY, TO STAY

1    has properly invoked the appraisal provision to resolve this dispute over the amount of the loss.

2    In either case, Allstate has fully complied with the terms of the policy and plaintiff's claims

3    should be dismissed as a matter of law.

4        1.    Allstate Does Not Have a Policy Obligation to Inspect Seatbelts Or To
              Satisfy Vague "Industry Standards" By Inspecting Plaintiff's Vehicle.

5

6        An insurer's obligations to its policyholder are plainly set forth in the contract itself.

7    Thus, as one court has put it, the carrier "is an insurer, not a guardian angel," and it "does not . . .

8    insure the entire range of an insured's well-being, outside the scope of and unrelated to the

9    insurance policy[.]"  *Camelot-By-The-Bay Condo. Assn. v. Scottsdale Ins. Co.*, 27 Cal. App. 4th

10   33, 52 (1994).  Where an insured sues for breach of contract, '[f]acts alleging a breach, like all

11   essential elements of a breach of contract action, must be pleaded with specificity."  *Levy,* 150

12   Cal. App. 4th at 5 (citations omitted).

13       Here, the Complaint fails to identify any policy provision that Allstate purportedly

14   breached.  As explained above, the policy requires Allstate to repair or replace "direct and

15   accidental loss."  (*See* Exhibit A at 18.)  Plaintiff does not, and cannot, cite any policy provision

16   requiring Allstate to conduct or pay for inspections.  Tellingly, plaintiff fails even to provide the

17   Court with a copy of his policy to substantiate his claim.  Instead, he merely alleges that Allstate

18   "was aware of studies" and "industry standards" that supposedly required seat belt inspections

19   after an accident and that Allstate adopted a policy "to refuse to pay for seat belt replacement or

20   inspection." (Compl.  17, 19, 20.)

21       The actual terms of the policy — not vague "industry standards" — define the scope of

22   Allstate's obligation to plaintiff.  As a matter of law, courts cannot impose obligations on insurers

23   to meet "industry standards" that are not expressed in the insurance contract between the insurer

24   and insured.  *See Levy v. State Farm Mutual Automobile Ins. Co.*, 150 Cal. App. 4th 1, 8 (2007).

25   In *Levy*, the Court dismissed a breach of contract claim alleging that State Farm failed to comply

26   with "industry standards" by failing to inspect seat belts.  *Id.* at 6.  The Court held the policy

27   required State Farm "to restore the vehicle to its pre-loss condition," but did not require the

28   insurer to follow any particular industry standard in doing so.  *Id.*  In California, the term "pre-

-5-

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    loss condition" as used in an insurance contract plainly means "preaccident safe, mechanical, and

2    cosmetic condition." *Id.* at 7 (citing *Ray v. Farmers Ins. Exch.,* 200 Cal. App. 3d 1411, 1415-16

3    (1988)). The *Levy* court found that the insured's claim failed, in part, because it did not allege

4    how the car would have differed if his requested inspections and repairs been completed. *Id.*

5        An insurer does not bear the burden of determining the cost of placing a vehicle in its pre-

6    loss condition. Rather, an insured bears the initial responsibility of determining the "actual cash

7    value" of the property at the time of the loss and must furnish written notice of the claim to the

8    insurer, along with written proof concerning the occurrence and extent of the loss. *See*

9    *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.,* 92 Cal. App. 4th 886, 894 (2001)

10    ("Thus, the insured carries the actual responsibility to determine the 'actual cash value,' or the fair

11    market value of the property at the time of the loss."); *see also Paulfrey v. Blue Chip Stamps*, 150

12    Cal. App. 3d 187, 200 (1983).

13        The *Levy* court emphasized that courts should not determine whose repair standards an

14    insurer must follow — "something California regulators have expressly declined to do." *Levy,* 150

15    Cal. App. 4th at 8. To impose such standards on an insurance company would amount to

16    rewriting "a policy to bind the insurer to a risk that it did not contemplate and for which it has not

17    been paid." *Id.* at 7 (citation omitted); *see also Joaquin v. Geico General Ins. Co.,* 2008 WL

18    53150 (N.D. Cal., Jan. 2, 2008) (dismissing insured's breach of contract claim based on the

19    insurer's method of conducting a labor rate survey where no policy language addressed these

20    standards).

21        Both federal circuit courts to have considered this issue have reached the same conclusion.

22    For instance, in *Sonnier v. State Farm Mut. Auto Ins. Co.,* 509 F.3d 673 (5th Cir. 2007), the

23    plaintiffs alleged State Farm breached its policy by failing to pay for seatbelt inspections

24    following collisions. The Court found that State Farm's policy language — similar in relevant

25    respect to Allstate's here — required the insurer to repair or replace damage or loss, but imposed

26    no obligation to finance or conduct any inspection:

27        There is no policy language describing State Farm's duty to conduct or
    pay for automobile inspections. State Farm's duty is to pay for loss or
28        damage to Appellants' vehicles, measured by the cost of repair....

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

-6-

1

> Absent a contractual provision or legislative act calling for an extensive
> seatbelts inspection upon the occurrence of any automobile collision,
> we will not enlarge the meaning of "cost of repair" beyond its everyday
> understanding.

*Id.* at 676.  The Court found that State Farm was obligated only to pay for the loss based upon the

items in need of repair as identified by a written estimate from the body shop.  *Id.*  In particular, it

held the policy contained no provision requiring the loss estimate to include a seatbelts inspection.

*Id.; see also Hall v. State Farm Mut. Auto. Ins. Co.*, 215 F. App'x. 423, 2007 WL 215662 (6th

Cir. 2007) (similarly dismissing insured's breach of contract claim for failure to state a cognizable

cause of action where insured claimed that the insurer was obligated to pay for seat belt

inspections).

As in *Levy, Sonnier* and *Hall,* plaintiff's generalized claim that Allstate failed to follow

"industry standards" is legally insufficient to establish a compensable loss.  Plaintiff's policy does

not require Allstate to conduct and pay for a search of all conceivable hypothetical damage to a

vehicle, nor does it require Allstate to pay to repair or replace damage or loss that has not been

shown to exist.  Accordingly, the Complaint should be dismissed.

2.    To The Extent Plaintiff Claims His Seatbelts Were Actually Damaged,
      This Action Must Be Stayed Pending Completion of Appraisal.

To the extent plaintiff claims his seatbelts were, in fact, damaged in the collision and now

in need of repair, then this case merely involves a dispute over the amount of plaintiff's claim, not

coverage under his policy.  Allstate has never contested that its policy covers direct and accidental

loss to insured automobiles — including damage to seatbelts.  Any dispute over the amount of

plaintiff's insured loss, however, must be submitted to appraisal.  (*See* Exhibit A at 21.)

California law acknowledges the binding effect of contractual appraisal provisions and

demands compliance therewith.  A contractually agreed-upon appraisal clause is an arbitration

agreement.  *Michael v. Aetna Life & Cas. Ins. Co.*, 88 Cal. App. 4th 925, 934 (2001) ("agreement

providing for an appraisal is therefore considered to be an arbitration agreement subject to

statutory contractual arbitration law in the California Arbitration Act"); *Cmty. Assisting Recovery

v. Aegis Sec. Ins. Co.*, 92 Cal. App. 4th 886, 893 (2001) ("appraisal term creates an arbitration

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

CASE NO.  C 08-1236

ALLSTATE'S MOTION TO DISMISS
OR, ALTERNATIVELY, TO STAY

1   agreement subject to the statutory contractual arbitration law"); *Louise Gardens of Encino*

2   *Homeowners' Ass'n, Inc. v. Truck Ins. Exch., Inc.*, 82 Cal. App. 4th 648, 658 (2000) ("agreement

3   to conduct an appraisal contained in a policy of insurance constitutes an "agreement" subject to

4   the statutory contractual arbitration law"). Where a contract requires arbitration or appraisal prior

5   to the commencement of litigation, such a provision must be honored before any suit is brought.

6   *Federal Ins. Co. v. Superior Court (Mackey)*, 60 Cal. App. 4th 1370, 1375 (1998) (staying action

7   pending resolution of dispute pursuant to contractual arbitration provision).

8       In federal court, the Federal Arbitration Act ("FAA") governs enforcement of agreements

9   to arbitrate, the manner of conducting arbitrations, and standards for reviewing and enforcing

10  arbitration awards.[5] It mandates the enforcement of arbitration agreements arising out of

11  transactions involving interstate commerce, and provides in relevant part as follows:

12          A written provision in any ... contract evidencing a transaction
            involving commerce to settle by arbitration a controversy thereafter
13          arising out of such contract ... shall be valid, irrevocable, and
            enforceable, save upon such grounds as exist at law or in equity for the
14          revocation of any contract.

15

16  9 U.S.C. § 2 et seq. *See also Warren-Guthrie v. Health Net*, 84 Cal. App. 4th 804 (2000)

17  *overruled on another point in Cronus Investments v. Concierge Services*, 35 Cal. 4th 376, 393,

18  fn.8 (2005) (an insurance policy is within the scope of the FAA as affecting interstate commerce).

19      As explained by the California Supreme Court, the "FAA, and section 2 in particular, 'was

20  intended to reverse centuries of judicial hostility to arbitration agreements,' by placing arbitration

21  agreements 'upon the same footing as other contracts.' Through the FAA, 'Congress precluded

22  States from singling out arbitration provisions for suspect status…..." *Broughton v. Cigna*

23

24  [5] Likewise, Section 1281.2 of the California Code of Civil Procedures provides, in relevant part:
    "On petition of a party to an arbitration agreement alleging the existence of a written agreement to
25  arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall
    order the petitioner and the respondent to arbitrate the controversy if it determines that an
26  agreement to arbitrate the controversy exists…" California courts have held that the language is
    mandatory, not precatory, *see Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th
27  677, 687 (2000), and that any "doubts concerning the scope of arbitrable issues [should] be
    resolved in favor of arbitration." *Market Ins. Corp. v. Integrity Ins. Co.*, 188 Cal. App. 3d 1095,
28  1098 (1987).

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

CASE NO. C 08-1236                                      ALLSTATE'S MOTION TO DISMISS
                                                       OR, ALTERNATIVELY, TO STAY

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

*Healthplans of California,* 21 Cal. 4th 1066,1074 (1999); *see also Gilmore v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, (1991) (the FAA's purpose is "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts."). The United States Supreme Court has repeatedly made clear that arbitration may resolve statutory claims as well as those purely contractual, and that in doing so, the parties do not forego substantive rights, but merely agree to resolve them in a different forum. *Broughton*, 21 Cal. 4th at 1075.

Moreover, when an issue in the litigation is subject to arbitration, the FAA requires a federal court to stay proceedings:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C § 3; *see also* 9 U.S.C. § 4.[6]

Indeed, California courts routinely stay litigation pending resolution of an arbitration or appraisal provision. *See e.g., Seidman & Seidman v. Wolfson*, 50 Cal. App. 3d 826, 834 (1975) (upholding grant of an order staying litigation, although no application to compel had been made because "it is within the implicit power of the court to stay the legal proceedings while arbitration is proceeding"); *Rodriguez v. American Technologies, Inc.,* 136 Cal. App. 4th 1110, 1124-25 (2006) (reversing trial court's order denying motion to compel arbitration and directing court to stay judicial proceedings pending arbitration); *Community Assisting Recovery v. Aegis Sec. Ins. Co.,* 92 Cal. App. 4th 886, 893 (2001) (arbitration is "the remedy to which the parties must resort

---

[6] Similarly, California Code of Civil Procedure section 1281.4 requires the Court to stay an action pending the conclusion of arbitration.

-9-

CASE NO. C 08-1236

1    for determination of the amount of loss") (emphasis added); *Unetco Industries Exchange v.*

2    *Homestead Ins. Co.*, 57 Cal. App. 4th 1459, 1468 (1997) (accord).

3         Here, under the terms of plaintiff's policy, any dispute over the amount of his loss must be

4    resolved by appraisal, not litigation, once the appraisal process has been invoked.  Under the

5    unambiguous terms of the policy, plaintiff may not proceed with an action against Allstate until

6    he has complied with all terms of the policy.  (*See* Exhibit A, Policy Endorsement at p.8: "[n]o

7    legal action may be brought against us until there has been full compliance with all the policy

8    terms.")  Because plaintiff has not complied with all terms of the policy by refusing to proceed

9    with the appraisal process, his complaint should be dismissed.  Alternatively, because Allstate has

10   invoked its contractual right to appraisal, this action is, at a minimum, premature and should be

11   stayed pending completion of the appraisal process.

**B.    Plaintiff's "Bad Faith" Claims Fail As A Matter of Law Because The
       Complaint Fails to Allege A Cognizable Breach of Contract Claim.**

14        For the reasons discussed above, the Complaint fails to plead a viable claim for breach of

15   contract.  In this circumstance, plaintiff's second and third claims for relief – for "bad faith" and

16   "breach of implied covenant of good faith and fair dealing" – fail for the same reason.

17        The duty of good faith and fair dealing is implied "as a supplement to the express

18   contractual covenants." *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 36 (1995); *Miller v. Western*

19   *General Agency, Inc.,* 41 Cal. App. 4th 1144, 1148 (1996).  Without a breach of the contract,

20   there can be no breach of the covenant of good faith and fair dealing.  *Waller*, 11 Cal. 4th at 36;

21   *San Diego Housing Comm. v. Industrial Indem.*, 68 Cal. App. 4th 526, 544 (1998).  As explained

22   in *Love v. Fire Ins. Exchange,* 221 Cal. App. 3d 1136, 1151-53 (1991), "bad faith" liability stems

23   from the failure to perform a contract, and cannot exist in the absence of its theoretical

24   underpinnings – a duty to perform a contractual obligation.  Because plaintiff pleads no

25   cognizable claim for breach of contract, he necessarily cannot allege a claim for breach of the

26   good-faith covenant.

27        Further, plaintiff's bad faith claims are based on hypothetical damage or loss to seatbelts

28   allegedly caused by Allstate's failure to pay for "the inspection *and/or* replacement" of the seat

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415)882-5000

-10-

belts. (Compl. 68 (emphasis added).) Such uncertain, hypothetical damage or loss summarily defeats plaintiff's conclusory allegation that Allstate's actions were "unreasonable" and taken "with conscious disregard of the rights of the Plaintiff." (*See* Compl. ¶¶ 68, 71.) If plaintiff *himself* cannot conclusively identify any such damage necessitating repair or replacement, as a matter of law, he is precluded from faulting Allstate for failing to pay for it. *See Love*, 221 Cal. App. 3d at 1151 ("bad faith" claim requires proof that insurer withheld benefits unreasonably or without proper cause); *Austero v. National Cas. Co. of Detroit, MI*, 84 Cal. App. 3d 1, 30 (1978), *disapproved on other grounds in Egan v. Mut. Of Omaha Ins. Co.*, 24 Cal. 3d 809 (1979) ("an insurer is not required to pay every claim presented to it," but "has a duty to its other policyholders and to the stockholders . . . not to dissipate its reserves through the payment of meritless claims").

Because plaintiff has failed to allege any breach of contract — let alone an *unreasonable* breach of contract — his second and third claims should be dismissed without leave to amend.

**C.    The Complaint Fails to State a Claim for "Fraud/Misrepresentation."**

In addition, plaintiff's fourth claim, for "fraud/misrepresentation," fails to state facts upon which relief because plaintiff (1) fails to plead any false representation with specificity; and (2) fails to allege resulting damages.

The Federal Rules of Civil Procedure require that, in a cause of action for fraud, "the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). To state a claim for fraud, plaintiff must factually and specifically allege (a) a misrepresentation, (b) knowledge of falsity, (c) intent to defraud/to induce reliance, (d) justifiable reliance, and (e) resulting damage. *Nagy v. Nagy*, 210 Cal. App. 3d 1262, 1268 (1989). Accordingly, the plaintiff must allege the time, place, and content of the alleged fraud or misrepresentation, as well as the identity of the person who committed it. *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1547 n.7 (9th Cir. 1994) *superceded by statute on other grounds*; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987) *superceded by statute on other grounds*; *see also Stansfield v. Starkey*, 220 Cal. App. 3d 59, 73 (1990) (to allege fraud properly, the plaintiff must plead facts that "show how, when, where, to whom, and by what means the representations were

-11-

ALLSTATE'S MOTION TO DISMISS
OR, ALTERNATIVELY, TO STAY

1    tendered" (emphasis added)).  Where a plaintiff fails to meet this standard, the Court may dismiss

2    a fraud claim *with prejudice*.  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

3        Plaintiff's claim for "fraud / misrepresentation" falls far short of meeting this standard.

4    The complaint simply alleges that, by issuing plaintiff the policy, Allstate negligently or

5    intentionally misrepresented its intent to perform its contractual obligations thereunder.  (Compl.,

6    ¶ 19.)  These allegations are legally insufficient.

7        1.    The Complaint Fails to Plead "Falsity" With Specificity.

8        The first problem with plaintiff's fraud claim is his failure to satisfy the "falsity

9    requirement," which requires him to allege an "explanation as to why the statement or omission

10    complained of was false or misleading."  *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th

11    Cir. 1999).  As the Ninth Circuit explained in GlenFed, 42 F.3d at 1548-49:

> The plaintiff must set forth what is false or misleading about a
> statement, and why it is false.  In other words, the plaintiff must
> set forth an explanation as to why the statement or omission
> complained of was false or misleading. . . . Further, the
> statement or omission must be shown to have been false or
> misleading when made.

17    Hence, to satisfy the Ninth Circuit's "falsity" requirement, plaintiff must allege facts (not

18    conclusions) which, if true, would show Allstate's "representation" was false when it issued the

19    policy.  As is explained above, however, Allstate has *not* breached the policy.  A defendant cannot

20    be liable on a claim of "false promise to perform" unless – at a minimum – it failed to perform.

21    Plaintiff alleges that Allstate represented "that it would completely restore [plaintiff's] post-

22    collision Allstate-insured vehicle[.]"  (Compl., ¶ 75.)  There is no contractual language to support

23    this assertion and, therefore, it cannot be the basis of a misrepresentation claim.

24        Further, plaintiff claims the alleged misrepresentation was false because Allstate "did not

25    underwrite the post-collision inspection and repair of the seatbelts…" (Compl., ¶ 76.)  As

26    previously explained, Allstate has no obligation to inspect the seatbelts in plaintiff's car.

27    Therefore, as a matter of law, Allstate's alleged failure to do so cannot form the basis of a

28    misrepresentation claim.

-12-

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

ALLSTATE'S MOTION TO DISMISS
OR, ALTERNATIVELY, TO STAY

1    Plaintiff's claim boils down to the argument that Allstate's failure to perform its

2    contractual obligations suggests, in retrospect, that it never intended to do so. Allstate could only

3    have failed to pay for the costs of any actual needed repairs *after* the accident occurred. The

4    Ninth Circuit, however, has explicitly rejected this "fraud by hindsight" theory. *GlenFed*, 42 F.3d

5    at 1549. Instead, plaintiff must allege contemporaneous facts showing Allstate's "representation"

6    was false when made. *Id.* That is, plaintiff must allege specific facts *contemporaneous to his*

7    *purchase of the policy* which, if true, would establish Allstate then had no intent to perform. By

8    definition, any fraud must have occurred before the policy was issued. Plaintiff's nebulous,

9    retrospective allegation that Allstate seems never to have had any intention of performing its

10   contractual obligations is insufficient under federal law.

11           2.    Plaintiff Alleges No Damages Caused By Any Alleged "Misrepresentation."

12   Fraud without resulting damage furnishes no ground for relief. *Empire West v. Southern*

13   *California Gas Co.*, 12 Cal. 3d 805, 810, n.2 (1974). "[U]nless the plaintiff merely seeks to

14   rescind the contract, it must suffer actual monetary loss to recover on a fraud claim." *Alliance*

15   *Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995) (emphasis added). *See also Molko v.*

16   *Holy Spirit Assn.*, 46 Cal. 3d 1092, 1108 (1988) *superceded on a different point as stated in*

17   *Aguilar v. Atlantic Richfield Co.*, 25 Cal. 4th 826, 854 (2001).

18           Here, plaintiff does not allege he suffered any actual monetary loss as a result of Allstate's

19   alleged "misrepresentation." Instead, he alleges that Allstate realized a financial benefit and asks

20   the Court to "disgorge those financial benefits." (Compl., ¶ 79.) Absent an allegation that

21   plaintiff *himself* suffered a monetary loss, however, there is no basis for a fraud claim.

22           Moreover, even plaintiff's allegation of non-monetary harm is purely speculative.

23   Specifically, plaintiff alleges that Allstate's alleged misrepresentations caused him to drive a

24   vehicle that "contained possibly life-threatening defects." (*Id.* at ¶ 77) (emphasis added). Plaintiff

25   fails to allege that there was, in fact, any damage to his seatbelt that necessitated repair. Without

26   actual damages, plaintiff's claim for "fraud/misrepresentation" must be dismissed. *See, e.g.,*

27   *Williams v. Wraxall,* 33 Cal. App. 4th 120, 131-32 (1995); *Nagy,* 210 Cal. App. 3d at 1268.

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

CASE NO. C 08-1236                                    ALLSTATE'S MOTION TO DISMISS
                                                     OR, ALTERNATIVELY, TO STAY

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**D.  Plaintiff Fails to State a Claim for Unfair Competition Under Business & Professions Code §§ 17200-17208.**

Plaintiff's fifth cause of action, for "unfair competition," fails to state facts upon which relief can be granted.  Specifically, the Complaint contains no allegations of "unlawful," "unfair" or "fraudulent" activity by Allstate.  Cal. Bus. & Prof. Code § 17200.

First, plaintiff alleges no "unlawful" conduct by Allstate.  Plaintiff seeks to premise his Section 17200 claim on Allstate's alleged violations of California Insurance Code sections 1874.85-1874.87, which are part of California's Insurance Fraud Prevention Act.  This Act was intended to assist law enforcement agencies in their investigation and discovery of insurance fraud.  *See* Cal. Ins. Code § 1871.  The Act identifies certain measures to be taken by insurers to screen for fraudulent claims in order to "reduce the incidence of severity and automobile insurance claim payments" and to produce a "commensurate reduction in automobile insurance premiums."  *Id.*  The particular provisions cited in the Complaint broadly require insurers to review and verify a statistical sample of submitted repair estimates to identify fraudulent loss claims — not to conduct additional, extensive seatbelt inspections.

In addition to the fact that these statutes are substantively irrelevant, they cannot supply the basis for a Section 17200 claim because they create no private right of action.  It is well settled that Section 17200 "does not give a plaintiff license to 'plead around' the absolute bars to relief contained in other possible causes of action by recasting those causes of action as ones for unfair competition."  *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001); *see also Textron Fin'l Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1070 (2004) (accord); *Safeco Ins. Co. of America v. Superior Court*, 216 Cal. App. 3d 1491, 1494 (1990) (holding that the plaintiff could not file a Section 17200 claim based on a statute that does not provide a private right of action); *Maler v. Superior Court*, 220 Cal. App. 3d 1592, 1597-98 (1990) (accord).  Hence, an "unlawful" claim under Section 17200 can only be premised on the violation of a statute or regulation for which there is a private right of enforcement.

Adoption of a regulatory statute does not automatically create a private right to sue over its violation.  *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 62 (1999).  To the

-14-

ALLSTATE'S MOTION TO DISMISS
OR, ALTERNATIVELY, TO STAY

1    contrary, a statute creates a private right of action only if the statutory language or legislative

2    history affirmatively indicates such an intent "in clear, understandable, unmistakable terms." *Id.*

3    at 62-63; *Farmers Ins. Exch. v. Superior Court*, 137 Cal. App. 4th 842, 849-50 (2006); *accord*

4    *Nowlon v. Koram Ins. Ctr., Inc.*, 1 Cal. App. 4th 1437, 1444-45 (1991) (absent some express

5    provision for civil liability, courts cannot assume a private cause of action may be brought any

6    time a legislative enactment is violated). Thus, the default presumption is *against* recognition of a

7    private right of action. Here, there are no "clear, understandable, unmistakable" provisions of The

8    Insurance Frauds Prevention Act that demonstrate the Legislature intended to create a private

9    right of enforcement under it. As a result, plaintiff cannot premise a claim under Section 17200

10   on these statutes.

11        Nor does plaintiff allege "unfair" conduct for purposes of Section 17200. "Although the

12   unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose

13   their own notions of the day as to what is fair or unfair." *Cel-Tech Communications, Inc. v. Los*

14   *Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 182 (1999). There are two lines of authority for

15   determining what constitutes "unfair" conduct under Section 17200. "One line defines 'unfair' as

16   prohibiting conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious

17   to consumers and requires the court to weigh the utility of the defendant's conduct against the

18   gravity of the harm to the alleged victim . . . The other line of cases holds that the public policy

19   which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL

20   must be tethered to specific constitutional, statutory, or regulatory provisions." *Bardin v.*

21   *DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260-1261 (2006) (citations omitted).

22        Here, as explained above, plaintiff has identified no specific constitutional, statutory, or

23   regulatory provisions Allstate has violated. Nor has he alleged facts demonstrating that Allstate's

24   actions were "immoral, unethical, oppressive, unscrupulous or substantially injurious to

25   consumers" under Section 17200. As explained in section A(1) above, regardless of the status of

26   "industry standards," Allstate is not contractually obligated to inspect the seatbelts of the cars it

27   insures. A corporation's failure to follow ill-defined "industry standards" will not support

28   liability under Section 17200. *See Bardin*, 136 Cal. App. 4th at 1260-1261 (allegations that

-15-

ALLSTATE'S MOTION TO DISMISS
OR, ALTERNATIVELY, TO STAY

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    defendant failed to follow "industry standards" did not allege "immoral, unethical, oppressive,

2    unscrupulous or substantially injurious to consumers"). Indeed, in the unpublished portion of the

3    *Levy* decision, the court rejected the insured's attempt to premise a Section 17200 claim on

4    allegations that State Farm failed to follow ill-defined "industry standards" that were contrary to

5    its contractual obligations. *See Levy v. State Farm Mutual Automobile Ins. Co.*, 150 Cal. App. 4th

6    1, 6-9, 58 Cal. Rptr. 3d 54 (2007).[7]

7         Finally, the Complaint alleges no "fraudulent" conduct by Allstate. According to plaintiff,

8    Allstate's "practice of failing to underwrite the post-collision inspections and repairs of seat belts .

9    . . and failure to restore . . . vehicles to their pre-loss condition . . . constitutes fraudulent business

10   acts or practices" under Section 17200. (Compl., ¶ 85.) Such allegations bespeak no "fraud" (*i.e.*

11   factual misrepresentation) at all. Indeed, as explained above, the Complaint fails to factually

12   allege the elements of fraud. For the same reasons, plaintiff has failed to allege "fraudulent"

13   conduct sufficient to support a Section 17200 claim.

14        In short, plaintiff has failed to allege any "unlawful," "unfair" or "fraudulent" conduct

15   sufficient to support a Section 7200 claim. Accordingly, Allstate's motion to dismiss should be

16   granted.

17   **E.    The Complaint Fails to Plead a Cause of Action Under RICO.**

18        "To state a civil claim under Racketeer Influenced and Corrupt Organizations Act (RICO),

19   plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

20   activity (5) causing injury to plaintiffs' 'business or property.'" *Ove v. Gwinn*, 264 F.3d 817, 825

21   (9th Cir. 2002). Under Rule 9(b)'s stringent pleading requirements, a plaintiff must not only

22   allege the elements of a RICO claim, but must supply facts specifying the role of each defendant

23

24   [7] The complete decision, including the unpublished sections, is attached hereto as Ex. C.
25   Although they are not binding authority, unpublished opinions from the California Court of
     Appeal are routinely relied upon by courts for their persuasive value. *See Conrad v. Ball*, 24 Cal.
26   App. 4th 439, 443 (1994) (noting that unpublished opinions "may be cited if they are not relied
     on" and citing unpublished opinions to address the "effect of orders affecting the publication
27   status"); *People v. McDaniels*, 21 Cal. App. 4th 1560, 1566 (1994) (adopting text from an
     unpublished opinion and holding that court below could have considered "the analysis in an
28   unpublished opinion"); *Cynthia D. v. Super. Ct. (San Diego)*, 5 Cal. 4th 242, 254 n. 9 (1993)
     (accord).

-16-

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    in the allegedly fraudulent scheme. *See Lancaster Community Hospital v. Antelope Valley*

2    *Hospital District,* 940 F.2d 397, 405 (9th Cir. 1991) (plaintiff must plead time, place and manner

3    of alleged fraud); *Comwest v. American Operator Services, Inc.,* 765 F. Supp. 1467, 1471 (C.D.

4    Cal. 1991) (accord).

5        Here, the Complaint contains no particularized factual allegations showing that Allstate

6    engaged in a single predicate criminal act qualifying as racketeering activity under 18 U.S.C. §

7    1961 or that Allstate participated in a pattern of racketeering activity through a RICO enterprise

8    (18 U.S.C. §§ 1961(5), 1962(c)). At most, the complaint contains only general and conclusory

9    allegations that Allstate "failed to honor its obligation" to policyholders. Not only does plaintiff

10    fail to allege the underlying acts with particularity, he fails to allege that Allstate's conduct

11    constituted a "racketeering activity" at all. *See Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1530 (9th

12    Cir. 1995) (stating that conclusory allegations of racketeering are insufficient to state a claim

13    under RICO).

14        Plaintiff's RICO claim also is inadequate because he fails to identify a "person" and his

15    identification of an "enterprise" amounts to no more than a reference to the conduct and activities

16    of Allstate, which is insufficient to state a claim. "Section 1962(c) requires a plaintiff to allege as

17    a defendant the 'person' or 'persons' who are distinct from the 'enterprise' and whose business

18    the enterprise is conducting." *Nordberg v. Trilegiant Corp.,* 445 F.Supp.2d 1082, 1090 (N.D. Cal.

19    2006) (*citing Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1533 (9th Cir.1992)). Plaintiff alleges,

20    "Allstate constitutes an 'enterprise'… Allstate is a corporation that is and continues to be engaged

21    in activities that affect interstate commerce." (Compl., ¶ 90.) As a matter of law, a single

22    corporate defendant cannot constitute both a person and an enterprise for the purposes of pleading

23    a RICO cause of action because one entity cannot associate or conspire with itself. *Nordberg,* 445

24    F. Supp .2d at 1090 (citations omitted).

25        Further, plaintiff fails to allege that the conduct of Allstate proximately damaged him in

26    any way. "To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete

27    financial loss…" *Ove,* 264 F.3d at 825. Here, although plaintiff asks the Court to "disgorge" all

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

-17-

proceeds that Allstate allegedly derived from its unnamed RICO violation, he fails to allege that he *himself* suffered any injury caused by Allstate's alleged conduct.

Plaintiff's Complaint thus distills to mere conclusions and conjecture, none of which satisfy the pleading requirements for a RICO cause of action. Indeed, the Complaint seems to make slapdash RICO allegations as an afterthought, without even coming close to a well-pleaded claim. Accordingly, plaintiff's RICO claim should be dismissed.

**F.    At A Minimum, Allstate Insurance Company and Allstate Property and Casualty Insurance Company Should Be Dismissed Because Plaintiff Had No Contractual Relationship With Them And Has Failed To Plead Any Allegations Against Them.**

Finally, and in any event, defendants Allstate Insurance Company and Allstate Property and Casualty Insurance Company must be dismissed from this action because they were not parties to plaintiff's insurance policy. To state a claim for breach of contract, a party must plead the existence of a contract, his or her performance of the contract (or excuse for nonperformance), the defendant's breach, and resulting damage. *See, e.g., Gautier v. General Telephone Company*, 234 Cal. App. 2d 302, 305 (1965); *Melican v. Regents of the Univ. of Cal.*, 151 Cal. App. 4th 168, 174 (2007). Plaintiff cannot plead any one of these elements against Allstate Insurance Company and Allstate Property and Casualty Insurance Company because he had no contractual relationship with these companies. "Breach of contract cannot be made the basis of an action for damages against defendants who did not execute it and who did nothing to assume its obligation." *Gold v. Gibbons*, 178 Cal. App. 2d 517, 519 (1960).

Plaintiff entered into an insurance contract with Allstate Indemnity Company — not Allstate Insurance Company or Allstate Property and Casualty Insurance Company. All of plaintiff's claims stem from his singular allegation that Allstate failed to comply with the terms of its insurance policy. Neither Allstate Insurance Company nor Allstate Property Casualty Insurance Company was a party to plaintiff's insurance policy. Furthermore, there are no allegations in the Complaint specifically directed toward Allstate Insurance Company or Allstate Property and Casualty Insurance Company. Plaintiff cannot sustain an action against parties with whom he had no privity of contract and against whom he failed to make any allegations in the

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

-18-

1  Complaint.  Both Allstate Insurance Company and Allstate Property and Casualty Insurance

2  Company must be dismissed from this suit.

3              **V.    CONCLUSION**

4        For the reasons set forth above, Allstate Indemnity Company, Allstate Insurance Company

5  and Allstate Property Casualty Insurance Company respectfully request that plaintiff's Complaint

6  be dismissed, or in the alternative, that the Court stay this action pending completion of the

7  appraisal process.

8  Dated:  April 30, 2008                    Respectfully submitted,

9                                            SONNENSCHEIN NATH & ROSENTHAL LLP

10

11                                           By: _____/s/_____
                                                        Sonia Martin

12
                                             Attorneys for Defendants
13                                           ALLSTATE INDEMNITY COMPANY,
                                             ALLSTATE INSURANCE COMPANY and
14                                           ALLSTATE PROPERTY AND CASUALTY
                                             INSURANCE COMPANY
15

16  27296535

17

18

19

20

21

22

23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

CASE NO.  C 08-1236                          ALLSTATE'S MOTION TO DISMISS
                                             OR, ALTERNATIVELY, TO STAY

# EXHIBIT A

**Allstate Indemnity Company**

### AMENDED
# Auto Policy Declarations

## *Summary*

| | | |
|---|---|---|
| **NAMED INSURED(S)**<br>Robert Watts<br>3045 Franklin Blvd<br>Sacramento CA 95818-3951 | **YOUR ALLSTATE AGENT IS**<br>Teresa Tang<br>(916) 928-7888<br><br>2400 Del Paso Rd 166<br>Sacramento CA 95834 | **YOUR BILL**<br>lists your payment options. |

| | |
|---|---|
| **POLICY NUMBER**<br>9 14 848687 06/17 | **POLICY PERIOD**<br>Dec. 17, 2005 to June 17, 2006 at 12:01 a.m. standard time |

| | |
|---|---|
| **DRIVER(S) LISTED**<br>Robert          Jeanina | **DRIVER(S) EXCLUDED**<br>None |

| **VEHICLES COVERED** | **VEHICLE ID NUMBER** | **LIENHOLDER** |
|---|---|---|
| 1.   06  Mazda Mx5 | JM1NC25F360104481 | Golden 1 Credit Un |
| 2.   05  Honda Civic | 2HGES15525H600873 | PDP Services |

## *Total Premium*

| | |
|---|---|
| Premium for 06 Mazda Mx5 | $1,071.85 |
| Premium for 05 Honda Civic | $1,574.34 |
| **TOTAL** | **$2,646.19** |

✓  *Your total premium reflects a combined discount of $409.05*

*Your Policy Effective Date is Dec. 17, 2005*

# Allstate Indemnity Company

**Policy Number : 9 14 848687 06/17**   Your Agent:   Teresa Tang  (916) 928-7888
**Policy Effective Date: Dec. 17, 2005**

COVERAGE FOR VEHICLE # 1

# 2006 Mazda Mx5

| COVERAGE | LIMITS | | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| Automobile Liability Insurance | | | Not Applicable | $307.37 |
| • Bodily Injury | $250,000 | each person | | |
| | $500,000 | each occurrence | | |
| • Property Damage | $300,000 | each occurrence | | |
| Uninsured Motorists Insurance | $250,000 | each person | Not Applicable | $40.52 |
| for Bodily Injury | $500,000 | each accident | | |
| Automobile Medical Payments | $10,000 | each person | Not Applicable | $64.06 |
| Auto Collision Insurance | Actual Cash Value | | $500 | $471.83 |
| Waiver of deductible applies | | | | |
| Auto Comprehensive Insurance | Actual Cash Value | | $100 | $163.51 |
| Rental Reimbursement Coverage | up to $30 | per day for | Not Applicable | $24.56 |
| | | a maximum of 30 days | | |
| Total Premium for 06 Mazda Mx5 | | | | $1,071.85 |

**DISCOUNTS**   Your premium for this vehicle reflects the following discounts:
Good Driver                             Distinguished Driver

**RATING INFORMATION**   Your premium is determined based on certain information, including the following:

The estimated number of miles that this vehicle is driven annually is 12,000 - 12,999. This vehicle is driven
3-9 miles to work/school, married male licensed 17 years

If any of the information shown above is incorrect or if it changes in the future, please notify Allstate promptly.  A change in
the information could result in a premium adjustment.

# Allstate Indemnity Company

Policy Number : 9 14 84866 7 06/17    Your Agent:   Teresa Tang  (916) 928-7888
Policy Effective Date: Dec. 17, 2005

COVERAGE FOR VEHICLE # 2

## 2005 Honda Civic

| COVERAGE | LIMITS | | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| Automobile Liability Insurance | | | Not Applicable | $527.05 |
| • Bodily Injury | $250,000 | each person | | |
| | $500,000 | each occurrence | | |
| • Property Damage | $300,000 | each occurrence | | |
| Uninsured Motorists Insurance | $250,000 | each person | Not Applicable | $65.31 |
| for Bodily Injury | $500,000 | each accident | | |
| Automobile Medical Payments | $10,000 | each person | Not Applicable | $75.50 |
| Auto Collision Insurance | Actual Cash Value | | $500 | $678.73 |
| Waiver of deductible applies | | | | |
| Auto Comprehensive Insurance | Actual Cash Value | | $100 | $180.45 |
| Rental Reimbursement Coverage | up to $30     per day for | | Not Applicable | $47.30 |
| | a maximum of 30 days | | | |
| **Total Premium for 05 Honda Civic** | | | | **$1,574.34** |

## RATING INFORMATION  Your premium is determined based on certain information, including the following:

The estimated number of miles that this vehicle is driven annually is 10,000 - 10,999. This vehicle is driven
3-9 miles to work/school, married female licensed 00 years

If any of the information shown above is incorrect or if it changes in the future, please notify Allstate promptly.  A change in
the information could result in a premium adjustment.

AUTO *51000040602100304724030 3*

Information as of
February 10, 2006    **Page**  3
CA019AMD

# Allstate Indemnity Company

**Policy Number : 9 14 848687 06/17**    **Your Agent:**  Teresa Tang  (916) 928-7888
**Policy Effective Date: Dec. 17, 2005**

## Your Policy Documents

Your auto policy consists of this Policy Declarations and the documents listed below.  Please keep these together.
- Allstate Automobile Policy form AU104-3                        - Amendment of Policy Provisions form AU2250-6
- Amendment of Policy Provisions form AU2285

## Important Payment and Coverage Information

Your rate is lower because you are insuring multiple cars.

---

IN WITNESS WHEREOF, **Allstate** has caused this policy to be signed by its Secretary and its President at Northbrook,
Illinois, and if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by
an authorized agent of Allstate.


Edward J. Dixon
President


Robert W. Pike
Secretary

---

# Allstate Auto Insurance Policy

**CALIFORNIA**

**Policy:** 9 14 848687 06/17                    **Effective: June 17, 2005**

**Issued to:**
Robert Watts
3045 Franklin Blvd
Sacramento CA 95818-3951

**By your Allstate agent:**
Teresa Tang
2400 Del Paso Rd 166
Sacramento CA 95834



AUTO *61000040506200704605052810*



AU104-3

# TABLE OF CONTENTS

General ................................................ 2
When And Where The Policy Applies ...................... 2
Limited Mexico Coverage ................................2
Premium Changes .......................................2
Coverage Changes ......................................2
Duty To Report Policy Changes .........................2
Combining Limits Of Two Or More Autos Prohibited   3
Transfer ..............................................3
Termination ...........................................3
Non Renewal ...........................................3
Cancellation ..........................................3
**Part I — Automobile Liability Insurance**
        **Coverages AA and BB ...................... 4**
Insuring Agreement ....................................4
Additional Payments Allstate Will Make ................ 4
Insured Persons .......................................4
Insured Autos .........................................4
Definitions ...........................................5
Exclusions — What is not covered ..................... 5
Financial Responsibility ..............................6
Limits Of Liability ...................................6
If There Is Other Insurance ...........................6
Assistance And Cooperation ............................6
Action Against Allstate ...............................6
Bankruptcy or Insolvency ..............................6
What To Do In Case Of An Auto Accident Or Claim ... 7
**Part II — Automobile Medical Payments**
        **Coverage CC ............................... 7**
Insuring Agreement ....................................7
Insured Persons .......................................7
Insured Autos .........................................7
Definitions ...........................................7
Exclusions — What is not covered ..................... 8
Limits Of Liability ...................................8
Unnecessary or Unreasonable Medical Expenses ..... 9
If There Is Other Insurance ...........................9
Assistance And Cooperation ............................9
Action Against Allstate ...............................9
Proof Of Claim; Medical Reports .......................9
**Part III — Coordinated Medical Protection**
        **Coverage CX ............................... 9**
Insuring Agreement ....................................9
Deductible ...........................................10
Insured Persons ......................................10
Insured Autos ........................................10
Definitions ..........................................10
Exclusions — What is not covered ....................11
Limits Of Liability ..................................11
Unnecessary or Unreasonable Medical Expenses ... 11
If There Is Other Automobile Medical Insurance ..... 12

Assistance and Cooperation ...........................12
Action Against Allstate ..............................12
Proof Of Claim; Medical Reports ......................12
**Part IV — Automobile Death Indemnity Insurance**
        **Coverage CM ............................... 12**
Insuring Agreements ..................................12
Insured Persons ......................................12
Definitions ..........................................12
Exclusions — What is not covered .................... 12
Payment Of Benefits; Autopsy .........................13
Consent Of Beneficiary ...............................13
Proof Of Claim; Medical Reports ......................13
**Part V — Automobile Disability Income Protection**
        **Coverage CW ............................... 13**
Insuring Agreement ...................................13
Insured Persons ......................................13
Definitions ..........................................13
Exclusions — What is not covered .................... 13
To Whom And When Payment Is Made ................. 14
Proof Of Claim; Medical Reports ......................14
**Part VI — Uninsured Motorists Insurance**
        **Coverage SS ............................... 14**
Insuring Agreement ...................................14
Insured Persons ......................................14
Definitions ..........................................15
Exclusions — What is not covered .................... 16
Limits Of Liability ..................................16
If There Is Other Insurance ..........................16
Proof Of Claim; Medical Reports ......................17
Assistance And Cooperation ...........................17
Payment Of Loss By Allstate ..........................17
Action Against Allstate ..............................17
If We Cannot Agree ...................................17
**Part VII — Protection Against Loss To The Auto**
        **Coverages DD, HH, HE, HF, HG, JJ,**
        **UU, ZA, ZZ ................................ 18**
Insurance Agreements For Each Coverage ........... 18
Waiver Of Collision Deductible Option ............ 18
If We Cannot Agree ...................................18
Additional Payments Allstate Will Make ................ 19
Insured Autos ........................................20
Definitions ..........................................20
Exclusions — What is not covered ....................21
Right To Appraisal ...................................21
Payment Of Loss By Allstate ..........................21
Limits Of Liability ..................................22
If There Is Other Insurance ..........................22
Action Against Allstate ..............................22
Subrogation Rights ...................................22
What You Must Do If There Is A Loss ..................22

# Allstate Insurance Company

# Allstate Insurance Company

**The Company Named in the Policy Declarations**
A Stock Company
Home Office: Northbrook, Illinois

## General
This policy is a legal contract between **you** and **us**. A coverage applies only when a premium for it is shown on the Policy Declarations. If more than one **auto** is insured, premiums will be shown for each **auto**. If **you** pay the premiums when due and comply with the policy terms, **Allstate**, relying on the information **you** have given **us**, makes the following agreements with **you**.

### When And Where The Policy Applies
**Your** policy applies only during the policy period. During this time, it applies to losses to the **auto**, accidents and occurrences within the United States of America, its territories or possessions or Canada, or between their ports.

The policy period is shown on the Policy Declarations. If **we** offer to renew **your** policy, **you** may continue the policy for a successive policy period of six months by paying the required renewal premium payment when due. If the required renewal premium payment isn't received on or before the end of the then current policy period, **your** policy will terminate automatically on the expiration date of the then current policy period.

### Limited Mexico Coverage
For **your** protection **you** should purchase insurance from a company licensed in Mexico. However, the coverage of this policy for an insured private passenger or **utility auto** is extended to cover that **auto** within the Republic of Mexico. This coverage applies only while the insured **auto** is within 75 miles of the United States border and only for a period not to exceed ten days after each separate entry into the Republic of Mexico.

If loss or damage occurs which may require repair of the insured **auto** or replacement of any part(s) while the **auto** is in Mexican territory, the basis for adjustment of the claim will be as follows:

The repair or replacement costs will not exceed the cost of having the repairs or replacements

made at the nearest point in the United States where the repairs or replacements can be made. The cost for towing, transportation and salvage operations of the **auto** while within Mexican territory are not covered under this policy.

### WARNING
Unless **you** have auto insurance written by a Mexican insurance company, **you** may spend many hours or days in jail if **you** have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid complications and possible penalties under the laws of Mexico, including the impoundment of **your auto**.

## Changes
### Premium Changes
The premium for each **auto** which **Allstate** agrees to insure based on information **Allstate** has received from **you** or other sources. **You** agree to cooperate with **us** in determining if this information is correct, if it is complete, and if it changes during the policy period. **You** agree that if this information changes or is incorrect or incomplete, **we** may adjust **your** premium accordingly during the policy period.

### Coverage Changes
When **Allstate** broadens a coverage during the policy period without additional charge, **you** have the new feature if **you** have the coverage to which it applies. The new feature applies on the date the coverage change is effective in **your** state. Otherwise, the policy can be changed only by endorsement. Any change in **your** coverage will be made using the rules, rates and forms in effect, and on file if required, for **our** use in **your** state.

### Duty To Report Policy Changes
**Your** policy was issued in reliance on the information **you** provided concerning **autos** and persons insured by the policy. To properly insure **your auto**, **you** should promptly notify **us** when **you** change **your** address or whenever any **resident** operators insured by **your** policy are added or deleted.

**You** must tell **us** within 30 days when **you** acquire a replacement **auto**. If **you** don't, certain coverages of this policy may not apply.

**Page 2**

AUTO *6100004050620070460528II*


# Allstate Insurance Company

When **you** acquire an additional **auto**, **we** will provide 30 days of coverage immediately after **you** become the owner. However, **we** will provide this coverage only if:

1. **you** acquire the **auto** during the policy period;

2. **you** tell **us** within 30 days of acquiring the **auto**;

3. no other insurance policy provides coverage for the **auto**; and

4. **you** pay the additional premium.

**We** will not provide coverage for more than 30 days unless:

1. **you** ask **us** to insure the additional **auto** within 30 days after **you** become the owner;

2. **we** agree to provide the coverage **you** select for this **auto**; and

3. **you** pay the additional premium.

## Combining Limits Of Two Or More Autos Prohibited

If **you** have two or more **autos** insured in **your** name and one of these **autos** is involved in an accident, only the coverage limits shown on the Policy Declarations for that **auto** will apply. When **you** have two or more **autos** insured in **your** name and none of them is involved in the accident, **you** may choose any single **auto** shown on the Policy Declarations and the coverage limits applicable to that **auto** will apply.

The limits available for any other **auto** covered by the policy will not be added to the coverage for the involved or chosen **auto**.

## Transfer

This policy can't be transferred to anyone without **our** written consent. However, if **you** die, coverage will be provided until the end of the policy period for:

1. **your** legal representative while acting as such, and

2. persons covered on the date of **your** death.

## Termination

If **we** offer to renew **your** policy and **your** required premium payment isn't received on or before the end of the then current policy period, **your** policy will terminate automatically on the expiration date of the then current policy period.

## Non Renewal

If **we** don't intend to continue the policy beyond the current policy period, **we** will mail **you** notice at least 20 days before the end of the policy period.

## Cancellation

**You** may cancel this policy by writing **us** the future date **you** wish to stop coverage.

**Allstate** may cancel part or all of this policy by mailing notice to **you** at **your** last known address. If **we** cancel because **you** didn't pay the premium, the date of cancellation will be at least 10 days after the date of mailing. If **we** cancel for any reason other than non-payment of premium, **we** will give **you** notice as follows:

1. During the first 60 days the original policy is in effect, **we** will give **you** 10 days notice of cancellation.

2. After the first 60 days, **we** will give **you** 20 days notice of cancellation.

Proof of mailing the notice will be proof of notice. A refund, if due, will be in proportion to the time **your** policy has been in effect. Cancellation will be effective even if the refund is not made immediately.

After **your** original policy has been in effect 60 days, **Allstate** won't cancel or reduce **your** coverage during the policy period unless:

1. **you** don't pay the premium when it's due;

2. **you** or any member of **your** household has had a driver's license suspended or revoked during the last 12 months; or

3. **Allstate** has mailed notice within the first 60 days that **we** don't intend to continue the policy.

**Page 3**

## Allstate Insurance Company

# Part I
# Automobile Liability Insurance
# Bodily Injury—Coverage AA
# Property Damage —
# Coverage BB

Allstate will pay those damages which an insured person is legally obligated to pay because of:
1.  **bodily injury,** sustained by any person, and

2.  damage to, or destruction of, property.

Under these coverages, **your** policy protects an insured person from liability for damage arising out of the ownership, maintenance or use, loading or unloading of an insured **auto.**

**We** will defend an insured person sued for damages which are covered by this policy even if the suit is groundless or false. **We** will choose the counsel. **We** may settle any claim or suit if **we** believe it is proper. **We** will not defend an insured person sued for damages which are not covered by this policy.

## Additional Payments Allstate Will Make

When **we** defend an insured person under this Part, **we** will pay:
1.  up to $50 a day for loss of wages or salary if **we** ask that person to attend hearings or trials to defend against a **bodily injury** suit. **We** won't pay for loss of other income. **We** will pay other reasonable expenses incurred at **our** request.

2.  court costs for defense.

3.  interest accruing on damages awarded. **We** will pay this interest only until **we** have paid, offered, or deposited in court the amount for which **we** are liable under this policy. **We** will only pay interest on damages not exceeding **our** limits of liability.

4.  premiums on appeal bonds and on bonds to release attachments, but not in excess of **our** limit of liability. **We** aren't required to apply for or furnish these bonds.

**We** will repay an insured person for:
1.  the cost of any bail bonds required due to an accident or traffic law violation involving the

use of the insured **auto. We** won't pay more than $300 per bond. **We** aren't required to apply for or furnish these bonds.

2.  any expense incurred for first aid to others at the time of an **auto** accident involving the insured **auto.**

## Insured Persons

1.  While using **your** insured **auto:**
    a)  **you,**
    b)  any **resident,** and
    c)  any other person using it with **your** permission.

2.  While using a non-owned **auto:**
    a)  **you,**
    b)  any **resident** relative using a four wheel private passenger **auto** or **utility auto.**

3.  Any other person or organization liable for the use of an insured **auto** if the **auto** is not owned or hired by this person or organization, provided the use is by an insured person under 1. or 2. above and then only for that person's acts or omissions.

## Insured Autos

1.  Any **auto** described on the Policy Declarations. This includes the four wheel private passenger **auto** or **utility auto you** replace it with.

2.  An additional four wheel private passenger **auto** or **utility auto you** become the owner of during the policy period will be covered for 30 days immediately after **you** acquire it. However, **we** will provide this coverage only if **Allstate** or one of its affiliates insures all other private passenger **autos** or **utility autos you** own, and **you** pay the additional premium.

    Coverage will be continued beyond this 30 day period only if:
    a)  **you** ask **us** to continue coverage within 30 days after **you** acquire the **auto** or **utility auto;**
    b)  **we** agree to continue coverage for this additional **auto** or **utility auto;**
    c)  **you** pay the additional premium.

3.  A substitute four wheel private passenger **auto** or **utility auto,** not owned by **you** or a **resident,** being temporarily used while **your**

**Page 4**

AUTO *61000040506200704605281 2*



# Allstate Insurance Company

insured **auto** is being serviced or repaired, or if **your** insured auto is stolen or destroyed.

4. A non-owned **auto** used by **you** or a **resident** relative with the owner's permission. This **auto** must not be available or furnished for the regular use of **you** or a **resident** relative.

5. A trailer while attached to an insured **auto**. The trailer must be designed for use with a private passenger **auto** or **utility auto**. This trailer can't be used for business purposes with other than a private passenger **auto** or **utility auto**.

## Definitions

1. **"Allstate", "We", "Us", or "Our"**—means the company as indicated on the Policy Declarations.

2. **"Auto"**—means a land motor vehicle designed for use on public roads.

3. **"Bodily Injury"**—means bodily injury, sickness, disease or death.

4. **"Resident"**—means a person who physically resides in **your** household with the intention of continuing residence there. **Your** unmarried dependent children while temporarily away from home will be considered residents if they intend to resume residing in **your** household.

5. **"Utility Auto"**—means an **auto** of the pick-up body, sedan delivery or panel truck type. This **auto** must have a rated load capacity of not more than 2,000 pounds.

6. **"You" or "Your"**—means the policyholder named on the Policy Declarations and that policyholder's **resident** spouse.

## Exclusions—What is not covered

**Allstate** will not pay for those damages which an insured person is legally obligated to pay because of:

1. **bodily injury** or property damage arising out of the use of **your** insured **auto** while used to carry persons or property for a charge, or any **auto you** are driving while available for hire by the public. This exclusion does not apply to shared-expense car pools or when the three following conditions are met:

a) **you** are operating an **auto** as a volunteer service for a nonprofit charitable organization or a governmental agency; and

b) **you** are transporting physically or mentally handicapped persons or persons 60 years of age or older; and

c) **you** do not receive more than the amount allowed for by law for reimbursement of actual miles driven.

2. **bodily injury** or property damage arising out of auto business operations such as repairing, servicing, testing, washing, parking, storing, or selling **autos**. This exclusion applies only if there is other collectible liability insurance available to that person with limits at least equal to the minimum requirements of the applicable Motor Vehicle Financial Responsibility law. However, if there is no other collectible liability insurance, the maximum payable under this policy is limited to the minimum requirements of the applicable Motor Vehicle Financial Responsibility law.

However, coverage does apply to **you**, or a **resident** relative when using **your** insured **auto**.

3. **bodily injury** or property damage arising out of the use of a non-owned **auto** in any business or occupation of an insured person. However, this exclusion does not apply while **you, your** chauffeur, or domestic servant are using a private passenger **auto** or trailer.

4. **bodily injury** of any employee of any insured person arising in the course of employment. This exclusion does not apply to **your** domestic employee who is not required to be covered by a worker's compensation law or similar law.

5. **bodily injury** to a co-worker injured in the course of employment. This exclusion does not apply to **you.**

6. **bodily injury** to **you** or any **resident** of **your** household related to **you** by blood, marriage, or adoption whenever the ultimate benefits of this coverage would accrue directly or indirectly to **you** or any **resident** of **your** household related to **you** by blood, marriage or adoption.

Page 5

# Allstate Insurance Company

7. damage to or destruction of property an insured person owns, transports, is in charge of, or rents. An **auto** operated by an insured person is considered to be property in charge of an insured person. However, a private residence or a garage rented by that person is covered.

8. **bodily injury** or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.

9. **bodily injury** or property damage which would also be covered under nuclear energy liability insurance. This applies even if the limits of that insurance are exhausted.

## Financial Responsibility

When this policy is certified as proof under any motor vehicle financial responsibility law, this policy will comply with the provisions of that law.

## Limits Of Liability

The limits shown on the Policy Declarations are the maximum **we** will pay for any single **auto** accident. The limit stated for each person for **bodily injury** is the maximum **we** will pay for damages because of **bodily injury** sustained by one person in any single **auto** accident, including damages sustained by anyone else as a result of the **bodily injury**. Subject to the limit for each person, the limit stated for each occurrence is the maximum **we** will pay for damages for **bodily injury** sustained by two or more persons in any single **auto** accident. For property damage, the limit applies to damages arising from each occurrence.

The liability limits apply to each insured **auto** as shown on the Policy Declarations. The insuring of more than one person or **auto** under this policy will not increase **our** liability limits beyond the amount shown for any one **auto**, even though a separate premium is charged for each **auto**. The limits also won't be increased if **you** have other auto insurance policies that apply.

There will be no duplication of payments made under the Bodily Injury Liability and Uninsured Motorists Coverage of this policy.

An **auto** and attached trailer are considered one **auto**. Also, an **auto** and a mounted camper unit, topper, cap or canopy are considered one **auto**.

If a single "each occurrence" limit is stated on the Policy Declarations for Automobile Liability Insurance, this limit will be the maximum amount of **Allstate's** liability for both **bodily injury** and property damage arising out of any one occurrence.

## If There Is Other Insurance

If an insured person is using a substitute private passenger **auto** or non-owned **auto**, **our** liability insurance will be excess over other collectible insurance. If more than one policy applies on a primary basis to an accident involving **your** insured **auto**, **we** will bear **our** proportionate share with other collectible liability insurance.

If more than one policy applies on an excess basis, **we** will bear **our** proportionate share with other collectible excess liability insurance.

## Assistance And Cooperation

When **we** ask, an insured person must cooperate with **us** in the investigation, settlement and defense of any claim or lawsuit. If **we** ask, that person must also help **us** obtain payment from anyone who may be jointly responsible.

**We** can't be obligated if an insured person voluntarily takes any action or makes any payments other than for covered expenses for bail bonds or first aid to others.

## Action Against Allstate

No insured person may sue **us** under this coverage unless there is full compliance with all the policy terms.

If liability has been determined by judgment after trial, or by written agreement among the insured, the other person, and **us**, then whoever obtains this judgment or agreement against an insured person, may sue **us** up to the limits of this policy. However, no one has the right to join **us** in a suit to determine legal responsibility.

## Bankruptcy or Insolvency

The bankruptcy or insolvency of an insured person or that person's estate won't relieve **us** of any obligation.

Page 6

AUTO *610000405062007046052813*

# Allstate Insurance Company

## What To Do In Case Of An Auto Accident Or Claim

If an insured person has an **auto** accident, **we** must be informed promptly of all details. If an insured person is sued as the result of an **auto** accident, **we** must be informed as soon as possible.

# Part II
# Automobile Medical Payments Coverage CC

**Allstate** will pay to or on behalf of an insured person all reasonable expenses actually incurred by an insured person for necessary medical treatment, medical services or medical products actually provided to the insured person. Ambulance, hospital, medical, surgical, X-ray, dental, orthopedic and prosthetic devices, pharmaceuticals, eyeglasses, hearing aids, and funeral service expenses, and professional nursing services are covered. Payments will be made only when **bodily injury** is caused by an **auto** accident.

The treatment, services, or products must be rendered within one year after the accident. This will be extended to five years if the amount of insurance shown on the Policy Declarations for this coverage is more than $5,000.

This coverage does not apply to any person to the extent that the treatment is covered under any workers compensation law.

## Insured Persons

1. **You** and any **resident** relative who sustains **bodily injury** while in, on, getting into or out of, or when struck by an **auto** or trailer. The use of a non-owned **auto** must be with the owner's permission.

2. Any other person who sustains **bodily injury** while in, on, getting into or out of
   a) **your** insured **auto** while being used by **you, a resident** relative, or any other person with **your** permission.
   b) a non-owned **auto** if the injury results from **your** operation or occupancy.
   c) a non-owned **auto** if the injury results from the operation on **your** behalf by **your** private chauffeur or domestic servant.
   d) a non-owned private passenger **auto** or trailer if the injury results from the

operation or occupancy by a **resident** relative.

The use of non-owned **autos** must be with the owner's permission.

## Insured Autos

1. Any **auto** described on the Policy Declarations. This includes the four wheel private passenger **auto** or **utility auto** you replace it with.

2. An additional four wheel private passenger **auto** or **utility auto** **you** acquire ownership of during the policy period will be covered for 30 days immediately after you become the owner. However, **we** will provide this coverage only if **Allstate** or one of its affiliates insure all other private passenger **auto** or **utility autos you** own, and **you** pay the additional premium.

   Coverage will be continued beyond this 30 day period only if:
   a) **you** ask **us** to continue coverage within 30 days after **you** acquire the **auto** or **utility auto**;
   b) **we** agree to continue coverage for this additional **auto** or **utility auto**;
   c) **you** pay the additional premium.

3. A substitute four wheel private passenger **auto** or **utility auto**, not owned by **you** or a **resident**, temporarily used while **your** insured **auto** is being serviced or repaired, or if **your** insured **auto** is stolen or destroyed.

4. A non-owned **auto** having not less than four wheels used with the owner's permission. This **auto** must not be available or furnished for the regular use of an insured person.

5. A trailer while attached to an insured **auto**. The trailer must be designed for use with a private passenger **auto** or **utility auto**. This trailer can't be used for business purposes with other than a private passenger **auto** or **utility auto**.

## Definitions

1. **"Allstate"**, **"We"**, **"Us"**, or **"Our"**—means the company as indicated on the Policy Declarations.

2. **"Auto"**—means a land motor vehicle designed for use on public roads.

## Allstate Insurance Company

3. **"Bodily Injury"**—means bodily injury, sickness, disease or death.

4. **"Resident"**—means a person who physically resides in **your** household with the intention of continuing residence there. **Your** unmarried dependent children while temporarily away from home will be considered residents if they intend to resume residing in **your** household.

5. **"Utility Auto"**—means an **auto** of the pickup body, sedan delivery or panel truck type. This **auto** must have a rated load capacity of not more than 2,000 pounds.

6. **"You"** or **"Your"**—means the policyholder named on the Policy Declarations and that policyholder's **resident** spouse.

### Exclusions—What is not covered
This coverage does not apply to **bodily injury** to:

1. **you** or a **resident** relative while in, on, getting into or out of an **auto you** or a **resident** relative own but do not insure for this coverage.

2. **you** or a **resident** relative while in, on, getting into or out of, or struck as a pedestrian by:
   a) a vehicle operated on rails or crawler-treads, or
   b) a vehicle or other equipment designed for use off public roads, while not on public roads.

3. any person while in, on, getting into or out of:
   a) an owned **auto** while available for hire to the public. This exclusion does not apply to shared-expense car pools.
   b) an **auto** or trailer while used as a residence or premises.

4. any person, other than **you** or a **resident** relative, while using a non-owned **auto**:
   a) which is available for hire by the public, or
   b) in auto business operations such as repairing, servicing, testing, washing, parking, storing or selling of **autos**.

   Coverage is provided for **you, your** private chauffeur or domestic servant while using a private passenger **auto** or trailer in any other business or occupation.

5. any person resulting from any act of war, insurrection, rebellion, or revolution.

### Limits Of Liability
The limit shown on the Policy Declarations is the maximum **we** will pay for all expenses incurred by or for each person as the result of any one **auto** accident.

The medical payments limit applies to each insured **auto** as shown on the Policy Declarations. The insuring of more than one person or **auto** under this policy won't increase **our** limit beyond the amount shown for any one **auto**, even though a separate premium is charged for each **auto**. The limit also won't be increased if **you** have other auto insurance policies that apply.

If an insured person dies as the result of a covered **auto** accident, **we** will pay the least of the following as a funeral service expenses benefit:

1. $2,000; or

2. the Coverage CC limit of liability stated on the Policy Declarations; or

3. the remaining portion of the Coverage CC limit of liability not expended for other covered medical expenses.

This funeral service expenses benefit does not increase, and will not be paid in addition to, the limits of liability stated on the Policy Declarations for Coverage CC. This benefit is payable to the deceased insured person's spouse if a resident of the same household at the time of the accident. However, if the deceased is a minor, the benefit is payable to either parent if that parent is a resident of the same household at the time of the accident. In all other cases, the benefit is payable to the deceased insured person's estate.

There will be no duplication of payments made under the Bodily Injury Liability and Automobile Medical Payments coverages of this policy. All payments made to or on behalf of any person under this coverage will be considered as advance payments to that person. The damages payable under the Bodily Injury Liability coverage of this policy will be reduced by that amount.

AUTO *610000405062007046052814*

# Allstate Insurance Company

## Unnecessary or Unreasonable Medical Expenses

If the insured person incurs medical expenses which **we** deem to be unreasonable or unnecessary, **we** may refuse to pay those expenses and contest them. Unreasonable medical expenses are fees for medical services which are substantially higher than the usual and customary charges for those services. Unnecessary medical expenses are fees for medical services which are not usually and customarily performed for treatment of the injury, including fees for an excessive number, amount, or duration of medical services.

If the insured person is sued by a medical services provider because **we** refuse to pay contested medical expenses, **we** will pay all defense costs and any resulting judgment against the insured person. **We** will choose the counsel. The insured person must cooperate with **us** in the defense of any claim or lawsuit. If **we** ask the insured person to attend hearings or trials, **we** will pay up to $50 per day for lost wages or salary. **We** will also pay other reasonable expenses incurred at our request.

## If There Is Other Insurance

When this coverage applies to a substitute **auto** or non-owned **auto**, **Allstate** will pay only after all other collectible auto medical insurance has been exhausted.

When this coverage applies to a replacement **auto** or additional **auto**, this policy will not apply if **you** have other collectible auto medical insurance.

When this coverage applies to an owned **auto** insured by an affiliate of **Allstate** or any other insurer, **Allstate** will pay only after all other collectible auto medical insurance has been exhausted.

## Assistance And Cooperation

When **we** ask, an insured person must cooperate with **us** in the investigation, settlement and defense of any claim or lawsuit. If **we** ask, that person must also help **us** obtain payment from anyone who may be jointly responsible.

**We** can't be obligated if an insured person voluntarily takes any action or makes any payments other than for covered expenses for first aid to others.

## Action Against Allstate

No one may sue **us** under this coverage unless there is full compliance with all the policy terms.

## Proof Of Claim; Medical Reports

As soon as possible, any person making claim must give **us** written proof of claim. It must include all details **we** may need to determine the amounts payable. **We** may also require any person making claim to submit to questioning under oath and sign the transcript.

The injured person may be required to take medical examinations by physicians **we** choose, as often as **we** reasonably require. **We** must be given authorization to obtain medical reports and other records pertinent to the claim.

# Part III
# Coordinated Medical Protection Coverage CX

**Allstate** will pay to or on behalf of an insured person all reasonable expenses incurred for necessary medical treatment, services, or products actually provided to an insured person. Ambulance, hospital, medical, surgical, X-ray, dental, orthopedic and prosthetic devices, pharmaceuticals, eyeglasses, hearing aids, funeral service expenses, and professional nursing services are covered. Payments will be made only when **bodily injury** is caused by an **auto** accident. The treatment, services, or products must be rendered within five years after the accident.

Coverage CX applies to **you** and **resident** relatives on an excess basis only. This means that **Allstate** will not be liable to the extent that any elements of loss covered under Coordinated Medical Protection are paid, payable or required to be provided to or on behalf of **you** or a **resident** relative under the provisions of any and all **primary medical plans**.

Coverage CX will apply on a primary basis to expenses for elements of loss which are not covered under the **primary medical plan** applicable to **you** or **resident** relatives.

Coverage CX does not apply to any person to the extent that the treatment is covered under any workers compensation law.

Page 9

# Allstate Insurance Company

## Deductible

If there is no **primary medical plan** covering **you** and **resident** relatives in effect on the date of the accident, Allstate will pay only when covered expenses for **you** or a **resident** relative exceed $2,000. **We** will then pay only the excess amount. This deductible applies to each person. This paragraph does not apply if coverage under the **primary medical plan** terminates within 30 days prior to the loss.

This deductible does not apply to funeral service expenses.

## Insured Persons

1.  **You** and any **resident** relative who sustains **bodily injury** while in, on, getting into or out of, or when struck by, an **auto** or trailer. The use of a non-owned **auto** must be with the owner's permission.

2.  Any other person who sustains **bodily injury** while in, on, getting into or out of
    a)  **your** insured **auto** while being used by **you**, a **resident** relative, or any other person with **your** permission.
    b)  a non-owned **auto** if the injury results from **your** operation or occupancy.
    c)  a non-owned **auto** if the injury results from the operation on **your** behalf by **your** private chauffeur or domestic servant.
    d)  a non-owned private passenger **auto** or trailer if the injury results from the operation or occupancy by a **resident** relative.

The use of non-owned **autos** must be with the owner's permission.

## Insured Autos

1.  Any **auto** described on the Policy Declarations. This includes the four wheel private passenger **auto** or **utility auto** you replace it with.

2.  An additional four wheel private passenger **auto** or **utility auto** you acquire ownership of during the policy period will be covered for 30 days immediately after **you** become the owner. However, **we** will provide this coverage only if Allstate or one of its affiliates insure all other private passenger **autos** or **utility autos** you own, and **you** pay the additional premium.

Coverage will be continued beyond this 30 day period only if:
a)  **you** ask **us** to continue coverage within 30 days after **you** acquire the **auto** or **utility auto**;
b)  **we** agree to continue coverage for this additional **auto** or **utility auto**;
c)  **you** pay the additional premium.

3.  A substitute four wheel private passenger **auto** or **utility auto**, not owned by **you** or a **resident**, temporarily used while **your** insured **auto** is being serviced or repaired, or if **your** insured **auto** is stolen or destroyed.

4.  A non-owned **auto** having not less than four wheels used with the owner's permission. This **auto** must not be available for the regular use of an insured person.

5.  A trailer while attached to an insured **auto**. The trailer must be designed for use with a private passenger **auto** or **utility auto**. This trailer can't be used for business purposes with other than a private passenger **auto** or **utility auto**.

## Definitions

1.  **"Allstate", "We", "Us", or "Our"**—means the company as indicated on the Policy Declarations.

2.  **"Auto"**—means a land motor vehicle designed for use on public roads.

3.  **"Bodily Injury"**—means bodily injury, sickness, disease or death.

4.  **"Primary Medical Plan"**—means individual, blanket or group accident disability, health, major medical or hospitalization insurance or a health maintenance organization which covers expenses on a primary basis for treatment, services and products required due to a **bodily injury** caused by an **auto** accident. The Federal Medicare program is not a primary medical plan.

5.  **"Resident"**—means a person who physically resides in **your** household with the intention of continuing residence there. **Your** unmarried dependent children while temporarily away from home will be considered residents if they intend to resume residing in **your** household.

AUTO *6100000405062007046052815*

# Allstate Insurance Company

6. **"Utility Auto"**—means an **auto** of the pickup body, sedan delivery or panel truck type. This **auto** must have a rated load capacity of not more than 2,000 pounds.

7. **"You"** or **"Your"**—means the policyholder named on the Policy Declarations and that policyholder's **resident** spouse.

## Exclusions—What is not covered

This coverage does not apply to **bodily injury** to

1. **you** or a **resident** relative while in, on, getting into or out of an **auto** you or a **resident** relative own but do not insure for this coverage under this policy.

2. **you** or a **resident** relative while in, on, getting into or out of, or when struck as a pedestrian by:
   a) a vehicle operated on rails or crawler-treads, or
   b) a vehicle or other equipment designed for use off public roads while not on public roads.

3. any person while in, on, getting into or out of:
   a) an owned **auto** while available for hire to the public. This exclusion does not apply to shared-expense car pools.
   b) an **auto** or trailer while used as a residence or premises.

4. any person, other than **you** or a **resident** relative, while using a non-owned **auto**:
   a) which is available for hire by the public, or
   b) in auto business operations such as repairing, servicing, testing, washing, parking, storing or selling of **autos**.

   Coverage is provided for **you, your** private chauffeur or domestic servant while using a private passenger **auto** or trailer in any other business or occupation.

5. any person resulting from any act of war, insurrection, rebellion, or revolution.

## Limits Of Liability

The limit shown on the Policy Declarations is the maximum **we** will pay for all expenses incurred by or for each insured person as the result of any one **auto** accident.

The medical payments limit applies to each insured **auto** as shown on the Policy Declarations. The insuring of more than one person or **auto** under this policy won't increase **our** limit beyond the amount shown for any one **auto**, even though a separate premium is charged for each **auto**. The limit also won't be increased if **you** have other auto insurance policies that apply.

If an insured person dies as the result of a covered **auto** accident, **we** will pay the least of the following as a funeral service expenses benefit:
1. $2,000; or

2. the remaining portion of the Coverage CX limit of liability not expended for other covered medical expenses.

This funeral service expenses benefit does not increase, and will not be paid in addition to, the limits of liability stated on the Policy Declarations for Coverage CX. This benefit is payable to the deceased insured person's spouse if a resident of the same household at the time of the accident. However, if the deceased is a minor, the benefit is payable to either parent if that parent is a resident of the same household at the time of the accident. In all other cases, the benefit is payable to the deceased insured person's estate.

There will be no duplication of payments made under the Bodily Injury Liability and Coordinated Medical Protection coverage of this policy. All payments made to or on behalf of any person under this coverage will be considered as advance payments to that person. The damages payable under the Bodily Injury Liability coverage of this policy will be reduced by that amount.

## Unnecessary or Unreasonable Medical Expenses

If the insured person incurs medical expenses which **we** deem to be unreasonable or unnecessary, **we** may refuse to pay those expenses and contest them. Unreasonable medical expenses are fees for medical services which are substantially higher than the usual and customary charges for those services. Unnecessary medical expenses are fees for medical services which are not usually and customarily performed for treatment of the injury, including fees for an excessive number, amount, or duration of medical services.

# Allstate Insurance Company

If the insured person is sued by a medical services provider because **we** refuse to pay contested medical expenses, **we** will pay all defense costs and any resulting judgment against the insured person. **We** will choose the counsel. The insured person must cooperate with **us** in the defense of any claim or lawsuit. If **we** ask the insured person to attend hearings or trials, **we** will pay up to $50 per day for lost wages or salary. **We** will also pay other reasonable expenses incurred at our request.

## If There Is Other Automobile Medical Insurance
When this coverage applies to a substitute **auto** or a non-owned **auto**, **Allstate** will pay only after all other collectible auto medical insurance has been exhausted.

When this coverage applies to a replacement **auto** or additional **auto**, this policy will not apply if **you** have other collectible auto medical insurance.

When this coverage applies to an owned **auto** insured by an affiliate of **Allstate** or any other insurer, **Allstate** will pay only after all other collectible auto medical insurance has been exhausted.

## Assistance and Cooperation
When **we** ask, an insured person must cooperate with **us** in the investigation, settlement and defense of any claim or lawsuit. If **we** ask, that person must also help us obtain payment from anyone who may be jointly responsible.

**We** can't be obligated if an insured person voluntarily takes any action or makes any payments other than for covered expenses for first aid to others.

## Action Against Allstate
No one may sue **us** under this coverage unless there is full compliance with all the policy terms.

## Proof of Claim; Medical Reports
As soon as possible, any person making claim must give **us** written proof of claim. It must include all details **we** may need to determine the amounts payable. **We** may also require any person making claim to submit to questioning under oath and sign the transcript.

The injured person may be required to take medical examinations by physicians **we** choose, as often as

we reasonably require. **We** must be given authorization to obtain medical reports and other records pertinent to the claim.

# Part IV
# Automobile Death Indemnity Insurance
# Coverage CM
Allstate will pay the benefit shown on the Policy Declarations if an insured person dies as the direct result of **bodily injury** caused by an **auto** accident. The injury must be sustained while the insured person is in, on, getting into or out of, or when struck as a pedestrian by an **auto**, trailer or semi-trailer.

Benefits will be paid only if:
1. death occurs within 90 days of the **auto** accident; or

2. death occurs within 1 year of the **auto** accident and the **bodily injury** has continuously prevented the insured person from performing all duties pertaining to that person's occupation.

## Insured Persons
The person or persons shown as insured on the Policy Declarations under Coverage CM.

## Definitions
1. **"Allstate", "We"**, or **"Us"**—means the company as indicated on the Policy Declarations.

2. **"Auto"** — means a land motor vehicle designed for use on public roads.

3. **"Bodily Injury"**—means bodily injury, sickness or disease.

## Exclusions—What is not covered
This coverage does not apply to death:
1. sustained in the course of an occupation by any person while:
   a) operating, loading, unloading, assisting on, or performing any other duties related to the use of a commercial **auto**, or an **auto** hired or rented to others for a charge.

AUTO *6100004050620070460528I6*

# Allstate Insurance Company

   b)  repairing or servicing **autos**, including
       any related duties.

2.  due to suicide committed while sane or insane.

3.  due to any act of war, insurrection, rebellion,
    or revolution.

4.  sustained while in, on, getting into or out of,
    or when struck as a pedestrian by
    a)  a vehicle operated on rails or
        crawler-treads;
    b)  a vehicle or other equipment designed for
        use off public roads, while not on public
        roads; or
    c)  a vehicle when used as a residence or
        premises.

## Payment Of Benefits; Autopsy
The benefit is payable to the deceased insured
person's spouse. The spouse must be a resident
of the same household as the insured person at the
time of the accident. However, if the deceased is a
minor, the benefit is payable to either parent. That
parent must be a resident of the same household
as the minor at the time of the accident. In all other
cases, the benefit is payable to the deceased
insured person's estate.

Allstate has the right and must be given the
opportunity to make an autopsy where it is not
prohibited by law.

## Consent Of Beneficiary
The beneficiary's consent is not required for
cancellation, assignment, change of beneficiary, or
any other change under this coverage.

## Proof Of Claim; Medical Reports
As soon as possible, we must be given written
proof of claim. It must include all details we may
need to determine if benefits are payable.

We must be given authorization to obtain medical
reports and copies of records.

# Part V
# Automobile Disability Income Protection
# Coverage CW
Allstate will pay the weekly benefit shown on the
Policy Declarations if an insured person sustains
continuous total disability as a direct result of
**bodily injury** caused by an **auto** accident. The
injury must be sustained while in, on, getting into
or out of, or when struck as a pedestrian by an
**auto**, trailer or semi-trailer.

Benefits will be paid only while the insured person
is alive and only if the disability:
1.  commences within 20 days of the date of the
    accident; and

2.  during the first year after commencement,
    continuously prevents the insured person
    from performing all duties pertaining to that
    person's occupation; and

3.  during the second and subsequent years after
    commencement, continuously prevents the
    insured person from engaging in any
    occupation or employment for wage or profit.

## Insured Persons
The person or persons shown as insured on the
Policy Declarations under Coverage CW.

## Definitions
1.  **"Allstate", "We", or "Us"**—means the
    company as indicated on the Policy
    Declarations.

2.  **"Auto"**—means a land motor vehicle designed
    for use on public roads.

3.  **"Bodily Injury"**—means bodily injury, sickness
    or disease.

## Exclusions—What is not covered
This coverage does not apply to disability:
1.  sustained in the course of an occupation by
    any person while:
    a)  operating, loading, unloading, assisting
        on, or performing any other duties related
        to the use of a commercial **auto**, or an
        **auto** hired or rented to others for a
        charge.

**Page 13**

## Allstate Insurance Company

**b)** repairing or servicing **autos,** including any related duties.

**2.** due to any attempt at suicide while sane or insane.

**3.** due to any act of war, insurrection, rebellion or revolution.

**4.** sustained while in, on, getting into or out of, or when struck as a pedestrian by
   **a)** a vehicle operated on rails or crawler-treads;
   **b)** a vehicle or other equipment designed for use off public roads, while not on public roads; or
   **c)** a vehicle when used as a residence or premises.

### To Whom And When Payment Is Made
Weekly benefits are payable to the disabled insured person. Accrued weekly benefits are payable every four weeks. Any remaining balance is payable at termination of the disability period. Benefits end upon the death of the insured person.

### Proof Of Claim; Medical Reports
As soon as possible, any person making claim must give **us** written proof of claim.

The injured person may be required to take medical examinations by physicians **we** choose, as often as **we** reasonably require. **We** must be given authorization to obtain medical reports and copies of records.

# Part VI
# Uninsured Motorists Insurance Coverage SS
We will pay those damages that an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of:

**1.** **bodily injury** sustained by an insured person, and **property damage.**

**2.** **Property damage** is covered only if a separate limit is shown on the Policy Declarations for Uninsured Motorists Insurance—Property Damage.

The **bodily injury** or **property damage** must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto. **We** will not pay any punitive or exemplary damages.

The right to benefits and the amount payable will be decided by agreement between the insured person and **Allstate.** If an agreement can't be reached, the decision will be made by arbitration.

If an insured person sues a person believed responsible for the accident without **our** written consent, **we** aren't bound by any resulting judgment.

### Insured Persons
**1.** **You** and any **resident** relative.

**2.** Any other person while in, on, getting into or out of an insured auto with **your** permission.

**3.** Any other person who is legally entitled to recover because of **bodily injury** to **you,** a **resident** relative, or an occupant of **your** insured auto with **your** permission.

### An insured auto is a motor vehicle:
**1.** described on the Policy Declarations. This includes the **motor vehicle you** replace it with.

**2.** **you** become the owner of during the premium period. This additional **motor vehicle** will be covered for 30 days immediately after **you** become the owner. However, **we** will provide this coverage only if **Allstate** or one of its affiliates insure all other private passenger **motor vehicles you** own, and **you** pay the additional premium. Coverage will be continued beyond this 30 day period only if:
   **a)** **you** ask **us** to continue coverage within 30 days after **you** acquire the **motor vehicle;**
   **b)** **we** agree to continue coverage for this additional **motor vehicle;**
   **c)** **you** pay the additional premium.

**3.** not owned by **you** or a **resident** relative if being temporarily used while **your** insured auto is being serviced or repaired, or if **your** insured auto is stolen or destroyed. The **motor vehicle** must be used with the owner's permission.

**Page 14**

AUTO *6100004050620070460528617*

# Allstate Insurance Company

4. not owned by **you** or a **resident** relative, if being operated by **you** with the owner's permission. The **motor vehicle** can't be furnished for the regular use of **you** or any **resident** relative.

An insured auto is not a **motor vehicle** made available for public hire by an insured person. This restriction does not apply when the three following conditions are met:
1. **you** are operating an auto as a volunteer service for a non-profit charitable organization or governmental agency; and

2. **you** are transporting physically or mentally handicapped persons or persons 60 years of age or older; and

3. **you** do not receive more than the amount allowed for by state law for reimbursement of actual mileage driven.

## An uninsured auto is:
1. a **motor vehicle** which has no bodily injury or property damage liability bond or insurance policy in effect at the time of the accident.

2. a **motor vehicle** for which the insurer denies coverage, becomes insolvent or refuses to admit coverage except conditionally or with reservation.

3. a hit-and-run **motor vehicle** which causes:
   a) **bodily injury** to an insured person by physical contact with the insured person or with a vehicle occupied by that person. The identity of the operator and the owner of the vehicle must be unknown. The accident must be reported within 24 hours to the proper authorities. **We** must be notified within 30 days.
   b) **property damage** by direct physical contact with the insured auto. The identity of the operator or the owner of the vehicle must be known or the vehicle itself must be identified by its license number. **We** must be notified within 10 business days. This coverage does not apply if the identified vehicle has applicable property damage insurance.

   If the insured person was occupying a vehicle at the time of the accident, **we** have a right to inspect it.

4. an underinsured **motor vehicle** which has a bodily injury liability bond or bodily injury liability insurance in effect and applicable at the time of the accident, but in an amount less than the applicable bodily injury limit of liability for Uninsured Motorists Bodily Injury coverage shown on the Policy Declarations.

## An uninsured auto is not:
1. a **motor vehicle** that is lawfully self-insured.

2. a **motor vehicle** owned by any federal, state, or local government or agency.

3. a **motor vehicle** insured for bodily injury under Part I of this policy.

## Definitions
1. **"Allstate", "We", "Us",** or **"Our"**—means the company as indicated on the Policy Declarations.

2. **"Bodily Injury"**—means bodily injury, sickness, disease or death.

3. **"Motor Vehicle"**—means a land motor vehicle or trailer other than
   a) a vehicle or other equipment designed or modified for use off public roads, while not on public roads, or
   b) a vehicle when used as a residence or premises.

4. **"Property Damage"**—means damage to or destruction of the insured auto, but does not include loss of use of the insured auto, damage to personal property contained in the insured auto or damage caused by an underinsured **motor vehicle.**

5. **"Resident"**—means a person who physically resides in **your** household with the intention of continuing residence there. **Your** unmarried dependent children while temporarily away from home will be considered residents if they intend to resume residing in **your** household.

6. **"You"** or **"Your"**—means the policyholder named on the Policy Declarations and that policyholder's **resident** spouse.

## Allstate Insurance Company

### Exclusions—What is not covered

Allstate will not pay any damages an insured person is legally entitled to recover because of:

1.  **bodily injury** or **property damage** to any person who makes a settlement without **our** written consent.

2.  **bodily injury** or **property damage** sustained while in, on, getting into or out of or when struck by an uninsured **motor vehicle** which is owned by **you** or a **resident** relative.

3.  **bodily injury** or **property damage** sustained while in, on, getting into or out of a vehicle **you** own which is owned by **you** or a **resident** relative which is insured for this coverage under another policy.

4.  **bodily injury** or **property damage**, if the payment would directly or indirectly benefit any workers compensation or disability benefits insurer, including a self-insurer, or directly benefit the United States, or any state or political subdivision.

### Limits Of Liability

1.  The coverage limit shown on the Policy Declarations for:
    a)  "each person" is the maximum that **we** will pay for damages arising out of **bodily injury** to one person in any one **motor vehicle** accident, including all damages sustained by anyone else as a result of that **bodily injury**.
    b)  "each accident" is the maximum that **we** will pay for damages arising out of **bodily injury** to two or more persons in any one **motor vehicle** accident. This limit is subject to the limit for "each person".
    c)  "each accident" is the maximum that **we** will pay for **property damage** arising out of any one **motor vehicle** accident. Subject to this limit, **our** limit of liability for **property damage** will be the lessor of:
        1)  the actual cash value of the insured auto; or
        2)  the amount necessary to repair or replace the insured auto.

2.  These limits are the maximum **Allstate** will pay for any one **motor vehicle** accident regardless of the number of:
    a)  claims made;
    b)  vehicles or persons shown on the Policy Declarations; or
    c)  vehicles involved in the accident.

    The Uninsured Motorists Coverage limits apply to each insured **motor vehicle** as shown on the Policy Declarations.

3.  The limits for Coverage SS will be reduced by all amounts paid by or on behalf of the owner or operator of the underinsured **motor vehicle**.

4.  **We** are not obligated to make any payment for **bodily injury** under this coverage which arises out of the use of an underinsured **motor vehicle** until after the limits of liability for all liability protection in effect and applicable at the time of the accident have been exhausted by payment of judgments or settlements.

5.  Any loss payable under Coverage SS will be reduced by:
    a)  all amounts payable under the bodily injury liability coverage provided by this policy.
    b)  all amounts payable under any workers compensation law.

6.  Subject to the limits of liability, damages payable will be reduced by any amount paid or due under this or any other automobile policy for:
    a)  medical payments coverage; or
    b)  coordinated medical payments coverage; or
    c)  any similar medical payments insurance.

### If There Is Other Insurance

If the insured person was in, on, getting into or out of a vehicle **you** do not own which is insured for this coverage under another policy, this coverage will be excess. This means that when the insured person is legally entitled to recover damages in excess of the other policy limit, **we** will only pay the amount by which the limit of liability of this policy exceeds the limit of liability of that policy.

If more than one policy applies to the accident on a primary basis, the total benefits payable to any one

**Page 16**

# Allstate Insurance Company

person will not exceed the maximum benefits payable under the policy with the highest limit for uninsured motorists coverage. **We** will bear **our** proportionate share with other uninsured motorists coverage. This applies no matter how many autos or auto policies may be involved whether written by **Allstate** or another company.

If more than one policy applies to the accident on an excess basis, the total benefits payable to any one person will not exceed the maximum benefits payable under the policy with the highest limit for excess uninsured motorist coverage. **We** will bear **our** proportionate share with other uninsured motorist coverage. This applies no matter how many autos or auto policies may be involved whether written by **Allstate** or another company.

## Proof Of Claim; Medical Reports

As soon as possible any person making claim must give **us** written proof of claim. It must include all details **we** may need to determine the amounts payable. **We** may also require any person making claim to submit to questioning under oath and sign the transcript.

The insured person may be required to take medical examinations by physicians **we** choose, as often as **we** reasonable require. **We** must be given authorization to obtain medical reports and copies of records.

## Assistance And Cooperation

**We** may require the insured person to take proper action to preserve all rights to recover damages from anyone responsible for the **bodily injury**.

## Trust Agreement

When **we** pay any person under this coverage:
1. we are entitled to repayment of amounts paid by **us** and related collection expenses out of the proceeds of any settlement or judgment that such person recovers from any responsible party or insurer.

2. all rights of recovery against any responsible party or insurer must be maintained and preserved for **our** benefit.

3. insured persons, if **we** ask, must take proper action in their name to recover damages from any responsible party or insurer. **We** will select the attorney. **We** will pay all related costs and fees.

**We** will not ask the insured person to sue the insured of an insolvent insurer.

## Payment Of Loss By Allstate

Any amount due is payable to the insured person, the parent or guardian of an injured minor, or to the spouse of any insured person who dies. However, **we** may pay any other person or estate lawfully entitled to recover the damages.

## Action Against Allstate

No legal action can be brought against **us** under this coverage unless there is full compliance with all the policy terms or unless within one year from the date of the accident:
1. suit for **bodily injury** has been filed against the uninsured motorist in a court of competent jurisdiction,

2. agreement as to the amount due under this coverage has been concluded, or

3. formal arbitration proceedings have been instituted.

If a suit has been filed against the uninsured motorist, the insured person must provide **us** notice of the suit. The notice must be in writing and be provided within a reasonable time after the insured knew or should have known the motorist was uninsured. If **we** are prejudiced by a failure to give notice the claim will be denied. In no event will the notice be required before one year from the date of the accident.

## If We Cannot Agree

If **you** and **we** disagree on **your** right to receive any damages or on the amount, then upon the written request of either party, the disagreement will be settled by a single neutral arbitrator.

If arbitration is used, any arbitration award will be binding and may be entered as a judgment in a proper court. All expenses of arbitration will be shared equally. However, attorney fees and fees paid to medical or other expert witnesses are not considered arbitration expenses and are to be paid by the party incurring them.

Arbitration will commence within one year from the date of the accident. No cause of action shall exist against either **you** or **Allstate** as a result of exercising the right to request arbitration of a claim.

Page 17

## Allstate Insurance Company

# Part VII
# Protection Against Loss To The Auto

The following coverages apply when indicated on the Policy Declarations. Additional payments, autos insured, definitions, exclusions, and other information applicable to all these coverages appear beginning on page 19.

## COVERAGE DD
### Auto Collision Insurance

Allstate will pay for direct and accidental loss to **your** insured **auto** or a non-owned **auto** (including insured loss to an attached trailer) from a collision with another object or by upset of that **auto** or trailer. The deductible amount won't be subtracted from the loss payment in collisions involving **your** insured **auto** and another **auto** insured by **us**.

### Waiver Of Collision Coverage Deductible Option

The following applies only when the Policy Declarations indicate the Waiver of Collision Coverage Deductible Option:

The Auto Collision Insurance deductible will be waived to the extent that **you** are legally entitled to recover damages from the owner or operator of an uninsured **auto** if:

1. the damage is caused by direct physical contact between an uninsured **auto** as defined in Part VI—Uninsured Motorists Insurance of the policy, and a vehicle owned by **you** which is insured for Auto Collision Insurance under this policy; and

2. the owner or operator of the uninsured **auto** has been identified or the vehicle itself has been identified by its license number; and

3. **we** have been notified of the accident within 10 business days.

The Auto Collision Insurance deductible will not be waived when the damage is caused by an underinsured motor vehicle as defined in Part VI—Uninsured Motorists Insurance of this policy.

### If We Cannot Agree

If **you** or **we** cannot agree on the amount of the Auto Collision Insurance deductible to be waived, then upon the written request of either, the disagreement will be settled by a single neutral arbitrator. Arbitration will be conducted within one year from the date of the accident. No cause of action shall exist against either **you** or **Allstate** from exercising the right to request arbitration for a claim for the Waiver of Collision Coverage Deductible.

## COVERAGE HH
### Auto Comprehensive Insurance

**Allstate** will pay for direct and accidental loss to **your** insured **auto** or a non-owned **auto** not caused by collision. Loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, and riot or civil commotion is covered. Glass breakage, whether or not caused by collision, and collision with a bird or animal is covered.

The deductible amount will not be subtracted from the loss payment when the loss is caused by a peril listed under Coverage HE.

By agreement between **you** and **Allstate**, the deductible amount will not be subtracted from a glass breakage loss if the glass is repaired rather than replaced.

## COVERAGE HE
### Auto Fire, Lightning and Transportation Insurance

**Allstate** will pay for direct and accidental loss to **your** insured **auto** or a non-owned **auto** due to:

1. fire or lightning.

2. smoke or smudge due to a sudden, unusual and faulty operation of any fixed heating equipment serving the premises in which the **auto** is located.

3. stranding, sinking, burning, collision or derailment of any conveyance in or upon which the **auto** is being transported on land or on water.

AUTO *61000040506200704605281 9*



# Allstate Insurance Company

## COVERAGE HF
### Auto Theft Insurance
Allstate will pay for direct and accidental loss to **your** insured **auto** or a non-owned **auto** caused by theft or larceny.

## COVERAGE HG
### Auto Fire, Lightning, Transportation and Theft Insurance
Allstate will pay for direct and accidental loss to **your** insured **auto** or a non-owned **auto** caused by any peril listed under Coverages HE or HF above.

## COVERAGE JJ
### Towing And Labor Costs
Allstate will pay costs for labor done at the initial place of disablement of **your** insured **auto** or a non-owned **auto**. **We** will also pay for towing made necessary by the disablement. The total limit of **our** liability for each loss is shown on the Policy Declarations.

## COVERAGE UU
### Rental Reimbursement Coverage
If **you** have collision or comprehensive coverage under this policy and the loss involves either coverage, Allstate will reimburse **you** for **your** cost of renting an **auto** from a rental agency or garage. **We** will not pay more than the dollar amount per day, shown on the Policy Declarations. **We** won't pay mileage or fuel charges. **We** won't pay for collision damage waiver insurance charges.

If **your** insured **auto** is stolen, payment for transportation expenses will be made under the terms of paragraph 3. of 'Additional Payments Allstate Will Make'. However, the limits for this coverage will apply if they exceed the limits stated under 'Additional Payments Allstate Will Make'.

If **your** insured **auto** is disabled by a collision or comprehensive loss, coverage starts the day after the loss. If it is driveable, coverage starts the day after the **auto** is taken to a garage for repairs.

Coverage ends when whichever of the following occurs first:
1.  if the **auto** is disabled by a collision or comprehensive loss, completion of repairs or replacement of the **auto**;

2.  if the **auto** is stolen, when **we** offer settlement or **your auto** is returned to use; or

3.  thirty full days of coverage.

## COVERAGE ZA
### Sound System Coverage
Allstate will pay for loss to a **sound system** permanently installed in **your auto** by bolts, brackets or other means, its antennas or other apparatus specifically used with that system.

Coverage ZA applies only if comprehensive insurance is in effect under this policy. This coverage makes **sound systems**, and antennas or other apparatus used specifically with them, insured property under the terms of both collision and comprehensive insurance. The limit of **our** liability is shown on the Policy Declarations.

## COVERAGE ZZ
### Tape Coverage
Allstate will pay for loss to any tapes or similar items used with any **auto** sound system. Coverage applies to property **you** or a **resident** relative own that is in or on **your** insured **auto** at the time of loss. The total limit of **our** liability for each loss is shown on the Policy Declarations.

This coverage applies only if **you** have comprehensive insurance under this policy. Coverage ZZ makes tapes or similar items insured property under **your** comprehensive insurance.

### Additional Payments Allstate Will Make
1.  Allstate will pay up to $200 for loss of clothing and personal luggage, including its contents, belonging to **you** or a **resident** relative while it is in or upon **your** insured **auto**. This provision does not apply if the insured **auto** is a **travel-trailer**.

    This coverage applies only when:
    a)  the loss is caused by collision and **you** have purchased collision insurance.
    b)  the entire **auto** is stolen, and **you** have purchased comprehensive insurance.
    c)  physical damage is done to the **auto** and to the clothing and luggage caused by earthquake, explosion, falling objects, fire, lightning, or flood and **you** have purchased comprehensive insurance.

2.  Allstate will repay **you** up to $10 for the cost of transportation from the place of theft of **your**

# Allstate Insurance Company

insured **auto** or disablement of the **auto** to **your** destination, if

a) the entire **auto** is stolen and **you** have comprehensive coverage under this policy.

b) the **auto** is disabled by a collision or comprehensive loss, and **you** have the coverage under this policy applicable to the loss.

This provision does not apply if the insured **auto** is a **travel-trailer.**

3. If **you** have comprehensive insurance under this policy, **Allstate** will repay up to $10 a day but not more than $300 for each loss for the cost of transportation when the entire **auto** is stolen. This coverage begins 48 hours after **you** report the theft to **us**, but ends when **we** offer settlement or **your auto** is returned to use.

4. If **you** have purchased collision or comprehensive insurance under this policy, **Allstate** will pay general average and salvage charges imposed when **your** insured **auto** is being transported.

## Insured Autos

1. Any **auto** described on the Policy Declarations. This includes the four wheel private passenger **auto** or **utility auto** you replace it with if **you** notify **Allstate** within 30 days of the replacement and pay the additional premium. Coverage will not continue after 30 days if **we** are not notified of the replacement **auto**.

2. An additional four wheel private passenger **auto** or **utility auto you** acquire ownership of during the policy period will be covered for 30 days immediately after **you** become the owner.

However, **we** will provide this coverage only if **Allstate** or one of its affiliates insure all other private passenger **autos** or **utility autos you** own, and you pay the additional premium. Coverage will be continued beyond this 30 day period only if:

a) **you** ask **us** to continue coverage within 30 days after **you** acquire the **auto** or **utility auto you;**

b) **we** agree to continue coverage for this additional **auto** or **utility auto;**

c) **you** pay the additional premium.

3. A substitute four wheel private passenger **auto** or **utility auto**, not owned by **you** or a **resident**, temporarily used with the permission of the owner while **your** insured **auto** is being serviced or repaired, or if **your** insured **auto** is stolen or destroyed.

4. A non-owned four wheel private passenger **auto**, a **utility auto**, a **motor home** or **travel-trailer** used by **you** or a **resident** relative with the owner's permission. These vehicles must not be available or furnished for the regular use of **you** or any **resident.**

5. A trailer while attached to an insured **auto**. This trailer must be designed for use with a private passenger **auto**. This trailer can't be used for business purposes with other than a private passenger **auto** or **utility auto**. Home, office, store, display, or passenger trailers, **travel-trailers** or **camper units** are not covered unless described on the Policy Declarations.

## Definitions

1. **"Allstate"**, **"We"**, **"Us"**, or **"Our"**—means the company as indicated on the Policy Declarations.

2. **"Auto"**—means a land motor vehicle designed for use on public roads.

3. **"Camper Unit"**—means a demountable unit designed to be used as temporary living quarters, including all equipment and accessories built into and forming a permanent part of the unit. A camper unit does not include:

a) caps, tops, or canopies designed for use as protection of the cargo area of a **utility auto;** or

b) radio or television antennas, awnings, cabanas, or equipment designed to create additional off highway living facilities.

4. **"Motor Home"**—means a self-propelled vehicle equipped, designed or used as a living quarters.

5. **"Resident"**—means a person who physically resides in **your** household with the intention of continuing residence there. **Your** unmarried

AUTO *610000405062007046052820*

# Allstate Insurance Company

dependent children while temporarily away from home will be considered residents if they intend to resume residing in **your** household.

6. **"Sound System"**—means any device within the insured **auto** designed for:
   a) voice, video or radar signal reception; or
   b) recording or playing back recorded material; or
   c) supplying power to cellular or similar equipment,

   and which is installed in a location other than the one designed by the auto's manufacturer for that device.

7. **"Travel-trailer"**—means a trailer of the house, cabin, or camping type equipped or used as a living quarters.

8. **"Utility Auto"**—means an **auto** of the pick-up body, sedan delivery or panel truck type. This **auto** must have a rated load capacity of not more than 2,000 pounds.

9. **"You"** or **"Your"**—means the policyholder named on the Policy Declarations and that policyholder's **resident** spouse.

## Exclusions—What is not covered
These coverages don't apply to:
1. loss caused intentionally by, or at the direction of, an insured person.

2. any **auto** used for the transportation of people or property for a fee. This exclusion does not apply to shared-expense car pools.

3. any damage or loss resulting from any act of war, insurrection, rebellion or revolution.

4. loss to any non-owned **auto** used in auto business operations such as repairing, servicing, testing, washing, parking, storing or selling of **autos**.

5. loss due to radioactive contamination.

6. damage resulting from wear and tear, freezing, mechanical or electrical breakdown unless the damage is the burning of wiring used to connect electrical components, or the result of other loss covered by this policy.

7. tires unless stolen or damaged by fire, malicious mischief or vandalism. Coverage is provided if the damage to tires occurs at the same time and from the same cause as other loss covered by this policy.

8. loss to any **sound system** within your **auto**.

   Coverages under this Part also will not apply to any apparatus in or on the **auto** designed for use with that system.

   This exclusion will not apply if **you** have purchased Coverage ZA.

9. loss to any tapes or similar items, unless **you** have Coverage ZZ under this policy.

10. loss to a **camper unit** whether or not mounted. This exclusion will not apply if the **camper unit** is described on the Policy Declarations.

11. loss to appliances, furniture, equipment and accessories that are not built into or forming a permanent part of a **motor home** or **travel-trailer.**

12. loss to **your motor home** or **your travel-trailer** while rented to anyone else unless a specific premium is shown on the Policy Declarations for the rented vehicle.

## Right To Appraisal
Both **you** and Allstate have a right to demand an appraisal of the loss. Each will appoint and pay a qualified appraiser. Other appraisal expenses will be shared equally. The two appraisers, or a judge of a court of record, will choose an umpire. Each appraiser will state the actual cash value and the amount of loss. If they disagree, they'll submit their differences to the umpire. A written decision by any two of these three persons will determine the amount of the loss.

## Payment Of Loss By Allstate
Allstate may pay for the loss in money, or may repair or replace the damaged or stolen property at our option. **We** may, at any time before the loss is paid or the property is replaced, return at **our** own expense any stolen property, either to **you** or at **our** option to the address shown on the Policy Declarations, with payment for any resulting damage. **We** may take all or part of the property at

# Allstate Insurance Company

the agreed or appraised value. **We** may settle any claim or loss either with **you** or the owner of the property.

If a loss or damage occurs which may require repair of the insured **auto** or replacement of any part(s) while the **auto** is in Mexican territory, the basis for adjustment of the claim will be as follows:

The repair or replacement costs will not exceed the cost of having the repairs or replacement made at the nearest point in the United States where the repairs or replacements can be made. The cost for towing, transportation and salvage operations of the **auto** while within Mexican territory are not covered under this policy.

## Limits Of Liability

**Allstate's** limit of liability is the actual cash value of the property or damaged part of the property at the time of loss. The actual cash value will be reduced by the deductible for each coverage as shown on the Policy Declarations. However, **our** liability will not exceed what it would cost to repair or replace the property or part with other of like kind and quality. The limit for loss to any covered trailer not described on the Policy Declarations is $500.

An **auto** and attached trailer are considered separate **autos**, and **you** must pay the deductible, if any, on each. Only one deductible will apply to an **auto** with a mounted **camper unit**. If unmounted, a separate deductible will apply to the **auto** and **camper unit.**

The limit for loss to any non-owned **motor home** or **travel-trailer** is $10,000.

## If There Is Other Insurance

If there is other insurance covering the loss at the time of the accident, **we** will pay only **our** share of any damages. Our share is determined by adding the limits of this insurance to the limits of all other insurance that applies on the same basis and finding the percentage of the total that **our** limits represent.

When this insurance covers a substitute **auto** or non-owned **auto**, **we** will pay only after all other collectible insurance has been exhausted.

When this insurance covers a replacement **auto** or additional **auto**, this policy won't apply if **you** have other collectible insurance.

If more than one policy applies on an excess basis, **we** will bear **our** proportionate share with other collectible excess insurance.

When more than one coverage is applicable to the loss, **you** may recover under the broadest coverage but not both. However, any Coverage ZA deductible will always apply.

## Action Against Allstate

No one may sue **us** under this coverage unless there is full compliance with all the policy terms.

## Subrogation Rights

When **we** pay, **your** rights of recovery from anyone else become **ours** up to the amount **we** have paid. **You** must protect these rights and help **us** enforce them.

## What You Must Do If There Is A Loss

1. As soon as possible, any person making claim must give **us** written proof of loss. It must include all details reasonably required by **us**. **We** have the right to inspect the damaged property. **We** may require any person making claim to file with **us** a sworn proof of loss. **We** may also require that person to submit to examinations under oath.

2. Protect the **auto** from further loss. **We** will pay reasonable expenses to guard against further loss. If **you** don't protect the **auto**, further loss is not covered.

3. Report all theft losses promptly to the police.

IN WITNESS WHEREOF, **Allstate** has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois, and, if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of **Allstate.**



Secretary

President, Personal Lines

AUTO *61000040506200704605282J*

# Allstate Indemnity Company

**Policy Number : 9 14 848687 06/17**   Your Agent:   Teresa Tang  (916) 928-7888
**Policy Effective Date: June 17, 2005**

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## California
## Amendatory Endorsement — AU2250-6

I.   In the **General** provisions, the following changes are made:

A.   The following provisions are added:

**Fraud**
This policy will not apply to any claim in which an insured person has concealed or misrepresented any material fact or circumstance.

**What Law Will Apply**
This policy is issued in accordance with the laws of California and covers property or risks principally located in California. Subject to the following paragraph, any and all claims or disputes in any way related to this policy shall be governed by the laws of California.

If a covered loss to the **auto**, a covered **auto** accident, or any other occurrence for which coverage applies under this policy happens outside California, claims or disputes regarding that covered loss to the **auto**, covered **auto** accident, or other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to the **auto**, covered **auto** accident, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

**Where Lawsuits May Be Brought**
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy shall be brought, heard, and decided only in a state or federal court located in California. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy or involved in any other way with this policy, shall be brought, heard, and decided only in a state or federal court located in California, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to the **auto**, a covered **auto** accident, or any other occurrence for which coverage applies under this policy happens outside California, lawsuits regarding that covered loss to the **auto**, covered **auto** accident, or other covered occurrence may also be brought in the judicial district where that covered loss to the **auto**, covered **auto** accident, or other covered occurrence happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

B.   The **Non Renewal** provision is replaced by the following:

**Non Renewal**
If **we** don't intend to continue the policy beyond the current policy period, **we** will mail **you** notice at least 30 days before the end of the policy period.

**Page 1**

AUTO *6100004050620070460052822*



# Allstate Indemnity Company

**Policy Number : 9 14 848687 06/17    Your Agent:   Teresa Tang  (916) 928-7888**
**Policy Effective Date: June 17, 2005**

C.   The **Cancellation** provision is replaced by the following:

**Cancellation**
**You** may cancel this policy by informing **us** of the future date **you** wish to stop coverage.

**Allstate** may cancel part or all of this policy by mailing notice to **you** at **your** last known address. If **we** cancel because **you** didn't pay the premium, cancellation will be at least 10 days after the date of mailing. If **we** cancel for any reason other than non-payment of premium, **we** will give **you** notice as follows:

1.   During the first 59 days the original policy is in effect, **we** will give **you** at least 10 days notice of cancellation.

2.   After the first 59 days, **we** will mail **you** at least 20 days notice of cancellation.

Proof of mailing the notice will be proof of notice.

If the policy is cancelled at **your** request during the original policy period, any refund due will be calculated using the Short Rate Table printed below. If the policy is cancelled because **you** didn't pay the premium, this will be considered **your** request for cancellation for purposes of calculating any refund due. All other cancellations will be calculated in proportion to the time **your** policy has been in effect. Cancellation will be effective even if the refund is not made immediately.

After **your** original policy has been in effect 59 days, **Allstate** won't cancel or reduce **your** coverage during the policy period unless:

1.   **you** don't pay the premium when it's due;

2.   there has been fraud or material misrepresentation affecting the policy or the insured; or

3.   there has been a substantial increase in the hazard insured against.

**Page 2**

# Allstate Indemnity Company

Policy Number : 9 14 848687 06/17        Your Agent:  Teresa Tang  (916) 928-7888
Policy Effective Date: June 17, 2005

## Short Rate Table

| Days Policy In Force | Percentage of Semi-Annual Premium | Days Policy In Force | Percentage of Semi-Annual Premium | Days Policy In Force | Percentage of Semi-Annual Premium |
|---|---|---|---|---|---|
| 1 | 6% | 61-62 | 44% | 121-123 | 74% |
| 2 | 7 | 63 | 45 | 124-125 | 75 |
| 3 | 8 | 64-65 | 46 | 126-127 | 76 |
| 4 | 9 | 66-67 | 47 | 128-130 | 77 |
| 5 | 10 | 68-69 | 48 | 131-132 | 78 |
| 6 | 11 | 70-71 | 49 | 133-134 | 79 |
| 7 | 12 | 72-73 | 50 | 135-136 | 80 |
| 8 | 13 | 74 | 51 | 137-139 | 81 |
| 9 | 14 | 75-76 | 52 | 140-141 | 82 |
| 10 | 15 | 77-78 | 53 | 142-143 | 83 |
| 11 | 16 | 79-80 | 54 | 144-145 | 84 |
| 12 | 17 | 81-82 | 55 | 146-148 | 85 |
| 13-14 | 18 | 83 | 56 | 149-150 (5 mos.) | 86 |
| 15-16 | 19 | 84-85 | 57 | | |
| 17-18 | 20 | 86-87 | 58 | 151-152 | 87 |
| 19-20 | 21 | 88-89 | 59 | 153-155 | 88 |
| 21 | 22 | 90-91 (3 mos.) | 60 | 156-157 | 89 |
| 22-23 | 23 | | | 158-159 | 90 |
| 24-25 | 24 | 92-93 | 61 | 160-161 | 91 |
| 26-27 | 25 | 94-95 | 62 | 162-164 | 92 |
| 28-29 | 26 | 96-98 | 63 | 165-166 | 93 |
| 30-31  (1 mo.) | 27 | 99-100 | 64 | 167-168 | 94 |
| | | 101-102 | 65 | 169-171 | 95 |
| 32 | 28 | 103-104 | 66 | 172-173 | 96 |
| 33-34 | 29 | 105-107 | 67 | 174-175 | 97 |
| 35-36 | 30 | 108-109 | 68 | 176-177 | 98 |
| 37-38 | 31 | 110-111 | 69 | 178-180 | 99 |
| 39-40 | 32 | 112-114 | 70 | 181-183 (6 mos.) | 100 |
| 41 | 33 | 115-116 | 71 | | |
| 42-43 | 34 | 117-118 | 72 | | |
| 44-45 | 35 | 119-120  (4 mos.) | 73 | | |
| 46-47 | 36 | | | | |
| 48-49 | 37 | | | | |
| 50-51 | 38 | | | | |
| 52 | 39 | | | | |
| 53-54 | 40 | | | | |
| 55-56 | 41 | | | | |
| 57-58 | 42 | | | | |
| 59-60  (2 mos.) | 43 | | | | |

AUTO *61000040506200704605 2823*

# Allstate Indemnity Company

**Policy Number : 9 14 848687 06/17**     **Your Agent:   Teresa Tang  (916) 928-7888**
**Policy Effective Date: June 17, 2005**

II.  In **Part I, Automobile Liability Insurance, Bodily Injury — Coverage AA** and **Property Damage — Coverage BB,** the following changes are made:

A.  The **Insuring Agreement** provision is replaced by the following:

**Allstate** will pay those damages an insured person is legally obligated to pay because of:

1.  **bodily injury** sustained by any person; and

2.  damage to, or destruction of property.

Under these coverages, **your** policy protects an insured person from liability for damage arising out of the ownership, maintenance or use, loading or unloading of an insured **auto.** Payments will be made only for damages resulting from covered **bodily injury** and/or property damage.

**We** will defend an insured person sued for damages which are covered by this policy even if the suit is groundless or false. **We** will choose the counsel. **We** may settle any claim or suit if **we** believe it is proper. **We** will not defend an insured person sued for damages which are not covered by this policy.

B.  The **Insured Persons** provision is replaced by the following:

**Insured Persons**
1.  With respect to **your** insured **auto:**
    a)   **you;**
    b)   any **resident;** and
    c)   any other person using it with **your** permission.

2.  With respect to a non-owned **auto:**
    a)   **you;** and
    b)   any **resident** relative using a four-wheel private passenger **auto** or **utility auto.**

3.  Any other person or organization liable for the use of an insured **auto** if the **auto** is not owned or hired by the person or organization, provided the use is by an insured person under 1. or 2. above and then only for that person's acts or omissions.

C.  In the **Insured Autos** provision, item 4. is replaced with the following:

4.  A non-owned **auto** used by **you** or a **resident** relative with the owner's permission. This **auto** must not be owned by or available or furnished for the regular use of **you** or a **resident** relative.

D.  In the **Definitions** provision, item 6., is replaced by the following:

6.  **"You"** or **"Your"** — means the policyholder named on the Policy Declarations and:
    a)   that policyholder's **resident** spouse; or
    b)   a party who has established with that policyholder a registered domestic partnership under California state law if a **resident** of the same household.

E.  In the **Exclusions — What is not covered** provision, items 6. and 8. are replaced by the following:

**Page 4**

# Allstate Indemnity Company

**Policy Number:** 9 14 848687 06/17      **Your Agent:** Teresa Tang  (916) 928-7888
**Policy Effective Date:** June 17, 2005

6. **bodily injury** to an insured person or **bodily injury** to an insured person whenever the ultimate benefits of that indemnification accrue directly or indirectly to an insured person. This exclusion applies only to **you** and **resident** relatives.

8. **bodily injury** or property damage which may reasonably be expected to result from the intentional or criminal acts of the insured person or which are in fact intended by the insured person.

F.   In the **Exclusions — What is not covered** provision, item 10. is added:

10. **bodily injury** or property damage arising out of the participation in any prearranged, organized, or spontaneous racing contest; speed contest; or use of an **auto** at a track or course designed or used for racing or high performance driving, or in practice or preparation for any contest or use of this type.

G.   The following provision is added:

**Child Passenger Restraint System**
**Allstate** will pay for the replacement of a child passenger restraint system in use by a child at the time of an accident for which coverage under this Part is applicable due to the liability of an insured person. The child passenger restraint system must meet applicable federal motor vehicle safety standards.

III.  In **Part II, Automobile Medical Payments — Coverage CC**, the following changes are made:

A.   The **Insuring Agreement** provision is replaced by the following:

**Insuring Agreement**
**Allstate** will pay to or on behalf of an insured person all reasonable expenses the insured person becomes legally obligated to pay for necessary medical treatment, medical services or medical products actually provided to the insured person. Covered expenses may include ambulance, hospital, medical, surgical, X-ray, dental, orthopedic and prosthetic devices, pharmaceutical, eyeglasses, hearing aids, funeral service expenses, and professional nursing services. Payments will be made only when such expenses relate to **bodily injury** caused by an **auto** accident.

The treatment, services, or products must be rendered within one year after the accident. This will be extended to five years if the amount of insurance shown on the Policy Declarations for this coverage is more than $5,000.

This coverage does not apply to any person to the extent that the treatment is covered under any worker's compensation law.

B.   In the **Definitions** provision, item 6., is replaced by the following:

6. **"You"** or **"Your"** — means the policyholder named on the Policy Declarations and:
   a) that policyholder's **resident** spouse; or
   b) a party who has established with that policyholder a registered domestic partnership under California state law if a **resident** of the same household.

**Page 5**

AUTO *6100004050620070460522824*


# Allstate Indemnity Company

Policy Number : 9 14 848687 06/17        Your Agent:   Teresa Tang  (916) 928-7888
Policy Effective Date: June 17, 2005

C.   In the **Exclusions—What is not covered** provision, item 6. is added:

6.   any person arising out of the participation in any prearranged, organized, or spontaneous:
a)   racing contest;
b)   speed contest; or
c)   use of an **auto** at a track or course designed or used for racing or high performance driving, or in practice or preparation for any contest or use of this type.

D.   The following provision is added:

**Our Right To Recover Payment**
When **we** pay any person under this coverage:

1.   **we** are entitled to reimbursement for amounts paid by **us** from the proceeds of any settlement or judgment the person recovers from a legally liable party or the party's insurer.

2.   all rights of recovery against any legally liable party or the party's insurer must be maintained and preserved for **our** benefit.

IV.   In **Part III, Coordinated Medical Protection—Coverage CX**, the following changes are made:

A.   In the **Definitions** provision, item 7., is replaced by the following:

7.   **"You"** or **"Your"** —means the policyholder named on the Policy Declarations and:
a)   that policyholder's **resident** spouse; or
b)   a party who has established with that policyholder a registered domestic partnership under California state law if a **resident** of the same household.

B.   In the **Exclusions—What is not covered** provision, item 6. is added:

6.   any person arising out of the participation in any prearranged, organized, or spontaneous:
a)   racing contest;
b)   speed contest; or
c)   use of an **auto** at a track or course designed or used for racing or high performance driving, or in practice or preparation for any contest or use of this type.

C.   The following provision is added:

**Our Right To Recover Payment**
When **we** pay any person under this coverage:

1.   **we** are entitled to reimbursement for amounts paid by **us** from the proceeds of any settlement or judgment the person recovers from a legally liable party or the party's insurer.

2.   all rights of recovery against any legally liable party or the party's insurer must be maintained and preserved for **our** benefit.

**Page 6**

# Allstate Indemnity Company

Policy Number : 9 14 848687 06/17        Your Agent:  Teresa Tang  (916) 928-7888
Policy Effective Date: June 17, 2005

V.   In **Part IV, Automobile Death Indemnity Insurance — Coverage CM**, under the **Exclusions — What is not covered** provision, item 5. is added:

  5.   to any person arising out of the participation in any prearranged, organized, or spontaneous:
    a)   racing contest;
    b)   speed contest; or
    c)   use of an **auto** at a track or course designed or used for racing or high performance driving, or in practice or preparation for any contest or use of this type.

VI.   In **Part V, Automobile Disability Income Protection — Coverage CW**, under the **Exclusions — What is not covered** provision, item 5. is added:

  5.   arising out of the participation in any prearranged, organized, or spontaneous:
    a)   racing contest;
    b)   speed contest; or
    c)   use of an **auto** at a track or course designed or used for racing or high performance driving, or in practice or preparation for any contest or use of this type.

VII.   In **Part VI, Uninsured Motorists Insurance — Coverage SS**, the following changes are made:

A.   In the **An uninsured auto is** provision, items 2. and 4. are replaced by the following:

  2.   a **motor vehicle** for which the insurer denies coverage, becomes insolvent within one year of the accident, or refuses to admit coverage except conditionally or with reservation.

  4.   an underinsured **motor vehicle** which has a bodily injury liability bond or bodily injury liability insurance in effect at the time of the accident, but in an amount less than the applicable bodily injury limit of liability for Uninsured Motorists Bodily Injury coverage shown on **your** Policy Declarations.

B.   In the **An uninsured auto is not** provision, item 3. is replaced by the following:

  3.   a **motor vehicle** insured for bodily injury under Part I of this policy. However, this does not apply when the insured is in, on, getting into or out of or when struck and injured by a **motor vehicle** owned by the insured while it is being operated or caused to be operated by a person without the insured's consent in connection with criminal activity that is documented in a police report and in which the insured is not involved.

C.   In the **Definitions** provision, the following is amended:

  1.   item 4. is replaced by the following:

    4.   **Property damage** means damage to or destruction of the insured auto, but does not include:

      a)   loss of use of the insured auto;
      b)   damage caused by an underinsured **motor vehicle**; or
      c)   damage to personal property contained in the insured auto other than a child passenger restraint system in use by a child in the insured **auto** at the time of an accident to which

Page 7

AUTO *61000040506200704605282S*



# Allstate Indemnity Company

Policy Number : 9 14 848687 06/17    Your Agent:   Teresa Tang  (916) 928-7888
Policy Effective Date: June 17, 2005

Uninsured Motorists Insurance—Property Damage is applicable. The child passenger restraint system must meet federal motor vehicle safety standards.

2.  item 6. is replaced by the following:

6.  **"You"** or **"Your"** —means the policyholder named on the Policy Declarations and:
   a)  that policyholder's **resident** spouse; or
   b)  a party who has established with that policyholder a registered domestic partnership under California state law if a **resident** of the same household.

D.  In the **Exclusions—What is not covered** provision, item 2. is replaced by the following:

2.  **bodily injury** or **property damage** sustained while in, on, getting into or out of or when struck by a **motor vehicle** which is owned by **you** or a **resident** relative and is not an insured **auto** under this policy. However, this exclusion does not apply when the insured is in, on, getting into or out of or when struck and injured by a **motor vehicle** owned by the insured while it is being operated or caused to be operated by a person without the insured's consent in connection with criminal activity that is documented in a police report and in which the insured is not involved.

E.  In the **Exclusions—What is not covered** provision, item 5. is added:

5.  **bodily injury** or **property damage** arising out of the participation in any prearranged, organized, or spontaneous:
   a)  racing contest;
   b)  speed contest; or
   c)  use of an **auto** at a track or course designed or used for racing or high performance driving, or in practice or preparation for any contest or use of this type.

F.  In the **Limits Of Liability** provision, items 5. and 6. are replaced by the following:

4.  Any loss payable under Coverage SS will be reduced by:
   a)  all amounts payable under the bodily injury liability coverage provided by this policy;
   b)  all amounts payable under any workers' compensation law; and
   c)  all amounts paid by the owner or operator of the underinsured **motor vehicle** or the insurer of the owner or operator.

5.  Damages payable will be reduced by any amount paid or due under this or any other automobile policy for:
   a)  medical payments coverage; or
   b)  coordinated medical payments coverage; or
   c)  any similar medical payments insurance.

G.  The **Action Against Allstate** provision is replaced by the following:

**Action Against Allstate**
No legal action can be brought against **us** under this coverage unless there is full compliance with all the policy terms.

Page 8

# Allstate Indemnity Company

**Policy Number : 9 14 848687 06/17**    **Your Agent:  Teresa Tang  (916) 928-7888**
**Policy Effective Date: June 17, 2005**

Legal action can be brought against **us** under this coverage if within two years from the date of the accident:

1.  suit for **bodily injury** has been filed against the uninsured motorist in a court of competent jurisdiction; or

2.  agreement as to the amount due under this coverage has been concluded; or

3.  formal arbitration proceedings have been instituted and notice provided **us**.

If a suit has been filed against the uninsured motorist, the insured person must provide **us** notice of the suit. The notice must be in writing and be provided within a reasonable time after the insured knew or should have known the motorist was uninsured. If **we** are prejudiced by a failure to give notice the claim will be denied.

H.  The **If We Cannot Agree** provision is replaced by the following:

**If We Cannot Agree**
If **you** and **we** disagree on **your** right to receive any damages or on the amount of damages, then upon written request of either party, the disagreement will be settled by a single neutral arbitrator.

If arbitration is used, any arbitration award will be binding up to **your** policy limits and may be entered as a judgment in a proper court. All expenses of arbitration will be shared equally. However, attorney fees and fees paid to medical or other expert witnesses are not considered arbitration expenses and are to be paid by the party incurring them.

No cause of action shall exist against either **you** or **Allstate** as a result of exercising the right to request arbitration of a claim.

VIII.  In **Part VII, Protection Against Loss To The Auto**, the following changes are made:

A.  The **Coverage DD — Auto Collision Insurance** provision is replaced by the following:

**Allstate** will pay for direct and accidental loss to **your** insured **auto** or a non-owned **auto** (including insured loss to an attached trailer) from a collision with another object or by upset of that **auto** or trailer. The deductible amount won't be subtracted from the loss payment in collisions involving **your** insured auto and another **auto** insured by **us**. In addition, **Allstate** will pay for the replacement of a child passenger restraint system in use by a child in the insured **auto** at the time of a collision. The child passenger restraint system must meet applicable federal motor vehicle safety standards.

B.  The **Waiver Of Collision Coverage Deductible Option** provision is replaced by the following:

**Waiver Of Collision Coverage Deductible Option**
The following applies only when the Policy Declarations indicate the Waiver of Collision Coverage Deductible Option:
The Auto Collision Insurance deductible will be waived if:

Page 9

AUTO *61000040506200704605282 6*

# Allstate Indemnity Company

**Policy Number : 9 14 848687 06/17      Your Agent:   Teresa Tang  (916) 928-7888**
**Policy Effective Date: June 17, 2005**

1. the damage is caused by direct physical contact between an uninsured **auto** as defined in Part VI—Uninsured Motorists Insurance of the policy, and a vehicle owned by **you** which is insured for Auto Collision Insurance under this policy; and

2. the owner or operator of the uninsured **auto** has been identified or the vehicle itself has been identified by its license number; and

3. **we** have been notified of the accident within 10 business days of the accident.

The Auto Collision Insurance deductible will not be waived when the damage is caused by an underinsured motor vehicle as defined in Part VI—Uninsured Motorists Insurance of this policy.

C.    The **Coverage UU—Rental Reimbursement Coverage** provision is replaced by the following:

**Coverage UU**
**Rental Reimbursement Coverage**
If **you** have collision or comprehensive coverage under this policy and the loss involves either coverage, Allstate will reimburse **you** for **your** cost of renting an **auto** from a rental agency or garage. **We** will not pay more than the dollar amount per day shown on the Policy Declarations. **We** won't pay mileage or fuel charges. **We** won't pay for collision damage waiver insurance charges.

If **your** insured **auto** is stolen, payment for transportation expenses will be made under the terms of paragraph 3 of " Additional Payments Allstate Will Make." However, the limits for this coverage will apply if they exceed the limits stated under " Additional Payments Allstate Will Make."

If **your** insured **auto** is disabled by a collision or comprehensive loss, coverage starts the day of the loss. If it is drivable, coverage starts the day the **auto** is taken to a garage for repairs.

Coverage ends when whichever of the following occurs first:
1. if the **auto** is disabled by a collision or comprehensive loss, upon completion of the repairs, when **we** offer settlement on a total loss, or upon replacement of the **auto**;

2. if the **auto** is stolen, when **we** offer settlement or when **your** auto is returned to use; or

3. after thirty full days of coverage.

D.    In the **Definitions** provision, the following is amended:

1. item 10. is added:

    10. **Custom parts or equipment** means equipment, devices, accessories, enhancements, and changes, other than those offered by the manufacturer of the **auto** specifically for that model, or installed by the dealership of the **auto** when new as part of the original sale, which alter the appearance or performance of an **auto**. This does not include items covered under Sound System Coverage.

2. item 9. is replaced by the following:

**Page 10**

# Allstate Indemnity Company

**Policy Number : 9 14 848687 06/17**   **Your Agent:  Teresa Tang  (916) 928-7888**
**Policy Effective Date: June 17, 2005**

9.   **"You"** or **"Your"** — means the policyholder named on the Policy Declarations and:
   a)   that policyholder's **resident** spouse; or
   b)   a party who has established with that policyholder a registered domestic partnership under California state law if a **resident** of the same household.

E.   In the **Exclusions — What is not covered** provision, item 1. is replaced by the following:

1.   loss which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.

F.   In the **Exclusions — What is not covered** provision, items 13. 14. and 15. are added:

13.   loss to any **auto** due to confiscation by any government authority.

14.   loss or damage arising out of the participation in a prearranged, organized, or spontaneous:
   a)   racing contest;
   b)   speed contest; or
   c)   use of an **auto** at a track or course designed or used for racing or high performance driving, or in practice or preparation for any contest or use of this type.

15.   loss to any **custom parts or equipment** designed for racing which is installed in **your** insured **auto**. This includes, but is not limited to, nitrous oxide systems, roll cages, and air intake modifications.

G.   The **Limits Of Liability** provision is replaced by the following:

**Limits Of Liability**
**Allstate's** limit of liability is the least of:

1.   the actual cash value of the property or damaged part of the property at the time of loss, which may include a deduction for depreciation; or

2.   the cost to repair or replace the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to applicable state laws and regulations; or

3.   $500, if the loss is to a covered trailer not described on the Policy Declarations.

Any applicable deductible amount is then subtracted.

If **Allstate**, at its option, elects to pay for the cost to repair or replace the property or part, **Allstate's** liability does not include any decrease in the property's value, however measured, resulting from the loss and/or repair or replacement. If repair or replacement results in the betterment of the property or part, **you** may be responsible, subject to applicable state laws and regulations, for the amount of the betterment.

The maximum **Allstate** will pay for loss to any **custom parts or equipment** is $1000, unless otherwise excluded.

**Page 11**

AUTO *6100004050620070460528 27*



# Allstate Indemnity Company

Policy Number : 9 14 848687 06/17        Your Agent:  Teresa Tang  (916) 928-7888
Policy Effective Date: June 17, 2005

An **auto** and attached trailer are considered separate **autos**, and **you** must pay the deductible, if any, on each. Only one deductible will apply to an **auto** with a mounted **camper unit**. If unmounted, a separate deductible will apply to the **auto** and **camper unit**.

When more than one coverage is applicable to the loss, you may recover under the broadest coverage but not both. However, any Sound System Coverage deductible will always apply.

The limit for loss to any non-owned **motor home** or **travel-trailer** is $10,000.

H.  The following provision is added:

**California Mandatory Vehicle Inspection for Physical Damage Coverage**
**You** must notify **Allstate** immediately when **you** acquire an additional or replacement **auto you** wish to insure for collision or comprehensive coverage under this policy.

**Allstate** or **our** authorized representative has the right to inspect any **auto** insured or intended to be insured under this policy before collision or comprehensive coverage becomes effective.

When an inspection is required by **us, you** must cooperate and make the **auto** available for the inspection.

When a required inspection is not completed within the time period specified, collision and comprehensive coverages applying to the uninspected **auto** will be restricted (coverage will be limited to the lienholder's interest) or suspended (coverage will not be afforded if no lienholder) effective 12:01 A.M. of the day following the date specified for completion of the inspection. Coverage will be restored as of the date and hour of the inspection as evidenced by the Automobile Inspection Report.

I.  The following provision is added:

**Loss Payable Clause**
If a Lienholder and/or Lessor is shown on the Policy Declarations, **we** may pay loss or damage under this policy to **you** and the Lienholder and/or Lessor as its interest may appear, except:

1.  Where fraud, misrepresentation, material omission, or intentional damage has been committed by or at the direction of **you**.

2.  When the vehicle(s) is intentionally damaged, destroyed or concealed by or at the direction of **you** or any owner.

3.  When **you** or any owner makes fraudulent statement(s) or engages in fraudulent conduct in connection with any accident or loss for which coverage is sought.

The Lienholder and/or Lessor must notify **us** of any change in ownership or hazard that is known.

If **you** or any owner fails to render proof of loss within the time granted in the policy, the Lienholder and/or Lessor must do so within sixty days in the form and manner described in the policy. The Lienholder and/or Lessor are subject to the provisions of the policy relating to appraisal, time of payment and bringing suit.

**Page 12**

# Allstate Indemnity Company

**Policy Number : 9 14 848687 06/17**      **Your Agent:   Teresa Tang  (916) 928-7888**
**Policy Effective Date: June 17, 2005**

We may cancel this policy according to its terms. We will notify the Lienholder and/or Lessor at least ten days prior to the date of cancellation that the cancellation is effective as to the interest of the Lienholder and/or Lessor.

Whenever we pay the Lienholder and/or Lessor any sum for loss or damage under this policy, we will be subrogated to the extent of payment to the rights of the party to whom payment was made. However, these subrogation provisions must in no way impair the rights of the Lienholder and/or Lessor to recover the full amount of its claim from the insured.

The Lienholder and/or Lessor has no greater rights under the provisions of the policy than the insured.

All other policy terms and conditions apply.

**Page 13**

AUTO *6100000405062007046052828*



## Allstate Indemnity Company

Policy Number: 9 14 848687 06/17      Your Agent:  Teresa Tang  (916) 928-7888
Policy Effective Date: June 17, 2005

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Allstate Amendment of Policy Provisions — AU2285

This endorsement amends all of the following Allstate Insurance Company policies: Automobile, Motorcycle, and Motorhome. This endorsement is in addition to all other endorsements which apply to these policies.

It is agreed that the following provision is added to the General Provisions:

A.   The following replaces the provision titled **Where And When The Policy Applies**:

**Your** policy applies only during the policy period. During this time, it applies to losses to the **auto**, accidents and occurrences within the United States of America, its territories or possessions or Canada, or between their ports.

If **we** offer to renew **your** policy and **your** required premium payment isn't received when due, **you** will have rejected **our** renewal offer. This means that the insurance coverage described in the renewal offer and any endorsements to the renewal offer will not become effective.

B.   The following replaces the provision titled **Termination**:

If **we** offer to renew **your** policy and **your** required premium payment isn't received when due, **you** will have rejected **our** renewal offer. This means that the insurance coverage described in the renewal offer and any endorsements to the renewal offer will not become effective.

C.   The following provision is added:

**Conditional Reinstatement**
If **we** mail a cancellation notice because **you** didn't pay the required premium when due and **you** then tender payment by check, draft, or other remittance which is not honored upon presentation, **your** policy will terminate on the date and time shown on the cancellation notice and any notice **we** issue which waives the cancellation or reinstates coverage is void. This means that **Allstate** will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

D.   Under the provision titled **Cancellation**, the following is added:

Any unearned premium amounts under $2.00 will be refunded only upon **your** request.

# EXHIBIT B



SONNENSCHEIN NATH & ROSENTHAL LLP

525 Market Street
26th Floor
San Francisco, CA 94105-2708
415.882.5000
415.882.0300 fax
www.sonnenschein.com

**Sonia Martin**
415.882.2476
smartin@sonnenschein.com

April 30, 2008

**VIA FAX AND CERTIFIED MAIL**

Wendy York, Esq.
1111 Exposition Boulevard, Building 500
Sacramento, CA 95815

      Re:    Policyholder:  Robert Watts, Policy No. 914848687
              Date of Loss:  March 29, 2006
              Watts v. Allstate Indemnity Company, et. al.
              U.S. District Court, Northern Dist. Of California Case No. 08CV1236

Dear Ms. York:

      As you know, we represent Allstate Indemnity Company ("Allstate") with respect to the above-entitled matter.

      The Complaint filed by your client reflects that there exists an unresolved dispute over the amount of loss owed for the damaged vehicle under the Allstate policy.

      The policy sets forth an appraisal procedure Mr. Watts and Allstate have the right to invoke if a dispute arises concerning the amount of the loss.  The policy's appraisal clause provides in part:

> **Right to Appraisal**
> Both **you** and **Allstate** have a right to demand an appraisal of the loss.
> Each will appoint and pay a qualified appraiser.  Other appraisal
> expenses will be shared equally.  The two appraisers, or a judge of a
> court of record, will choose an umpire.  Each appraiser will state the
> actual cash value and the amount of loss.  If they disagree, they'll
> submit their differences to the umpire.  A written decision by any two
> of these three persons will determine the amount of the loss.

*See* Policy, Part VII - Protection Against The Loss To The Auto Auto, page 21.



Wendy York, Esq.
April 30, 2008
Page 2


      Please be advised that Allstate is invoking the appraisal process.  Please notify us at your earliest convenience as to the appraiser selected by your client.

               Very truly yours,

               SONNENSCHEIN NATH & ROSENTHAL LLP


               Sonia Martin

14714842

# EXHIBIT C

Westlaw.

--- Cal.Rptr.3d ----
--- Cal.Rptr.3d ----, 2007 WL 869496 (Cal.App. 4 Dist.)
**(Cite as: --- Cal.Rptr.3d ----)**

Page 1

Levy v. **State Farm** Mut. Auto. Ins. Co.
Cal.App. 4 Dist.,2007.
Only the Westlaw citation is currently available.
Court of Appeal, Fourth District, Division 3,
California.
Eugene **LEVY** et al., Plaintiffs and Appellants,
v.
**STATE FARM** MUTUAL AUTOMOBILE
INSURANCE COMPANY, Defendant and
Respondent.
**No. G035677.**
**(Super.Ct.No. 02CC00265).**

March 23, 2007.

Appeal from a judgment of the Superior Court of
Orange County, Stephen J. Sundvold, Judge.
Affirmed.

Lawrence Walner and Associates, Lawrence Walner,
Michael S. Hilicki; Fineman & Associates and Neil
B. Fineman for Plaintiffs and Appellants.
Skadden, Arps, Slate, Meagher & Flom, Darrel J.
Hieber; T. Jean Mooney; Robie & Matthai, James R.
Robie and Steven S. Fleischman for Defendant and
Respondent.

OPINION
ARONSON, J.
*1 Plaintiffs Eugene Levy and Sharon Battle
challenge the judgment entered after the trial court
sustained defendant State Farm Mutual Automobile
Insurance Company's (State Farm) demurrer to
plaintiffs' fifth amended complaint without leave to
amend, granted State Farm's motion to strike class
action allegations without leave to amend, and
granted defendant's motion to dismiss Battle on the
grounds of forum non conveniens. Plaintiffs contend
they have properly alleged both individual and class
claims arising from State Farm's practice of omitting
certain labor and material costs from its repair
estimates, and using its own contracted repair shops
in its survey to determine the prevailing competitive
repair labor rates included in its estimates.

We conclude the trial court properly sustained State
Farm's demurrers without leave to amend. State
Farm's insurance policy obligated it to repair its
insureds' vehicles to their preaccident condition. The

fifth amended complaint fails to describe how
following State Farm's repair estimates would not
have restored Levy's or Battle's vehicles to their
preaccident condition. Instead, the complaint alleges
State Farm's repair estimates failed to include items
required by industry repair standards. California
regulators, however, have not specified any particular
repair standards and have not required insurers to
follow such standards. Moreover, nothing in
plaintiffs' insurance contracts required State Farm to
follow the standards preferred by plaintiffs.
Similarly, no policy provision or law precludes State
Farm from including its contracted repair shops in
determining prevailing competitive repair labor rates.
We therefore affirm the judgment.

I

Factual and Procedural Background

Levy, a California resident, purchased a State Farm
auto insurance policy that obligated State Farm to
pay the cost of repair or replacement for covered
vehicles if damaged. The policy provides that the cost
of repair or replacement is based on one of the
following: "1. the cost of repair or replacement
agreed upon by [the insured] and [State Farm]; [¶] 2.
a competitive bid approved by us; or [¶] 3. an
estimate written based upon the prevailing
competitive price. The prevailing competitive price
means prices charged by a majority of the repair
market in the area which the *car* is to be repaired as
determined by a survey made by [State Farm]. If *you*
ask, [State Farm] will identify some facilities that
will perform the repairs at the prevailing competitive
price...."

In August 1999, Levy's car was involved in an
accident and suffered damage to its right front wheel,
right front fender, right front bumper, steering box,
suspension, and lower body. Levy brought the
damaged vehicle to a State Farm facility, where an
employee estimated the cost of repair using State
Farm's software. The estimator then offered to pay
Levy $550.70, less the policy's $250 deductible,
instead of having the vehicle repaired. Levy accepted
the payment.

*2 Battle, an Illinois resident, also purchased a State

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----
--- Cal.Rptr.3d ----, 2007 WL 869496 (Cal.App. 4 Dist.)
**(Cite as: --- Cal.Rptr.3d ----)**

Farm auto insurance policy containing a repair or replacement provision similar to Levy's policy. In January 2001, an accident damaged the left front end and left fender of Battle's car. Battle took her car to a State Farm estimating facility, and at State Farm's request, had her car repaired at a State Farm-contracted repair shop.

Believing State Farm's repair estimates were inadequate, Levy and Battle sued State Farm on behalf of themselves and others similarly situated. After several State Farm demurrers were sustained with leave to amend, plaintiffs filed their fifth amended complaint, seeking damages, restitution, and declaratory and injunctive relief. The fifth amended complaint alleges that State Farm provides its policyholders repair estimates which do not meet industry standards as defined by automobile manufacturers, the Inter-Industry Conference on Auto Collision Repair (I-CAR), or the National Institute for Automotive Service Excellence (ASE).

Specifically, plaintiffs contend State Farm's repair estimates routinely omit the time and materials for the following, where required: "(i) weld through primer; (ii) undercoating; (iii) flex additive; (iv) masking inner surfaces to prevent over-spray into door and hood jams; (v) front wheel alignment; (vi) four wheel alignment; (vii) aim lamps; (viii) replace EPA label; (ix) rust proofing; (x) removal and installation of add ons such as moldings and trim to facilitate blending of paint; (xi) removal of parts such as radiators in order to properly refinish them; (xii) refurbishing used replacement parts; (xiii) wet sand and buff procedures to match the existing finish; (xiv) replacement of bumper support brackets when the bumper has been damaged; and (xv) seat belt checks."

The complaint further alleges that State Farm contracts with repair shops to follow State Farm's estimate of necessary repairs, even if the shop's professionals might believe additional repairs are required. State Farm will not pay for repairs not specified in State Farm's estimate. The complaint also alleges the labor rates State Farm uses in its estimates are below market rates because State Farm uses only its own contracted repair shops in conducting the survey that determined the " 'prevailing competitive price' " required by the insurance contract.

State Farm demurred to the fifth amended complaint, moved to strike the class allegations, and sought dismissal of Battle's claims on the grounds of forum non conveniens. The trial court granted the demurrers

without leave to amend, granted the motion to strike, and dismissed Battle's claims based on forum non conveniens. Plaintiffs now appeal.

## II

### Standard of Review

"On review of an order sustaining a demurrer without leave to amend, our standard of review is de novo, 'i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' [Citation.]" (*Santa Teresa Citizen Action Group v. State Energy Resources Conservation & Development Com.* (2003) 105 Cal.App.4th 1441, 1445, 130 Cal.Rptr.2d 392.) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context .' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, 119 Cal.Rptr.2d 709, 45 P.3d 1171 (*Zelig* ).)

## III

### Discussion

*A. Plaintiffs Have Not Alleged State Farm Breached Any Terms of Its Insurance Policy*

1. The Policy Does Not Require State Farm to Provide Repairs Based on Plaintiffs' View of "Industry Standards"

**\*3** Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity. (See generally 4 Witkin, Cal. Procedure (4th ed. 1996) Pleading, § 4495, pp. 585-586; *Bentley v. Mountain* (1942) 51 Cal.App.2d 95, 98, 124 P.2d 91 [general averments that defendants violated contract insufficient; pleader must allege facts demonstrating breach]; *Thompson v. Purdy* (1931) 117 Cal.App. 565, 567, 4 P.2d 282, [general averments that defendant failed to perform duties or comply with contract insufficient].) The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fifth amended complaint alleges State Farm breached the contract by offering an amount to Levy based upon a repair estimate which did not meet "industry standards" because it excluded reimbursement for the following items: "(1) 1.8 hours to strip the replacement part; (2) 0.3 hours for removal and installation of hood front molding; (3) 0.3 hours for removal and installation of right headlamp door; (4) 0.5 hours for removal and installation of the right door trim panel; (5) 0.3 hours for removal and installation of the right door belt molding; ... (6) 0.5 hours for refinishing the corrosion protection[,]" (7) 1.5 hours of labor and $5 in parts for masking the entryways; (8) 1.0 hours of labor and $1 in parts for color sand and buff; and (9) a front end alignment valued at $39.95. The complaint also alleged State Farm based its estimate on labor rates $4 an hour below industry standards. As a result of these alleged deficiencies, State Farm understated Levy's repair by approximately $440.

The complaint also alleged that the repairs performed on Battle's car did not include certain repairs necessary to conform with industry standards, listing the following omissions: "(1) 1.7 hours to remove and install the radiator and the bolted parts as necessary to properly refinish the radiator side panel; (2) 0.5 hours for weld-thru primer to prevent corrosion from occurring between the welded parts; ... (3) 0.3 hours for a seat belt check[;]" (4) 0 .3 hours and $32.85 in parts to replace the left body side molding; and (5) right and left bumper support bracket replacement at a cost of $118.50. The complaint alleges the difference between the cost of State Farm's repairs to Battle's car and a repair done based on industry standards was approximately $300.

Despite the complaint's specific description of how Levy's estimate and Battle's repair fell short of "industry standards," the trial court sustained a succession of State Farm's demurrers because plaintiffs failed to demonstrate a link between State Farm's alleged violation of "industry standards" and the insurance contracts State Farm issued to the two named plaintiffs. The trial court noted the insurance contract did not purport to obligate State Farm to follow any particular industry standard, but required State Farm only to "restore the vehicle to its pre-loss condition."

"The meaning to be ascribed to an insurance policy, as with any contract, is a question of law. It is a matter, in the first instance, for the trial court's determination, not the jury's.... 'Although we construe all provisions, conditions, or exceptions that tend to limit liability strictly against the insurer [citation], strict construction does not mean strained construction. [Citations.] We may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid.' [Citation.] The words used in a policy of insurance are to be construed according to the plain meaning a layman would ordinarily attach to them.... [Citation.]" (*Ray v. Farmers Ins. Exchange* (1988) 200 Cal.App.3d 1411, 1415-1416, 246 Cal.Rptr. 593 (*Ray*). In *Ray,* the court recognized the plain, ordinary meaning of "pre-loss condition" in an insurance contract meant the "preaccident safe, mechanical, and cosmetic condition." (*Id.* at p. 1418, 246 Cal.Rptr. 593.) The fifth amended complaint does not allege in what manner Battle's car after repair differed from its preaccident condition, or how Levy's car would have differed from its preaccident condition had it been repaired according to State Farm's estimate. Instead, the complaint makes the same allegation as to the omitted repair items: "Each of these repairs was required by the industry standards as set forth by automobile manufacturers, I-CAR and ASE. There are no standards accepted in the industry which would have allowed for omission of these repairs."

**\*4** Attempting to establish a link between the cited industry standards and the policy's promise to restore the vehicle to preaccident condition, the fifth amended complaint cites California Code of Regulations, title 16, section 3365, providing: "The accepted trade standards for good and workmanlike auto body and frame repairs shall include, but not be limited to, the following: [¶ ] (a) Repair procedures including but not limited to the sectioning of component parts, shall be performed in accordance with OEM [Original Equipment Manufacturer] service specifications· or nationally distributed and periodically updated service specifications that are generally accepted by the autobody repair industry. [¶ ] (b) All corrosion protection shall be applied in accordance with manufacturers' specifications or nationally distributed and periodically updated service specifications that are generally accepted by the autobody repair industry."

Plaintiffs' reliance on California Code of Regulations, title 16, section 3365, however, is problematic for two reasons. First, the regulation cited does not purport to apply to insurers, or to provide a minimum standard for repairs required to return a vehicle to its pre-collision condition. Instead, section 3365 was adopted to carry out the purposes of Business and Professions Code section 9884 .7, which provides

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that the Bureau of Automotive Repairs may invalidate an auto repair dealer's registration for "[a]ny willful departure from or disregard of accepted trade standards for good and workmanlike repair in any material respect, which is prejudicial to another without consent of the owner or his or her duly authorized representative." (Bus. & Prof.Code, § 9884.7, subd. (a)(7).) The provision does not establish a private right of action against an insurer.

Second, the regulation declines to adopt any particular repair standard. Thus, the regulation is not violated simply because a repair estimate fails to meet specifications outlined by the manufacturers, I-CAR, or ASE. In essence, plaintiffs' complaint invites the court to determine whose repair standards State Farm must follow, something California regulators have expressly declined to do.

Finally, plaintiffs cite the complaint's allegation that a failure to follow the cited industry standards "by definition do[es] not return a vehicle to its pre-loss condition." As we noted above, in reviewing a trial court's order sustaining demurrers, " ' "[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] ..." ...' " (Zelig, supra, 27 Cal.4th at p. 1126, 119 Cal.Rptr.2d 709, 45 P.3d 1171.) This allegation is a mere conclusion unsupported by any provision of the insurance policy or applicable law. We thus reject it.

### 2. The Complaint Does Not Allege a Breach of Contract Based on State Farm's Labor Costs

The fifth amended complaint alleges the labor costs in the estimate provided to Levy were "$4 per hour below industry standards." Again, nothing in the insurance contract requires State Farm to set labor costs at the industry scale. Instead, the policy requires State Farm's repair estimate to be "based upon the prevailing competitive price." The policy explains: "The prevailing competitive price means prices charged by a majority of the *repair market* in the area where the *car* is to be repaired as determined by a survey made by [State Farm]" (Italics added.) The complaint makes no connection between State Farm's failure to follow industry standards and the policy's requirement that the repair estimate reflect the prevailing competitive price.

**\*5** Although not referring specifically to Levy's estimate, or Battle's repair, the complaint alleges that State Farm does not conduct its prevailing

competitive price surveys properly. Citing a State Farm brochure, the complaint alleges: "State Farm has narrowly interpreted the 'repair market in the area where the car is to be repaired' as 'composed of those repair facilities which comply with State Farm Insurance Company's repair facility criteria.' In other words, the 'survey' called for in the policy has been done only of repair facilities that have agreed to make the repair omissions required by State Farm and charge the lower labor rates required by State Farm. Further, State Farm only determines by the survey that a 'substantial number' of the shops surveyed can perform the repairs at State Farm's prices. It does not define substantial number and this does not necessarily mean a majority, as required by the terms of the insurance contract. State Farm's survey data and results remain strictly confidential so there is no way for insureds to test the timeliness or the accuracy of the surveys. The representation that these are 'market rates' is therefore false. The labor rates State Farm uses in its Estimates are consistently below the actual market rate for the labor in question."

Despite the complaint's general conclusion that State Farm's labor rates are below market rates, the complaint's specific allegations supporting this conclusion do not demonstrate a breach of contract. For example, the complaint alleges that State Farm surveys only those shops which agree to State Farm's rates. There is nothing in the policy, however, which prevents State Farm from doing this. Moreover, although some states preclude insurers from including contracted repair shops in auto repair labor rate surveys, California does not. (Compare Cal.Code Regs., tit. 10, § 2698.91 with R.I. Gen. Laws § 27-29-4.4.) [FN1] Similarly, the complaint cites a State Farm publication which promises that a "substantial number" of the shops in the local area will repair the insured's damaged vehicle at the rates quoted, and asserts that this "does not necessarily mean a majority," as required by the policy. An allegation that a breach of contract *might have* occurred is plainly insufficient to support a breach of contract cause of action .[FN2]

We therefore conclude the fifth amended complaint fails to state a cause of action for breach of contract.

### B. The Complaint Does Not Allege a Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing

"Implied in every contract is a covenant of good faith and fair dealing that neither party will injure the right

of the other to receive the benefits of the agreement." (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 314, 84 Cal.Rptr.2d 455, 975 P.2d 652.) The fifth amended complaint alleges State Farm breached this implied covenant by: "a. preparing Estimates that uniformly exclude certain procedures and materials that are necessary to repair damaged vehicles in a manner that is consistent with the industry standards; [¶ ] b. failing or refusing to conduct or ignoring a legitimate survey, as required by its standardized automobile insurance policy, to determine the 'prevailing competitive prices' used by State Farm Estimators in preparing Estimates; [¶ ] c. referring its insureds to body shops that are operating under a contract with State Farm that amounts to an undisclosed conflict of interest; [¶ ] d. prohibiting body shops from exercising independent professional judgment with respect to repairs which they deem necessary as determined by industry standards; and [¶ ] e. with respect to the Company-operated Drive-In estimating facilities, tendering direct payments to insureds that are arbitrarily determined and bear no relation to the actual sums necessary to repair damaged vehicles according to industry standards."

*6 With respect to items a., b., d., and e., each cites State Farm's failure to follow "industry standards," which we noted were neither required by law nor included in the insurance policy. For item c., the mere fact State Farm has an allegedly undisclosed contract with a repair shop to perform repairs according to State Farm's estimate does not by itself deprive the insured of the benefits promised under the policy. For item d., the mere fact a repair shop may not exercise independent judgment does not mean the insured's vehicle will not be restored to its preaccident condition. Accordingly, none of the allegations establish a breach of the implied covenant of good faith and fair dealing.

*C. The Complaint Does Not Allege a Violation of the Unfair Competition Law (UCL)*

1. Battle Cannot Allege a Cause of Action Under the UCL

As an initial matter, we note that Battle, as an Illinois resident, cannot state a viable UCL claim. California's "state statutory remedies may be invoked by out-of-state parties [only] when they are harmed by wrongful conduct occurring in California." (*Norwest Mortgage, Inc. v. Superior Court* (1999) 72 Cal.App.4th 214, 224-225, 85 Cal.Rptr.2d 18.)

Because State Farm's handling of Battle's claim occurred in Illinois, she may not invoke California's UCL. [FN3]

2. Levy's Allegations Fail to Establish Unlawfulness Under the UCL

The UCL proscribes "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof.Code, § 17200.) A plaintiff may allege a UCL cause of action if the defendant's actions fall within any of these three categories. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527. (*Cel-Tech* ).) Plaintiffs contend the allegations in their complaint established State Farm engaged in unlawful and unfair conduct under the UCL. We disagree.

The complaint alleges State Farm violated California civil fraud and deceit statutes, Civil Code sections 1572, 1574, 1709, and 1710. Incorporating by reference its previous allegations, the complaint describes the unlawful acts of affirmative fraud under these sections as follows: "State Farm violated the California Civil Code by misrepresenting that it would pay for all of the cost of repair of insured vehicles, by misrepresenting that it would pay the prevailing competitive price for repairs, by representing that checks tendered to insureds in lieu of repairs represented the full amount necessary to perform such repairs...."

To show an "unlawful" act under the UCL, the plaintiff must allege all of the elements required for a violation of an existing statute or other law. (*South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 880, 85 Cal.Rptr.2d 301.) To state a cause of action under the civil fraud statutes, each element " 'must be alleged in the proper manner and the facts constituting the fraud must be alleged with sufficient specificity to allow defendant to understand fully the nature of the charge made.' [Citations.] [¶ ] The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861.)

*7 The allegations in the UCL claim cited above fail

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----
--- Cal.Rptr.3d ----, 2007 WL 869496 (Cal.App. 4 Dist.)
**(Cite as: --- Cal.Rptr.3d ----)**

to provide any specificity regarding what statements were made, who made them, etc. The complaint's only reference to misrepresentations State Farm made to the named plaintiffs reads: "The [State Farm] employee offered to pay Levy directly in lieu of making the necessary repairs. The employee represented or implied that the amount offered as a direct payment was the cash equivalent of the total cost of repairing the vehicle according to industry standards." The phrase "represented or implied" is far too vague to properly plead a fraud cause of action. The plaintiffs apparently recognized their inability to plead fraud with specificity when they dropped their separate fraud and deceit cause of action after the trial court sustained three successive demurrers to it. The pleading requirements for a fraud cause of action would be rendered meaningless if a plaintiff were allowed to generally plead a violation of civil fraud statutes under the UCL.

The allegations relating to fraudulent nondisclosure also do not state a cause of action for fraud. The complaint alleges State Farm violated the civil fraud statutes "by failing to tell insureds that it routinely omits necessary repairs from repair estimates, by failing to tell insureds that it uses only data from shops that have agreed to omit these necessary repairs in determining the prevailing competitive prices for repairs." The premise underlying these allegations is that State Farm omits "necessary" repairs. The complaint characterizes "necessary" repairs as those which conform to the industry standards cited. As we noted earlier, plaintiffs have failed to cite any law or policy provision requiring State Farm to follow "industry standards" when estimating repairs. Thus, State Farm did not act deceitfully when it did not inform the insureds that the repair estimates might not meet various industry standards it had not agreed to follow.

The complaint also alleges State Farm's actions violated <u>Insurance Code section 790.03</u>, proscribing "unfair and deceptive acts or practices in the business of insurance," and <u>California Code of Regulations, title 10, section 2695.8, subdivision (a)</u>, which prohibits insurers from referring to repair shops without paying the sums necessary to restore the insured's vehicle to its pre-loss condition. These provisions are part of the Unfair Insurance Practices Act (UIPA). (<u>Ins.Code, § 790</u> et seq.) These allegations fail to show State Farm acted unlawfully because "the UIPA does not create a private right of action for violations of its provisions [citation], and ... a plaintiff may not 'plead around' that limitation by casting a cause of action based on a violation of

the UIPA as one brought under the UC[L]." (<u>Manufacturers Life Ins. Co. v. Superior Court (1995) 10 Cal.4th 257, 267, 41 Cal.Rptr.2d 220, 895 P.2d 56</u>.) Accordingly, we conclude plaintiffs have failed to state a UCL claim based on State Farm's alleged "unlawful" activities.

### 3. Levy's Allegations Fail to Establish Unfairness Under the UCL

**\*8** "Although the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair." (<u>Cel-Tech, supra, 20 Cal.4th at p. 182, 83 Cal.Rptr.2d 548, 973 P.2d 527</u>.) The California Supreme Court has not clearly defined what constitutes an "unfair" business practice under the UCL in the consumer context. Nonetheless, two lines of appellate opinions have developed. "One line defines 'unfair' as prohibiting conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. [Citations.] The other line of cases holds that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions. [Citations.]" (<u>Bardin v. DaimlerChrysler Corp. (2006) 136 Cal.App.4th 1255, 1260-1261, 39 Cal.Rptr.3d 634</u> (<u>Bardin</u> ).) We may quickly dispense with the latter line of authority. As we noted above, plaintiffs have not identified any specific constitutional, statutory, or regulatory provisions State Farm has violated.

This leaves us with the question whether State Farm's actions were "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" under the UCL. (<u>Bardin, supra, 136 Cal.App.4th at p. 1260, 39 Cal.Rptr.3d 634</u>.) We recognize that "weighing the utility of a defendant's conduct against the gravity of the harm to the alleged victim" is often difficult at an early stage in the proceedings. (<u>Ibid.</u>) Nevertheless, "we will affirm a judgment of dismissal where the complaint fails to allege facts showing that a business practice is unfair, unlawful or fraudulent." (<u>Id.</u> at p. 1271, 39 Cal.Rptr.3d 634.)

We addressed what constitutes an unfair business practice in *Bardin,* with facts analogous to those presented here. There, an automobile manufacturer constructed its sport utility vehicle's exhaust manifold from tubular steel. The plaintiffs alleged the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"standard of the industry" required the manufacturer to make the exhaust manifold out of cast iron, and that the less expensive tubular steel " 'prematurely cracked and failed much earlier than would a cast iron manifold.' " (*Bardin, supra,* 136 Cal.App.4th at p. 1362, 39 Cal.Rptr.3d 659.) The plaintiffs alleged the manufacturer concealed these facts from the public to sell replacement parts, increase profits, and gain market share. (*Ibid.*)

*Bardin* affirmed the trial court's sustaining of demurrers without leave to amend. The court found no authority supporting a public policy against using tubular steel manifolds in manufacturing cars, even if less durable than cast iron. (*Bardin, supra,* 136 Cal.App.4th at p. 1270, 39 Cal.Rptr.3d 634.) The court cited "the general public policy that a consumer can be 'fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will." (*Ibid.*) The court concluded that nothing in the complaint supported the plaintiffs' contention that the manufacturer's conduct "was immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." (*Ibid.*)

**\*9** Here, as in *Bardin,* plaintiffs failed to demonstrate how State Farm's alleged failure to follow an ill-defined industry standard runs counter to public policy, or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Indeed, the complaint does not contend that State Farm's repair estimates would have resulted in Levy driving a defective or unsafe car.[FN4] We conclude here, as we did in *Bardin,* that State Farm's failure to follow general industry standards does not constitute an unfair business practice.

### D. Plaintiffs Have Not Alleged a Cause of Action for Unjust Enrichment, Declaratory Relief, or Injunctive Relief

" '[I]t is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter. [Citations.]' " (*Shvarts v. Budget Group, Inc.* (2000) 81 Cal.App.4th 1153, 1160, 97 Cal.Rptr.2d 722.) Where suit is based on a written, binding insurance policy, a plaintiff must plead the policy is void or otherwise unenforceable to proceed with a quasi-contract claim. (*Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* . (1996) 44 Cal.App.4th 194, 203, 51 Cal.Rptr.2d 622.) These plaintiffs have failed to do so.

Because each of plaintiffs' substantive claims fails as a matter of law, there is no "actual controversy" remaining between the parties that would support a declaratory relief claim. (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79, 124 Cal.Rptr.2d 519, 52 P.3d 695.) Moreover, the lack of any viable cause of action defeats plaintiffs' injunction request, as "injunction is a remedy, not a cause of action." (*Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 618, 129 Cal.Rptr.2d 546.)

### E. The Trial Court Did Not Abuse Its Discretion in Dismissing Battle on Forum Non Conveniens Grounds

Code of Civil Procedure section 410.30, subdivision (a), provides: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." "Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley, Inc.* (1991) 54 Cal.3d 744, 751, 1 Cal.Rptr.2d 556, 819 P.2d 14.) A trial court's decision to grant a motion to dismiss on forum non conveniens grounds is accorded "substantial deference." (*Ibid.*)

As we determined above, the plaintiffs have failed to allege a cause of action, with the possible exception of Battle's allegations State Farm violated Illinois' unfair business practices statute. We need not decide, however, whether Battle has pleaded a claim under Illinois law because the trial court did not err in dismissing on the grounds of forum non conveniens. Battle is an Illinois resident, involved in an automobile accident in Illinois, holding an Illinois insurance policy, and alleging an Illinois statutory claim. " ' "There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned." ... [T]he injustices and the burdens on local courts and taxpayers, as well as on those leaving their work and business to serve as jurors, which can follow from an unchecked and unregulated importation of transitory causes of action for trial in this state ... require that our courts, acting upon the equitable principles ..., exercise their discretionary

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----
--- Cal.Rptr.3d ----, 2007 WL 869496 (Cal.App. 4 Dist.)
**(Cite as: --- Cal.Rptr.3d ----)**

Page 8

power to decline to proceed in those causes of action which they conclude, on satisfactory evidence, may be more appropriately and justly tried elsewhere.' " (*Stangvik, supra,* 54 Cal.3d at p. 751, 1 Cal.Rptr.2d 556, 819 P.2d 14) California simply has no interest in adjudicating Battle's potential claim.

**\*10** Because Levy has failed to allege a viable claim and Battle was properly dismissed for forum non conveniens, there are no named class representatives. Accordingly, the trial court did not err in dismissing the class action. Moreover, plaintiffs have not demonstrated they could further amend their fifth amended complaint to state a viable cause of action. Accordingly, we conclude the trial court did not err in denying leave to further amend.

IV

Disposition

The judgment is affirmed. State Farm is entitled to its costs on appeal.

WE CONCUR: <u>BEDSWORTH</u>, Acting P.J., and <u>MOORE</u>, J.

<u>FN1.</u> <u>Rhode Island General Laws, section 27-29-4.4, subdivision (a)(3),</u> provides: "Insurers may not use an auto body labor rate survey, contract rates from auto body repair facilities with which it has a formal agreement or contract to provide auto body repair services to insureds and/or claimants, or rates from a repair facility holding a special use license."

<u>FN2.</u> We note that Levy could have determined whether State Farm's survey included a majority of shops in the repair area. <u>California Code of Regulations, title 10, section 2698.91</u> requires insurers to report labor survey results to the Department of Insurance, which must include the name and address of each shop included in the survey, and the total number of shops in the area. (<u>§ 2698.91, subd. (c)</u>.) The Department of Insurance is required to make the reports publicly available on request. (<u>§ 2698.91, subd. (e)</u>.)

<u>FN3.</u> Battle contends she has alleged a cause of action under Illinois' unfair competition

law. We need not reach this issue because, as discussed below, we conclude the trial court properly granted State Farm's forum non conveniens motion.

<u>FN4.</u> The only manner in which the complaint implicates consumer safety relates to its allegation that State Farm repair estimates omit a line item for a seat belt check, "facilitating a potential safety hazard." The complaint, however, does not allege a seat belt check was omitted from Levy's estimate.

Cal.App. 4 Dist.,2007.
Levy v. State Farm Mut. Auto. Ins. Co.
--- Cal.Rptr.3d ----, 2007 WL 869496 (Cal.App. 4 Dist.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.