1  WENDY C. YORK, SBN 166864
   JENNIFER B. EULER, SBN 232378
2  **YORK LAW CORPORATION**
   1111 Exposition Boulevard, Building 500
3  Sacramento, CA 95815
   Telephone: 916-643-2200
4  Facsimile: 916-643-4680

5
   Attorneys for Plaintiff and the Class
6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                       OAKLAND DIVISION

11
   ROBERT WATTS, on behalf of himself          CASE NO.:  CV 081236
12 individually and all others similarly situated,

13            Plaintiffs,                       **MEMORANDUM OF POINTS AND
                                                AUTHORITIES IN OPPOSITION TO
14        vs.                                   DEFENDANTS' MOTION TO STAY**

15 ALLSTATE INDEMNITY COMPANY, an
   Illinois corporation; ALLSTATE              Date:    June 24, 2008
16 INSURANCE COMPANY, an Illinois             Time:    1:00 pm
   corporation; ALLSTATE PROPERTY             Place:   Courtroom 3
17 AND CASUALTY INSURANCE                     Judge:    Hon. Saundra Brown Armstrong
   COMPANY, an Illinois corporation; and
18 DOES 1 through 100, inclusive,

19            Defendants.

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION ....................................................................................................... 2

II.   FACTUAL BACKGROUND....................................................................................... 3

III.  LEGAL STANDARD................................................................................................... 4

IV.   ARGUMENT............................................................................................................... 5

    A.  Plaintiff's Complaint Properly Alleges Defendant Breached Its
       Obligations Under the Insurance Policy Contract With Plaintiff .............................. 5

    B.  Defendants' Appraisal Process Is Not Applicable to the Replacement
       Of Post-Collision Seatbelts...................................................................................... 9

      1.  The Right to Appraisal is not a Precondition to Filing
         An Action Against Defendants' for Their Breach of Their
         Contractual Obligations ...................................................................................... 9

      2.  Defendants Waived Their Right to Invoke the Appraisal Process ......................... 10

      3.  Defendants' Appraisal Process Is Not Applicable to the
         Replacement of Seatbelts................................................................................... 11

      4.  To Ensure His Safety and the Safety of His Passengers, Plaintiff
         Replaced His Seatbelts at His Own Expense Rendering the
         Appraisal Process Moot...................................................................................... 11

    C.  Plaintiff Properly Alleged Allstate's Breach of Contract Was In Bad Faith .............. 12

    D.  Plaintiff Properly Alleged Defendants' Breach of the Implied Covenant
       Of Good Faith and Fair Dealing .............................................................................. 12

    E.  Plaintiff's Complaint Alleges Allstate's Fraud and Misrepresentation
       With Particularity..................................................................................................... 14

    F.  Plaintiff's Complaint Properly Alleges That Defendants' Uniform Policy
       Of Refusing to Inspect and Replace Post-Collision Seatbelts Constitutes
       An Unfair Business Practice ..................................................................................... 16

    G.  Plaintiff's Complaint Alleges Allstate's Activities Violate The Racketeer
       Influenced and Corrupt Organizations Statutes......................................................... 17

    H.  Defendants Allstate Insurance Company and Allstate Property and Casualty
       Insurance Company Are Proper Defendants .............................................................. 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I. Though Plaintiff's Complaint Properly Alleges Each and Every Cause Of Action Therein, If The Court Finds Any Claim Lacking Plaintiff Requests Leave To Amend ........................................................…........................................ 18

V.     CONCLUSION..............................................................…....................................19

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

*Allarcom Pay Television, Ltd. V. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995) .....5

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)...........................................4

*Bank v. Pitt*, 923 F.2d 1108, 1112 (11th Cir. 1991)..................................................................19

*Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996)...........................................5

*Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996) ......................................................5

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1997)...............................................................................4

*Corsican Productions v. Pitchess* , 338 F.2d 441, 442 (9th Cir. 1964) ...........................................4

*Gilligan v. Jamco Development Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) ....................................4

*International Service Ins. Co. v. Brodie*, 337 S.W.2d 414, 415 (1960)........................................10

*Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997) ..........................................................4

*Levy v. State Farm Mutual Automobile Ins., Co.*, 150 Cal.App.

*Michaels v. Antitrust Co.*, 848 F.2d 674, 680 & n.9 (6th Cir. 1988) ......................................14, 15

*Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995)..........................................................................5

*Moore v. City of Costa Mesa*, 866 F.2d 260, 262 (9th Cir. 1989) ..................................................4

*Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 482 (1985)......................................................17

*Terra Industries, Inc. v. Commonwealth Insurance Company of America*,
   951 F.Supp. 581, 597 (N.D. Iowa 1997) .................................................................................10

*U.S. v. City of Redwood City*, 640 F.2d 963, 966 (1981) ...............................................................4

*Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir. 1987)......................................14

## STATE CASES

*Community Assisting Recovery, Inc. v. Aegis Security Insurance Co*.
   92 Cal.App.4th 866, 891 (2001) ..............................................................................................16

*Egan v. Mutual of Omaha Ins. Co*. 24 Cal.3d 809, 818 (1979)....................................................13

*Levy v. State Farm Mutual Automobile Ins. Co.*, 150 Cal.App.4th 1, 8 (2007) .............................7

iii

*Love v. Fire Exchange*, 221 Cal.App.3d 1136, 1150 (1990) ...........…...............................................13

*Paulfrey v. Stamps*, 150 Cal.App.3d 187, 192 (1983) ...................…................................................12

*People v. Casa Blanca Convalescent Homes, Inc.* 159 Cal.App.3d 509, 530 (1984) ....................16

*Ray v. Farmers Ins. Exch.*, 200 Cal.App.3d 1411, 1415-16 (1988) ................................................7

*Spear v. California State Auto. Assn.*, (1992) 2 Cal.4[th] 1035 (1992)............................................10

*Tran v. Farmers Group, Inc.* 104 Cal.App.4[th] 1202 (2002) ........…...............................................18

## FEDERAL STATUTES

Federal Rules of Civil Procedure, Rule 8(a)................................................................................4, 15

Federal Rules of Civil Procedure, Rule  9(b)..................................................................................14

Federal Rules of Civil Procedure, Rule 12(b)(6) ........................................................................4, 5

Federal Rules of Civil Procedure, Rule 15(a)..........................................................................18, 19

U.S.C. § 1962(a)(b)(c) ...................................................................................................................17

## STATE STATUTES

California Business and Professions Code Section 17204 .............................................................16

1  WENDY C. YORK, SBN 166864
   JENNIFER B. EULER, SBN 232378
2  **YORK LAW CORPORATION**
   1111 Exposition Boulevard, Building 500
3  Sacramento, CA 95815
   Telephone: 916-643-2200
4  Facsimile: 916-643-4680
5
   Attorneys for Plaintiff and the Class
6
7
8                     UNITED STATES DISTRICT COURT
9              FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                         OAKLAND DIVISION
11
12 ROBERT WATTS, on behalf of himself          CASE NO.:  CV 081236
   individually and all others similarly situated,
13                                             **MEMORANDUM OF POINTS AND**
                  Plaintiffs,                  **AUTHORITIES IN OPPOSITION TO**
14         vs.                                 **DEFENDANTS' MOTION TO STAY**
15 ALLSTATE INDEMNITY COMPANY, an
   Illinois corporation; ALLSTATE             Date:    June 24, 2008
16 INSURANCE COMPANY, an Illinois             Time:    1:00 pm
   corporation; ALLSTATE PROPERTY             Place:   Courtroom 3
17 AND CASUALTY INSURANCE                     Judge:   Hon. Saundra Brown Armstrong
   COMPANY, an Illinois corporation; and
18 DOES 1 through 100, inclusive,
19                 Defendants.
20
21
22         Plaintiff ROBERT WATTS, ("Plaintiff"), on behalf of himself individually and on behalf
23 of all others similarly situated, brings this class-action complaint against Defendants Allstate
24 Indemnity Company, Allstate Insurance Company, and Allstate Property and Casualty Insurance
25 Company (hereinafter "Allstate or "Defendants").
26         Defendants attack each cause of action raised by Plaintiff either for failure to state a claim,
27 or for lack of particularity.  On the contrary, Plaintiff's claims are supported by law, and Allstate
28

-1-

ignores the numerous allegations set forth the Complaint ("Compl."). Accordingly, Defendants'

motion should be denied, or at the very least, Plaintiff should be granted leave to amend, to cure

any defects recognized by this court, or to plead with greater particularity.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This putative class action stems from Defendants conscious corporate-wide policy to

endanger the lives and safety of their insured to turn a profit by refusing to inspect and/or replace

seatbelts and seatbelt tensioners (hereinafter "seatbelts") in Allstate insured vehicles involved in

collisions despite the automobile manufacturers' mandate that they must be replaced following a

collision. As a result of this corporate policy, Allstate's insured are driving post-collision

vehicles with seatbelts that are less effective and pose a significant risk of injury and/or death to

Allstate's insured. Plaintiff Robert Watts brought this putative class action on behalf of all

policyholders to recover damages for breach of the defendants' contractual obligations, penalties

because the breach was in bad faith under California law, and injunctive relief requiring the

defendants to pay for the inspection and/or replacement of post-collision seatbelts and seatbelt

tensioners in the future. Because Plaintiff's complaint states proper claims for relief,

Defendants' motion to dismiss must be denied.

This Class Action Complaint asserts claims for relief for the following: 1) breach of

contract; 2) bad faith; 3) breach of the implied covenant of good faith and fair dealing; 4)

fraud/misrepresentation; 5) unfair competition; and 6) racketeer influenced and corrupt

organizations violations.

/ / / /

/ / / /

-2-

## II.

## __FACTUAL BACKGROUND__

In late 2005, Plaintiff Robert Watts purchased and/or renewed an auto policy from Allstate. (*Compl.*, ¶ 37.) At that time, Mr. Watts was provided a copy of Allstate's form auto policy and endorsement. (*Id.*) The auto policy and endorsement covered Mr. Watts' 2005 Honda Civic Sedan LX as an Allstate insured vehicle. (*Id.*) On March 29, 2006, Plaintiff's Allstate-insured 2005 Honda Civic LX was significantly damaged in a collision. (*Compl.*, ¶40.) Both the driver and front passenger seatbelts in the vehicle locked and took on significant force. (*Id.*) Enough force was absorbed and/or distributed during the accident to cause the passenger riding in Plaintiff's front passenger seat fractured rib, as well as other injuries. The driver of the vehicle sustained serious neck injuries. (*Id.*)

The impact of an accident reduces the effectiveness of a seat belt permanently because it elongates the webbing and it may damage or render inoperable other parts of the seat belt. (*Compl.*, ¶ 15.) Problems such as excessive slack, broken locking mechanisms, or faulty tensioners leave the seatbelt incapable of providing protection to the occupants of a vehicle and may actually cause serious injuries in the event of another accident. (*Id.*)

In fact, because seatbelts are less effective following an accident, Automobile owner manuals require seatbelts be inspected or replaced after an auto accident occurs. (*Compl.*, ¶¶ 15, 16) (*Compl.*, ¶ 16.) Vehicle manufacturers further warn that the failure to inspect, maintain, or replace seat belts after a collision can result in serious injury or death. (*Id.*)

Pursuant to the insurance policy and endorsement provided to Mr. Watts, Allstate was obligated to repair or replace property damaged in the event of a collision and restore the 2005 Honda Civic to its condition at the time of loss. (*Compl.*, ¶ 38.) In April 2006, an auto body repair shop repaired Mr. Watts' car based on Allstate's estimate, fixing the front bumper, front

-3-

door side, headlamps, hood panels, fenders, condenser, radiator, and various other parts not including the inspection or replacement of the seatbelt. (*Compl.*, ¶ 44.) During the course of the repairs to his vehicle, Plaintiff requested that Allstate inspect the seatbelts and pretensioners in Plaintiff's vehicle. (*Compl.*, ¶ 45.) Despite Allstate's contractual obligation to repair or replace the damaged parts in Plaintiff's vehicle and to restore the vehicle to its pre-loss condition, Allstate refused to inspect or repair the seat belts in Plaintiff's 2005 Honda Civic after the accident, leaving it dangerously unsafe. (*Compl.*, ¶ 46.)

### III.

### LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Federal Rule of Civil Procedure, Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1356 (1990). The notice pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Development Corp.,* 108 F.3d 246, 249 (9th Cir. 1997).

A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1997). See also *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997); *Moore v. City of Costa Mesa*, 866 F.2d 260, 262 (9th Cir. 1989) (quoting *Conley*, *supra*). In other words, a Rule 12(b)(6) dismissal is only proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "Under this rule it is only the extraordinary case in which dismissal is proper." *U.S. v. City of*

-4-

*Redwood City*, 640 F.2d 963, 966 (1981) citing *Corsican Productions v. Pitchess*, 338 F.2d 441, 442 (9th Cir. 1964).

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court's review is limited to the contents of the complaint. See *Campanelli v. Bockrath,* 100 F.3d 1476, 1479; *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). The court must accept all factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. See *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

Allstate is attempting to turn their motion to dismiss into a motion for summary judgment by posing factual arguments that are proper only for a trier of fact and not applicable to a motion to dismiss. Defendants also attach to their motion a letter from Allstate to Plaintiff (*Defendants' Motion to Dismiss, Exhibit B*). Contrary to Defendants' assertion, this letter is not central to Plaintiff's claim. This letter is never cited in the pleadings, nor is it incorporated by reference as it was not even in existence at the time the Plaintiff filed his Complaint. In ruling on a F.R.C.P. 12(b)(6) motion to dismiss, the court must accept all factual allegations pleaded in the complaint as true and cannot consider matters outside of the pleadings. Thus, Defendants' factual arguments and extraneous documents should be disregarded as an improper attempt to convert this motion to a motion for summary judgment.

## IV.

## ARGUMENT

### A.    Plaintiff's Complaint Properly Alleges Defendant Breached Its Obligations Under the Insurance Policy Contract with Plaintiff.

This is a diversity case and as such California substantive law applies.

Defendant Allstate breached its contractual obligation to restore Plaintiff's vehicle to its

-5-

pre-accident condition by refusing to underwrite the inspection and/or replacement of the seatbelts in Plaintiff's insured vehicle after the vehicle was involved in a collision. To plead a breach of contract properly under California law, a plaintiff must state four elements: (1) the existence of a contract between the parties; (2) plaintiff's performance; (3) defendant's unjustified or unexcused failure to perform; and (4) damages to plaintiff caused by the breach. Cal. Jury Instructions 10.85. Plaintiff's complaint properly alleges the requisite elements for breach of contract.

The insurance policy (the contract at issue) governing Defendants' and Plaintiff's relationship states, "This policy is a legal contract between you and us." (See *Policy* page 2.) The insurance policy's provisions provide, "If **you** [insured] pay the premiums when due and comply with the policy term, **Allstate**, relying on the information you have given **us**, makes the following agreements with **you**." (*Id.* (emphasis in original).) Plaintiff paid all premiums due under his policy, submitted all proofs of loss required under the policy, and performed all other conditions the policy required him to perform. (*Compl.* ¶ 60.) Defendants breached the agreement by its failure to perform their contractual obligations. The insurance policy states, "**Allstate** will pay for direct and accidental loss to **your** insured **auto** or a non-owned auto from a collision with another object or by upset of that auto or trailer." (*Compl.* ¶¶ 38, 61 (emphasis in original).)

In addition, the insurance policy endorsement addressing "Limits of Liability" further explains the coverage provided under the policy: "Allstate's limit of liability is the least of: (1) the actual cash value of the property or damaged part of the property at the time of loss, which may include a deduction for depreciation; or (2) the cost to *repair or replace the property or part to its physical condition at the time of loss* using parts produced by or for the vehicles manufacturer, or parts from other sources, ...." (*Compl.* ¶¶ 39, 61 (*emphasis added*).)

1     Thus, Defendants' contractual obligation was to repair or replace Plaintiff's post-collision

2     seatbelts to their physical condition at the time of the loss.

3     Defendant breached its agreement when Allstate refused to repair or replace plaintiff's

4     seatbelts following the collision. (*Compl.*, ¶ 22.) As a result, Plaintiff's vehicle was left with

5     seatbelts that posed significant safety risks to Plaintiff and his passengers. To restore his vehicle

6     to its preaccident safety condition, Plaintiff was forced to pay for the replacement of the seatbelts

7     on his own and resort to filing a complaint against Allstate to recover his loss.

8

9     Defendants contend that Plaintiff fails to state a cause of action because the insurance

10     policy does not require Allstate to "inspect" his vehicle's seatbelts or comply with "general

11     industry standards." (See *Defendants' Motion to Dismiss* 4:25-26.) To support their contention,

12     Defendants rely on *Levy v. State Farm Mutual Automobile Ins. Co.*, 150 Cal.App.4th 1, 8 (2007).

13     In *Levy*, the court held the insurance company was required to "restore the vehicle to its pre-loss

14     condition…" In California, the term "pre-loss condition" as used in an insurance contract plainly

15     means "*preaccident safe*, mechanical, and cosmetic condition." *Id.* at 7 citing *Ray v. Farmers

16     Ins. Exch.*, 200 Cal.App.3d 1411, 1415-16 (1988) (*emphasis added*). Allstate failed to restore

17     Plaintiff's vehicle to its preaccident safe condition, in breach of its agreement.

18

19     The impact in an accident reduces the effectiveness of a seat belt permanently by

20     elongating the webbing. (*Id.*) Problems such as excessive slack, broken locking mechanisms, or

21     faulty tensioners leave the seatbelt incapable of providing protection to the occupants of a vehicle

22     and may actually cause serious injuries in the event of an accident. (*Id.*) Vehicle manufacturers

23     have cautioned that seat belts must be inspected and/or replaced after an automobile collision and

24     have further warned that the failure to inspect, maintain, or replace seatbelts after a collision can

25     result in serious injury or death. (*Compl.,* ¶ 16.) Thus, according to Defendants' proffered

26     standard, Defendants failed to fulfill their contractual obligation to restore Plaintiff's vehicle to its

27

28

-7-

pre-loss condition.    If "pre-loss condition" means "preaccident safe," then it is clear that Defendants breached their contractual duty to restore the vehicle to its pre-loss condition because seatbelts that are activated during a collision are not safe and may cause serious injury. (*Compl.*, ¶ 15.) Accordingly, Defendants' refusal to inspect and/or replace Plaintiff's seatbelts is a failure to restore Plaintiff's vehicle to its pre-loss condition.

Plaintiff's complaint alleges the inspection and replacement of post-collision seatbelts is mandated by vehicle manufacturers as a part of the repair process following any collision.  It does not matter whether the seatbelt shows any external or obvious signs of damage, the need for inspection and replacement is determined by the vehicle's involvement in a collision. (*Compl.*, ¶ ¶ 15,16.)  The necessity of this inspection as part of <u>any</u> post-collision repair process has been recognized by I-CAR, which sets the standards for the auto repair industry and Defendants are aware of this industry standard. (*Compl.*, ¶ 18.)  Despite this knowledge, Defendants refused to underwrite this inspection and/or replacement.  By refusing to pay for a necessary element of proper repair, Allstate breached its obligation to pay for repair of the vehicle under the collision coverage of its policies.

Allstate alternatively asserts that the Plaintiff's Complaint lacks an allegation that his seatbelts were broken and that precludes him from recovering for Allstate's breach of its contractual obligation to inspect and replace the seatbelts as a part of the proper repair of the vehicle.  (See *Defendants' Motion to Dismiss* 11:1-5.)  Allstate's argument is premised on a misunderstanding of the nature of Plaintiff's claims.  Neither the vehicle manufacturers nor I-CAR conditions the inspection and replacement requirement upon an observed malfunction of the seatbelt.  The very purpose of the detailed inspection protocol is to determine whether there is damage to the seatbelts.  The inspection is triggered by the collision itself rather than by observed damage to the seatbelt.

**B.**    **Defendants' Appraisal Process Is Not Applicable to the Replacement of Post-Collision Seatbelts.**

Defendants assert that this case should be stayed because they have invoked their right to the appraisal process. However, the inspection and/or replacement of seatbelts is not a matter that is subject to the appraisal process. Assuming *arguendo* that the appraisal process is applicable, Defendants waived their right to invoke the appraisal process when they refused to replace the seatbelts upon request of their insured and by **waiting** over two years until Plaintiff had replaced the seatbelts at his own cost, hired counsel, and filed a Complaint before invoking their right. Furthermore, to ensure the safety of his vehicle, Plaintiff was forced to replace his seatbelts at his own cost. Because Plaintiff has already replaced the seatbelts, the request for a stay of the court proceedings pending appraisal is moot.

**1.**    **The Right to Appraisal is not a Precondition to Filing an Action Against Defendants' for Their Breach of their Contractual Obligations**

The insurance policy at issue provides, "Both **you** and **Allstate** have a right to demand an appraisal of the loss." (*Policy* page 21 (emphasis in original).) This statement merely provides both the insured and the insurer with a right to appraisal; it does not create a requirement that an insured invoke the appraisal process before filing a complaint. Defendants assert that Plaintiff has not complied with all terms of the policy "by refusing to proceed with the appraisal process." (*Defendants' Motion to Dismiss* 10:8-9. However, Plaintiff is not required to invoke the appraisal process as a term of the policy, it is not a precondition. Rather, it is merely an option when there is a dispute over the amount of loss. Furthermore, Plaintiff did not refuse to proceed with the appraisal process until Defendants "invoked their right to appraisal" two years after the loss and after Plaintiff filed a Complaint. As the appraisal process is not a precondition to bringing a claim, Defendants cannot use it as a vehicle to deny Plaintiff the opportunity to recover for his damages in Court.

-9-

**2.     Defendants Waived Their Right to Invoke the Appraisal Process**

Allstate could have invoked the appraisal process when Plaintiff requested his seatbelts be replaced.  Instead they choose to wait over two years until Plaintiff replaced the seatbelts at his own cost, hired an attorney, and filed a complaint.  Allstate's unreasonable delay in invoking the appraisal process constitutes a waiver.

The "Right to Appraisal" section of the policy provides that either party may demand an appraisal of the loss upon disagreement as to the amount of loss, but sets no specific deadline for the appraisal demand.  Appraisal provisions in an insurance policy may be waived by the insurance company.  *International Service Ins. Co. v. Brodie*, 337 S.W.2d 414, 415 (1960).  An insurance company cannot merely wait its own time to make a demand for appraisal, but must make it "in a seasonable and reasonable time."  *Id.*

Where an agreement does not specify a time within which a demand for appraisal may be made, a "reasonable time" in view of all the circumstances will be imposed."  Couch on Insurance Third Edition (15 Couch on Ins. § 211:44; *Spear v. California State Auto. Assn.*, 2 Cal. 4th 1035 (1992).  "An appraisal demand is timely if it is made when the parties cannot agree as to the actual cash value and amount of loss.  "Although the 'appraisal' provision, read literally, would permit an appraisal demand to be made at any time after the parties reached impasse, decisions of various courts interpret an appraisal clause lacking a specific time for demand to be made to require that the demand be made within a 'reasonable' time."  *Terra Industries, Inc. v. Commonwealth Insurance Company of America*, 951 F.Supp. 581, 597 (N.D. Iowa 1997).  Here, Allstate waited over two years and only invoked their right to appraisal after Plaintiff filed his Complaint.  It is clear that Defendants waived the appraisal process and did not intend to invoke their right to appraisal and only did so as a last ditch effort to avoid litigation.

////

-10-

### 3. Defendants' Appraisal Process Is Not Applicable to the Replacement of Seatbelts.

Allstate misconstrues Plaintiff's claims and attempts to broaden the terms of its appraisal provision beyond that which was intended. Plaintiff asserts in his complaint that Defendants breached their obligations under the collision coverage of its insurance policies by refusing to underwrite the inspection and/or replacement of post-collision seatbelts. Whether Plaintiffs are entitled to coverage for this claim under the terms of Allstate's policies is a matter which is subject to the Court's interpretation of the policy's terms, not a matter of how much the repairs would cost. Interpretation of Allstate's policy terms is a matter solely within the province of the Court. This Court may not be divested of that jurisdiction by couching that interpretation as being dependant upon the amount of a loss. Moreover, the appraisal provision provides that each appraiser will "state the actual cash value and the amount of loss." Neither the actual cash value nor the amount of Plaintiff's losses are at issue in these proceedings. At issue is whether Allstate breached the terms of its policies in failing to underwrite the inspection and/or replacement of post-collision seatbelts and thus, failing to return Plaintiff's vehicle to its pre-loss, preaccident safe condition, irrespective of the amount of the loss or the actual cash value. Accordingly, Defendant Allstate has no right to stay these proceedings pending a determination of facts which are not even at issue.

### 4. To Ensure His Safety and the Safety of His Passengers, Plaintiff Replaced His Seatbelts at His Own Expense Rendering the Appraisal Process Moot

In any instance, Defendants' refusal to underwrite the replacement of Plaintiff's seatbelts left the vehicle in an unsafe condition. To restore his vehicle's safety and avoid the risk of injury or death in a subsequent collision, Plaintiff was forced to pay for the inspection and replacement of his seatbelts on his own. Because Plaintiff already replaced the seatbelts in his vehicle, any

-11-

appraisal would be for naught.  Thus, Defendants' request to stay this action pending appraisal is moot.

### C.     Plaintiff Properly Alleged Allstate's Breach of Contract was in Bad Faith

Defendants contend that Plaintiff fails to plead a viable claim for breach of contract and therefore, Plaintiff's claims for relief for Defendants' bad faith and their breach of the implied covenant of good faith and fair dealing fail for the same reasons.  (See *Defendants' Motion to Dismiss* 10:14-16.)   However, as discussed above, Plaintiff sufficiently pled a claim for Defendants' breach of the insurance policy contract.   Therefore, Defendants' assertions are without merit.  (*Compl.,* ¶¶ 46, 68, and 71.)

Defendants further contend that "Plaintiff's bad faith claims are based on hypothetical damage or loss to seatbelts allegedly caused by Allstate's failure to pay for 'the inspection *and/or* replacement' of the seat belts.  (See *Defendants' Motion to Dismiss* 10:27-28; 11:1 (*emphasis in original*).)  Defendants continue by stating, "If Plaintiff himself cannot conclusively identify such damage necessitating repair or replacement, as a matter of law, he is precluded from faulting Allstate for failing to pay for it."  (See *Defendants' Motion to Dismiss* 10:27-28; 11:1 (*emphasis in original*).)  However, Defendant's assertions clearly ignore Plaintiff's allegations set forth in the Complaint.  The Complaint alleges specific damage and loss Plaintiff suffered as a result of Defendants bad faith breach of contract.

By purposely failing to inspect and replace Plaintiff's seatbelts, Allstate forced Plaintiff to seek legal counsel and file a complaint.  (*Compl.,* ¶ 68(A).)  In addition, Plaintiff's vehicle was not restored to its pre-loss condition as promised by Allstate because the vehicle's seatbelts were involved in a collision and thus dangerously unsafe. (*Compl.,* ¶ 46.)

/ / / /

/ / / /

-12-

**D.    Plaintiff Properly Alleged Defendants' Breach of the Implied Covenant of Good Faith and Fair Dealing.**

"The implied covenant of good faith and fair dealing requires that each contracting party refrain from doing anything which would injure the right of the other party to receive the benefits of the agreement." *Paulfrey v. Stamps,* 150 Cal.App.3d 187, 192 (1983) citing *Egan v. Mutual of Omaha Ins. Co.* 24 Cal.3d 809, 818 (1979). "In order for the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits contracted for, the governing standard is that the insurer must give at least as much consideration to the insured's interest as it does to its own." *Id.* "Whether an insurer's denial of a claim is *unreasonable* is dependent upon the *facts* in each case. The issue remains a question of fact unless only one inference may be drawn from the evidence." *Paulfrey v. Stamps, supra,* 150 Cal.App.3d at 194.

To establish breach of the implied covenant of good faith and fair dealing, plaintiff must show that: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause. See *Love v. Fire Exchange*, 221 Cal.App.3d 1136, 1150 (1990). "Under certain circumstances, in order to fulfill its obligation not to impair the right of the insured to receive the benefits contracted for and to give the insured's interests as much consideration as its own, an insurer must investigate an insured's claim." *Paulfrey, supra,* 150 Cal.App.3d at 195. The California Court of Appeal stated, "[t]here is no reason to limit the applicability of such a duty to investigate to disability insurance cases … since the purpose of health and accident insurance is also to protect the insured against calamity and to provide peace of mind and security. *Id.*

Plaintiff established that there was an insurance policy under which Defendants had a contractual obligation to restore his vehicle to its pre-loss state. (*Compl.,* ¶ 61.) Plaintiff's vehicle was involved in a collision wherein major damage was incurred and the two front passengers incurred significant injuries. Plaintiff's car Owners Manual states that the seatbelts

-13-

must be replaced following a collision because the seatbelts are less effective and can cause

serious injury or death if not replaced. (*Compl.*, ¶¶ 15 and 16.)  Allstate failed to restore the

vehicle to its pre-loss, preaccident safe state by refusing to inspect and replace the seatbelts.

(*Compl.*, ¶ 63.)  Plaintiff alleges that Defendants unreasonably implemented a uniform scheme to

decline to underwrite the post-collision inspections and repairs of the seatbelts in Plaintiff's

vehicle, despite its contractual obligation to restore the vehicle to its pre-loss, preaccident safe

state.  (*Compl.,* ¶ 70.)  Plaintiff's complaint further alleges that Allstate unreasonably exerted its

considerable influence to prevent third party auto-repair shops from inspecting and repairing the

seatbelts in Plaintiff's vehicle.  Allstate's unreasonable refusal to underwrite the inspections and

repairs of the seatbelts amounts to a failure to perform a duty owed to Plaintiff. (*Compl.,* ¶ 71.)

### E.    Plaintiff's Complaint Alleges Allstate's Fraud and Misrepresentation with Particularity.

Federal Rule 9(b) requires, "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally."  It is well established that, even as

to allegations that are required to be plead with specificity, Plaintiff is not required to prove his

case at the pleadings stage or to present the evidence of the case in its complaint.  Rather, Plaintiff

must have an opportunity to seek discovery:

> "It is a principle of basic fairness that a plaintiff should have an
> opportunity to flesh out her claim through evidence unturned in discovery.
> Rule 9(b) does not require omniscience; rather the Rule requires that the
> circumstances of the fraud be pled with enough specificity to put
> defendants on notice as to the nature of the claim…[Rule 9(b)], however,
> requires only that the 'circumstances' of the fraud be pled with
> particularity, not the evidence of the case.  While 'circumstances may
> consist of evidence, the rule does not mandate the presentation of facts and
> evidence in a complaint.'"

*Michaels v. Antitrust Co.,* 848 F.2d 674, 680 & n.9 (6th Cir. 1988).  This is particularly so when,

as in this case, the necessary information is uniquely within the defendants' control.  See *e.g.,*

-14-

*Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1439 (9th Cir. 1987) (while "allegations of fraud based on information and belief usually do not satisfy the degree of particularity required under Rule 9(b)." "the rule may be relaxed as to matters peculiarly within the opposing party's knowledge").

"In ruling upon a motion to dismiss under Rule 9(b) for failure to plead fraud 'with particularity,' a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8. Rule 8 requires a 'short and plain statement of the claim,' and calls for 'simple, concise, and direct' allegations." *Michaels v. Antitrust Co., supra,* 848 F.2d at 679.

Plaintiff met this standard. Defendant claims that Plaintiff fails to properly allege who, what, when, where and how Allstate committed fraud. However, Plaintiff's Complaint includes numerous specific allegations of who, what, when, where and how Allstate defrauded their insured.

"When" is set forth in paragraph 75 as "all relevant times" within the class period. (See *Compl.,* ¶ 75.) "What" is Allstate's false representations to the general public and its insured that Allstate would completely restore their post-collision Allstate-insured vehicles despite their uniform and company-wide scheme to refuse to underwrite the post-collision inspection and repair of seatbelts. (*Comp.,* ¶¶ 75, 76.) Said representations were made with the intent and purpose of retaining Plaintiff as policyholders and avoiding the expense and trouble of underwriting the necessary repairs to the insured's Allstate-insured vehicles. (*Compl.,* ¶ 78.) Plaintiff, to his detriment, reasonably relied upon said representations and purchased an insurance policy from Allstate. After his vehicle was involved in a collision, Plaintiff further relied on Allstate's misrepresentations by continuing to drive an allegedly restored vehicle that actually contained possibly life-threatening defects. (*Compl.,* ¶ 77.)

-15-

1    Furthermore, Allstate's well-worn slogan was: "You're in good hands with Allstate" and

2    throughout their materials Allstate assured its policyholders that although "accidents happen,"

3    their policyholders "continue to feel the safety Allstate provided from the beginning." (*Compl.*, ¶

4    27.)  While, at the same time, Defendants wrongfully instituted a corporate-wide policy refusing

5    to replace or inspect seatbelts in post-collision vehicles.  (*Compl.*, ¶ 26.)

6

7    **F.    Plaintiff's Complaint Properly Alleges that Defendants' Uniform Policy of
        Refusing to Inspect and Replace Post-Collision Seatbelts Constitutes an
8        Unfair Business Practice.**

9    "Section 17200 is not confined to anticompetitive business practices, but is also directed

10   toward the public's right to protection from fraud, deceit, and unlawful conduct.  Thus, California

11   courts have consistently interpreted the language of 17200 broadly." *Community Assisting*

12   *Recovery, Inc. v. Aegis Security Insurance Co.*, 92 Cal.App.4th 866, 891 (2001).  "The statute

13   imposes strict liability.  It is not necessary to show that the defendant intended to injure anyone.

14   Under Business and Professions Code section 17204, an action under the UCL may be brought by

15   
16   any person acting for the interests of itself…or the general public."  *Id.*

17   "A business practice is "unfair," "when it offends an established public policy or when the

18   practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."

19   *Id.* at 891 citing *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal.App.3d 509, 530

20   (1984).  The courts recognize "that unfair competition statutes have always been framed in

21   'broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable

22   
23   new schemes which the fertility of man's invention would contrive." *Community Assisting*

24   *Recovery, Inc. v. Aegis Security Insurance Co.*, *supra*, 92 Cal.App.4th at 894-95.  "What is unfair

25   or fraudulent, unlike unlawfulness, is a question of fact, which involves an equitable weighing of

26   all the circumstances, a process which usually precludes the court from sustaining a demurrer."

27   *Id.*

28

-16-

Defendants engaged in unfair practices by representing to their insureds and the general public that they would restore post-collision vehicles to their pre-collision, preaccident safe condition, despite their development and implementation of a uniform policy to avoid underwriting the inspection and replacement of seatbelts in post-collision vehicles. (*Compl., ¶¶ 81(A) and (B).*) In addition, Defendants unreasonably exerted their considerable influence to prevent third party auto-repair shops from inspecting and repairing the seatbelts in their insured vehicles. (See *Compl., ¶¶ 81(C), 83 - 84.*) As a result of Allstate's unreasonable refusal to inspect and replace post-collision seatbelts, Allstate's insured are driving vehicles that pose a risk of significant injury and/or death in a subsequent collision despite Allstate's promise that "You are in good hands with Allstate." (See *Compl., ¶ 85.*) Allstate's uniform policy of refusing to underwrite the inspection and/or replacement of post-collision seatbelts places its insured in danger. (See *Compl., ¶ 86.*) This practice is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

**G.    Plaintiff's Complaint Alleges Allstate's Activities Violate the Racketeer Influenced and Corrupt Organizations Statutes**

To state a claim under §§ 1962(a), (b) and (c), a plaintiff must plead facts establishing: (1) that the defendant; (2) through the commission of predicate criminal acts which constitute a pattern of racketeering activity; (3) directly or indirectly invests in, or maintains an interest in, or participates in; (4) an enterprise. See *Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 482 (1985).

RICO grants a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." Plaintiff's Complaint alleges that Allstate constitutes an "enterprise" because it is a corporation that is and continues to be engaged in activities that affect interstate commerce. (*Compl., ¶ 90.*) The enterprise, Allstate, is a nationally renowned insurer, failed to honor its obligation to restore Plaintiff's vehicle to its pre-

-17-

loss condition.  (*Compl.,* ¶ 91.)  The enterprise implemented this uniform policy by using its

considerable leverage to prevent third party auto-repair shops from inspecting or repairing

Allstate-insured post-collision vehicles and by refusing to replace seatbelts following a collision.

(See *Compl.,* ¶¶ 81, 83-84, 91.)

**H.    Defendants Allstate Insurance Company and Allstate Property and Casualty Insurance Company are Proper Defendants**

Allstate Property and Casualty Insurance Company, Allstate Indemnity Insurance, and

Allstate Insurance Company, are part and parcel of the same corporation, the Allstate

Corporation.  All claims in the complaint were made against all three companies as

"ALLSTATE" collectively due to their intertwined relationship, so while no allegations in the

Complaint were confined to any one company, all three companies are subject to Plaintiff's

claims of breach of contract, bad faith, breach of the implied covenant of good faith and fair

dealing, fraud/misrepresentation, unfair competition, and racketeer influenced and corrupt

organizations.  To the extent that plaintiff had a contractual relationship with any of these

companies it binds all of these companies since each overlaps in its construction of the

corporation and the corporate policies and procedures for writing and handling insurance claims

against "ALLSTATE."  *Tran v. Farmers Group, Inc.,* 104 Cal.App.4th 1202 (2002).  Since it's

beginning in 1931 Allstate has branched out into different subsidiaries but the automobile

insurance companies have stayed bundled.  Without appropriate discovery it would be impossible

to ascertain which of the three companies are responsible for each aspect of Allstate's insurance

policies, underwriting, claims processing, and final claims denials.

**I.    Though Plaintiff's Complaint Properly Alleges Each and Every Cause of Action Therein, If the Court Finds any Claim Lacking Plaintiff Requests Leave to Amend**

To the extant any portion of Defendants' Motion is granted, it should be granted with

leave to amend to cure any defect this Court determines to exist.  Leave to amend is to be freely

-18-

given where, as here, Plaintiff contends that he could, if need be, allege even more facts than are already contained in the lengthy Complaint. Fed R. Civ. Proc 15(a). Where plaintiff's complaint should be dismissed for failure to state a claim, the plaintiff should be given "at least one chance to amend the complaint: under Fed. R. Civ. Proc. 15(a) before dismissing the action with prejudice. *Bank v. Pitt*, 923 F.2d 1108, 1112 (11th Cir. 1991).

**V.**

**CONCLUSION**

Plaintiff asserts that his allegations are adequate under Rule 8 and Rule 9 pleading standards. Plaintiff's Complaint sufficiently pleads Defendants' breach of contract by alleging Defendants failure to restore Plaintiff's vehicle to its pre-loss condition by refusing to underwrite the inspection and/or replacement of Plaintiff's seatbelts despite auto manufacturer's mandate that seatbelts that activate during a collision must be inspected and/or repaired as a safety precaution because seatbelts that are activated in collisions pose a significant risk of substantial injury or death. Plaintiff's Complaint further alleges sufficient facts to show that Defendants breached the implied covenant of good faith and fair dealing and acted in bad faith by refusing to underwrite the inspection and/or replacement of Plaintiff's seatbelts. This corporate-wide policy of denying the underwriting of inspection and/or repair of post-collision seatbelts constitutes fraud and an unfair business practice which Plaintiff has properly alleged.

In addition, the appraisal process is not a precondition applicable to Defendant's corporate-wide refusal to cover the inspection and/or replacement of post-collision seatbelts. Even if the appraisal process was applicable, Defendants waived their right to invoke the appraisal process by waiting over two years before invoking their right and Plaintiff, in fear of his safety, has replaced his seatbelts rendering any appraisal moot. Therefore, Plaintiff respectfully requests the Court deny Defendants' Motion to Dismiss and their request for a stay pending the

-19-

1    appraisal process. Alternatively, Plaintiff requests leave to amend to cure any defect this Court

2    determines to exist.

3    DATED: June 3, 2008                          YORK LAW CORPORATION

4

5                                                By:

6                                                    WENDY C. YORK

7                                                    JENNIFER B. EULER
                                                     Attorneys for Plaintiff and the Class
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STAY

1    **COURT:**        United States District Court for the Northern District of California

      **CASE NO.**       C 08-01236 SBA

2    **CASE NAME:**    Robert Watts v. Allstate Indemnity Company, et al.

3

### PROOF OF SERVICE

4

5      I am a citizen of the United States, employed in the County of Sacramento, State of California. My business address is 1111 Exposition Boulevard, Building 500, Sacramento CA 95815. I am over the age of 18 years and not a party to the above-entitled action.

6

7      I am readily familiar with York Law Corporation's practice for collection and processing of correspondence for mailing with the United States Postal Service. Pursuant to said practice, each document is placed in an envelope, the envelope is sealed, the appropriate postage is placed thereon and the sealed envelope is placed in the office mail receptacle. Each day's mail is collected and deposited in a U.S. mailbox at or before the close of each day's business. (CCP Section 1013a(3) or Fed.R.Civ.P.5(a) and 4.1; USDC (E.D. CA) L.R. 5-135(a).)

8

9

10

11      On June 3, 2008, I caused the within, **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STAY,** to be served via

12

13    **XX    By E-Mail / Electronic Transmission--**

      Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission,

14       I caused the documents to be sent to the persons at the e-mail addresses listed below: I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful:

15

16    Sonia Martin, Esq.

      Sonnenschein Nath & Rosenthal LLP

17    525 Market St 26FL

      San Francisco, CA, 94105-2708

18

19    Mark Hanover

      Sonnenschein Nath & Rosenthal, LLP

20    7800 Sears Tower

      233 South Wacker Dr.

21    Chicago, IL 60606-6404

      (VIA U.S. MAIL)

22

23      I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that this Declaration is executed on June 3, 2008 at Sacramento, California. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

24

25

26                     *Kristine McFadden*

                   Kristine McFadden

27

28