1  MARK HANOVER (*Pro Hoc Vice*)
   SONIA MARTIN (State Bar No. 191148)
2  SONNENSCHEIN NATH & ROSENTHAL LLP
   2121 North California Blvd., Suite 800
3  Walnut Creek, CA 94596
   Telephone: (925) 949-2600
4  Facsimile: (925) 949-2610
   Email:      smartin@sonnenschein.com
5              mhanover@sonnenschein.com

6  Attorneys for Defendants
   ALLSTATE INDEMNITY COMPANY,
7  ALLSTATE INSURANCE COMPANY, and
   ALLSTATE PROPERTY AND CASUALTY
8  INSURANCE COMPANY

9

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13  ROBERT WATTS, on behalf of himself          No. CV 08 1236 JL
    individually and all others similarly
14  situated,
                                                ALLSTATE INSURANCE COMPANY'S
15            Plaintiffs,                       RESPONSE TO COURT'S JUNE 17, 2008
                                                ORDER REQUIRING "MEET AND
16       vs.                                    CONFER" RE ALLSTATE'S MOTION TO
                                                DISMISS OR, ALTERNATIVELY, TO
17  ALLSTATE INDEMNITY COMPANY, an              STAY
    Illinois corporation; ALLSTATE
18  INSURANCE COMPANY, an Illinois
    corporation; ALLSTATE PROPERTY
19  AND CASUALTY INSURANCE
    COMPANY, an Illinois corporation; and
20  DOES 1 through 100, inclusive,

21            Defendants.

22

23       Allstate Insurance Company hereby certifies that the parties have conferred regarding the

24  issues identified in the Court's June 17, 2008 Order relating to defendants' motion to dismiss or

25  alternatively, to stay pending appraisal. Specifically, plaintiff's counsel sent Allstate's counsel a

26  June 19, 2008 "meet and confer" letter (a copy of which is attached), outlining his position on

27  the issues raised by the Court's Order. Counsel thereafter participated a telephone conference

28  on July 1, 2008 to discuss those issues. At the end of that conference call, plaintiff's counsel

CASE NO. CV 08 1236 JL                                    ALLSTATE'S RESPONSE TO COURT'S
                                                          ORDER REQUIRING "MEET AND CONFER"

stated they would prepare a further meet and confer letter to defendants.

To date, Allstate's counsel has not received that letter from plaintiff's counsel, and will have insufficient time to consider and respond to it prior to the July 11, 2008 deadline for the parties to update the Court regarding the status of their "meet and confer" efforts. In addition, although Allstate's counsel forwarded plaintiff's counsel a proposed format for a stipulation concerning the parties' meet and confer efforts on July 1, 2008, Allstate's counsel has not received any response from plaintiff's counsel on the issue. Accordingly, Allstate hereby supplies the Court with a summary of the parties positions on the issues raised in the Court's Order. For the Court's reference, Allstate has quoted verbatim plaintiff's "meet and confer" letter setting forth her position concerning the topics raised by the Court's June 17, 2008 Order, and then has set forth its position in response.

**Issue 1:** **"To the extent Allstate claims Watts has not pled a loss or actual damages, whether an FAC would be appropriate."**

Plaintiff's Position (Quoted From His June 19, 2008 Meet and Confer Letter):

"As you know, it is plaintiff's position that he alleged actual damages to his seatbelts in the original complaint. The complaint states, "[t]he impact in an accident reduces the effectiveness of a seat belt permanently because it elongates the webbing and it may damage or render inoperable other parts of the seat belt assembly including the retractor locking mechanisms, the anchors, and/or the tensioners. Problems such as excessive slack, broken locking mechanisms, or faulty tensioners leave the seatbelt incapable of providing protection to the occupants of a vehicle and may actually cause serious injuries in the event of an accident." *Compl.* ¶ 15. The complaint further alleges, "Following the accident, the seat belts in plaintiffs vehicle were not in the same physical, condition they were in at the time of the accident/loss and needed to be inspected, repaired, and/or replaced." *Compl.* ¶ 40.

However, in addition to the allegations pled in the original complaint, it is plaintiff's position that he can amend the complaint to further allege actual damages to his seatbelt/vehicle. These facts would include, but not limited to: the seatbelt and its component parts arc considered damaged and will be less effective in a second crash per the auto manufacturer; the

-2-

1  Owner's Manual requires replacement of seatbelts and seatbelt tensioners that have been worn
2  during a crash."
3  Defendant's Position:
4  As explained in Allstate's motion, plaintiff has not alleged that the seatbelt in his vehicle
5  sustained actual damage, or "direct physical loss," as required for coverage under the policy.
6  Plaintiff now contends that he can amend his complaint to allege that "the seatbelt and its
7  component parts are considered damaged and will be less effective in a second crash per the
8  auto manufacturer; the Owner's Manual requires replacement of seatbelts and seatbelt tensioners
9  that have been worn during a crash." Contrary to plaintiff's assertions, however, such
10 allegations would not connote "direct physical loss." Plaintiff is seeking to circumvent the
11 policy's requirement of "direct physical loss" by asserting his seatbelts should be deemed
12 damaged based on his vehicle's "Owner's Manual. Coverage under Allstate's policy, however,
13 does not depend on whether an Owner's Manual states that a particular part should be replaced
14 under certain circumstances. Because plaintiff is unable to allege direct physical loss to the
15 seatbelts in his vehicle, there is no basis for permitting him to amend his complaint, and
16 Allstate's motion should be granted.

17 **Issue 2:** **"Whether the right to an appraisal expressed in plaintiff's policy documents, and which Allstate claims functions as an arbitration provision, may lawfully be applied under California law as a class arbitration waiver."**
18

19 Plaintiff's Position (Quoted From His June 19, 2008 Meet and Confer Letter):
20 "The appraisal, provision in plaintiff's Insurance Policy does not constitute a valid
21 arbitration agreement because it fails to meet the standards set forth for arbitration agreements
22 under California law. Under California law an arbitration agreement must: (1) provide for
23 neutral arbitrator; (2) provide for more than minimal discovery; (3) require arbitrator to issue
24 written decision; (4) provide for same remedies that would otherwise be available in court; and
25 (5) not require the party to bear costs unique to arbitration. *Lucas v. Gund, Inc.* (C.D.Cal.2006)
26 450 F.Supp.2d 1125. The "Right to Appraisal" provision in plaintiff's insurance policy does not
27 satisfy these requirements. Nor is the provision clear and conspicuous. The provision is on the
28 21st page of the insurance policy and does not adequately inform the policyholder that he/she is

giving up their right to bring a claim against Allstate in a court of law."

<u>Defendant's Position:</u>

Although appraisal clauses are enforced in a manner similar to arbitration agreements, appraisal claims and arbitration agreements are not the same. The most notable distinction is that an appraisal clause merely provides that a *particular issue* will be resolved through an appraisal, namely the "amount of the loss." In contrast, arbitration agreements generally provide that *all issues* arising under a particular contract will be resolved by binding arbitration. Hence, the two types of clauses are significantly different in scope, although they are enforced in similar ways by courts.

Here, Allstate has not sought appraisal of all issues relating to its policy. Allstate has not taken the position that plaintiff's class action allegations are subject to appraisal, nor could it. Instead, Allstate has merely sought appraisal of the amount of plaintiff's loss. Accordingly, the concept of a class arbitration waiver has no application here.

**Issue 3:** **"To the extent Allstate claims Watts has failed to plead fraud with specificity, whether an FAC would be appropriate."**

<u>Plaintiff's Position (Quoted From His June 19, 2008 Meet and Confer Letter):</u>

"Although Plaintiff believes the complaint pleads fraud with the requisite specificity, plaintiff is willing to amend the complaint to allege further facts that show that Allstate made representations that they did not intend to honor."

<u>Defendant's Position:</u>

As explained in Allstate's motion, plaintiff has failed to allege fraud with the requisite specificity. Although plaintiff contends he could amend the complaint to allege additional facts supporting this claim, he has failed to identify any such facts. Accordingly, Allstate's motion should be granted.

**Issue 4:** **"To the extent Allstate claims Watts has failed to plead unfair competition, under section 17200 of the California Business and Professions Code, whether an FAC would be appropriate."**

<u>Plaintiff's Position (Quoted From His June 19, 2008 Meet and Confer Letter):</u>

"It is plaintiff's position that the complaint sufficiently pleads facts sufficient to state a

-4-

claim for violation of California Business & Professions Code § 17200."

Defendant's Position:

As explained in Allstate's motion, plaintiff has failed to allege facts sufficient to state a claim for violation of California Business and Professions Code section 17200. Plaintiff has identified no additional facts that he could allege to support this claim. Instead, he contends his Section 17200 claim is sufficient as pled. Accordingly, there is no basis for permitting plaintiff leave to amend his section 17200 claim.

**Issue 5:** "To the extent Allstate claims Watts has failed to plead certain specific information related to a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, whether an FAC would be appropriate."

Plaintiff's Position (Quoted From His June 19, 2008 Meet and Confer Letter):

"It is plaintiff's position that the complaint sufficiently alleges facts that show Allstate violated the RICO statutes by "using its considerable leverage to prevent third party auto-repair shops from inspecting or repairing ALLSTATE-insured post-collision vehicles." *Compl.*, ¶91. It is clear from the complaint that defendant Allstate associated with the third party auto-repair shops and prohibited them from replacing the seatbelts in Allstate insured vehicles. In addition, the complaint alleges, "ALLSTATE adopted uniform policies and practices that actually or constructively notified ALLSTATE affiliated auto-repair shops that ALLSTATE was unwilling to authorize the post-collision repair or inspection of seat belts and/or seat belt parts in plaintiff and Class Members' ALLSTATE-insured vehicles. ALLSTATE further refused to authorize payment or pay for the inspection, repair, or replacement of seat belts or seat belt parts by auto-repair shops during the Class Period." *Compl.*, ¶22. These acts by Allstate furthered their fraud upon their insureds and supported Allstate in breaching their contractual duties."

Defendant's Position:

As explained in Allstate's motion, plaintiff has failed to allege the elements of a RICO

Allstate's motion should be granted.

**Issue 6:** **"To the extent Allstate claims certain defendants should be dismissed as uninvolved in this matter, whether an FAC or a stipulation would be appropriate."**

<u>Plaintiff's Position (Quoted From His June 19, 2008 Meet and Confer Letter):</u>

"All claims in the complaint are made against all three defendants due to their intertwined relationship. Without appropriate discovery it is impossible to ascertain which of the three companies are responsible for each aspect of Allstate's insurance policies, underwriting, claims processing, and final claims denials. After conducting sufficient discovery, plaintiff is happy to readdress the issue and dismiss those defendants who are not involved in the underwriting, claims processing, and final claims denials of Allstate's auto insurance policies. However, it is too early to address this issue at the pleading stage when absolutely no discovery has been conducted."

<u>Defendant's Position:</u>

As explained in Allstate's motion, plaintiff has no basis on which to sue Allstate Insurance Company and Allstate Property and Casualty Insurance Company. Because he has no contractual privity with these defendants, plaintiff's suit again them is improper. In response, plaintiff asserts he does not know whether there is a basis for his claims against Allstate Insurance Company and Allstate Property and Casualty Insurance Company and, on that basis, contends he should be permitted to pursue discovery to determine if one exists.

Plaintiff has put the cart before the horse. Rule 11 requires that a plaintiff have a basis for suing a defendant before he files suit. Because plaintiff has failed to identify any basis of which he is currently aware pursuing these entities, he should not be permitted to maintain a suit against them.

1 | Dated: July 10, 2008

SONNENSCHEIN NATH & ROSENTHAL LLP

By: _____/s/_____
MARK HANOVER

Attorneys for Defendants
ALLSTATE INDEMNITY COMPANY,
ALLSTATE INSURANCE COMPANY, and
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY

27301961v2

06/19/2008  14:02    9166434680                YORK LAW CORP                        PAGE  02/06

# YORK
### LAW CORPORATION

June 19, 2008

**<u>VIA FACSIMILE & U.S. MAIL</u>**
(415) 882-0300

Sonia Martin, Esq.  
Sonnenschein Nath & Rosenthal LLP  
525 Market Street, 26th Floor  
San Francisco, CA 94105-2709

Mark Hanover  
Sonnenschein Nath & Rosenthal LLP  
7800 Sears Tower  
233 South Wacker Dr.  
Chicago, IL 60606

Re: *Watts v. Allstate, et al.*

Dear Counsel:

We would like to meet and confer with you and schedule a telephone conference call pursuant to the Court's Order of June 17th. It is our hope that the parties can reach an agreement on at least some of the issues. This letter is written in hopes to prepare the parties on the legal/factual issues framed by the Court for our future telephone conference call.

1) **Actual Damages Alleged**

As you know, it is Plaintiff's position that he alleged actual damages to his seatbelts in the original complaint. The complaint states, "[t]he impact in an accident reduces the effectiveness of a seat belt permanently because it elongates the webbing and it may damage or render inoperable other parts of the seat belt assembly including the retractor locking mechanisms, the anchors, and/or the tensioners. Problems such as excessive slack, broken locking mechanisms, or faulty tensioners leave the seatbelt incapable of providing protection to the occupants of a vehicle and may actually cause serious injuries in the event of an accident." *Compl.* ¶ 15. The complaint further alleges, "Following the accident, the seat belts in Plaintiff's vehicle were not in the same physical condition they were in at the time of the accident/loss and needed to be inspected, repaired, and/or replaced." *Compl.* ¶ 40.

However, in addition to the allegations pled in the original complaint, it is Plaintiff's position that he can amend the complaint to further allege actual damages to his seatbelt/vehicle. These facts would include, but not limited to: the seatbelt and its component parts are considered damaged and will be less effective in a second crash per

1111 EXPOSITION BOULEVARD, BLDG. 500, SACRAMENTO, CA 95815  
T 916.643.2200   F 916.643.4685   www.yorklawcorp.com

PAGE 2/6 * RCVD AT 6/19/2008 4:03:34 PM [Central Daylight Time] * SVR:GMTPRF01/22 * DNIS:4781 * CSID:9166434680 * DURATION (mm-ss):03-08

FAIRFIELD OFFICE

Sonia Martin, Esq.
Mark Hanover, Esq.
Sonnenschein Nath & Rosenthal LLP
Page 2

the auto manufacturer; the Owner's Manual requires replacement of seatbelts and seatbelt tensioners that have been worn during a crash.

### 2) Defendant's Assertion Of The Appraisal Process

As discussed in our letter to you dated May 16, 2008 and our Opposition to the Motion to Dismiss, Plaintiff's position is that the appraisal process is not applicable to the instant dispute for the reasons outlined below. In addition, it is Plaintiff's position that the appraisal provision in Plaintiff's insurance contract does not constitute a valid arbitration agreement and cannot function as a Class Arbitration Waiver. We have detailed Plaintiff's position below.

#### a. Plaintiff Replaced His Seatbelts, Thus Defendant's Assertion of The Appraisal Process Is Moot

Any appraisal process Defendants seek now to invoke is moot because Plaintiff already replaced the seatbelts in his vehicle after Allstate declined to replace them, rendering an appraisal useless. Certainly Plaintiff can amend the Complaint to provide these additional facts.

Based on the above, it is Plaintiff's position that the appraisal process does not apply to this case. Allstate already <u>declined</u> coverage, the seatbelts were subsequently replaced at the insured's expense and Plaintiff filed the instant complaint.

#### b. Defendants' Appraisal Provision Does Not Constitute a Valid Arbitration Agreement.

The appraisal provision in Plaintiff's Insurance Policy does not constitute a valid arbitration agreement because it fails to meet the standards set forth for arbitration agreements under California law. Under California law an arbitration agreement must: (1) provide for neutral arbitrator; (2) provide for more than minimal discovery; (3) require arbitrator to issue written decision; (4) provide for same remedies that would otherwise be available in court; and (5) not require the party to bear costs unique to arbitration. *Lucas v. Gund, Inc.* (C.D.Cal.2006) 450 F.Supp.2d 1125. The "Right to Appraisal" provision in Plaintiff's insurance policy does not satisfy these requirements. Nor is the provision clear and conspicuous. The provision is on the 21st page of the insurance policy and does not adequately inform the policyholder that he/she is giving up their right to bring a claim against Allstate in a court of law.

#### c. The Insurance Policy's Appraisal Clause is Not an Arbitration Agreement and Cannot Function as a Class Arbitration Waiver

It is Plaintiff's position that the appraisal provision is not a valid arbitration agreement and as such cannot and does not function as a class arbitration waiver. However,

Sonia Martin, Esq.
Mark Hanover, Esq.
Sonnenschein Nath & Rosenthal LLP
Page 3

assuming *arguendo* that the appraisal provision was determined to be a valid arbitration agreement, it does not function as a class arbitration waiver. Under California law, "an arbitration agreement that is silent as to class-wide arbitration is amenable to such procedure." *Blue Cross of California v. Superior Court*, 67 Cal.App.4th 42, 62-65 (1999); *Keating v. Superior Court*, 31 Cal. 3d 584, 614 (1984).

### d. Appraisal Does Not Apply When Allstate Declined to Replace Plaintiff's Seatbelts

The appraisal process does not apply to declinations of coverage. It merely applies to disputes over the amount of the repairs. In this case, Allstate claimed that their insurance policy did not require them to replace the seatbelts and therefore <u>declined</u> to do so. Allstate did not dispute an estimated amount of how much the replacements would cost. These facts can be more clearly set out in an Amended Complaint. Thus, this is a coverage matter and not a matter that can be resolved by the appraisal process.

### e. Defendants Waived Their Right to Invoke the Appraisal Process

It is Plaintiff's position that Defendants have waived their right to invoke the appraisal process by their unreasonable delay in choosing to do so. An insurance company cannot merely wait its own time to make a demand for appraisal, but must make it "in a seasonable and reasonable time." *International Service Ins. Co. v. Brodie*, 337 S.W.2d 414, 415 (1960). Where an agreement does not specify a time within which a demand for appraisal may be made, a "reasonable time" in view of all the circumstances will be imposed." Couch on Insurance Third Edition (15 Couch on Ins. § 211:44; *Spear v. California State Auto. Assn.*, 2 Cal. 4th 1035 (1992). "An appraisal clause lacking a specific time for demand to be made to require that the demand be made within a 'reasonable' time." *Terra Industries, Inc. v. Commonwealth Insurance Company of America*, 951 F.Supp. 581, 597 (N.D. Iowa 1997).

The facts setting forth Defendants' waiver can more clearly set forth in an Amended Complaint. Defendants waited over two years before invoked their "right to appraisal" and only invoked that right after Plaintiff filed his Complaint. A two year delay between declination and demand for appraisal is unreasonable and therefore, it is Plaintiff's position that Defendants waived their right to appraisal.

### f. Plaintiff Alleges That Defendant Allstate Forfeited Its Right to Appraisal By Acting in Bad Faith

Plaintiffs would seek to amend the Complaint and will allege that Defendants forfeited their right to arbitration by failing to inform Plaintiff of his right to appraisal when they denied his request to replace his seatbelts. "The insurer's implied duty of good faith and fair dealing include[s] a responsibility to inform its insureds of their rights under the policy's arbitration clause" and the insurer breached the covenant of good faith and fair

Sonia Martin, Esq.
Mark Hanover, Esq.
Sonnenschein Nath & Rosenthal LLP
Page 4

dealing by attempting to compel arbitration after subscribers filed suit against it for denial of claims. *Davis v. Blue Cross of Northern California* (1979) 25 Cal.3d 418, 428.

Allstate failed to inform Plaintiff of his right to invoke the appraisal process which amounted to an implied misrepresentation that he had no recourse but to accept Allstate's determination. Then, after Plaintiff filed a complaint, Allstate attempted to invoke the appraisal process. It is Plaintiff's position that Allstate's actions were conducted in bad faith. They informed Plaintiff of the appraisal provision only when it benefitted Allstate despite its duty to give the insured's interest as much consideration as it does its own.

### 3) Fraud Cause Of Action

Although Plaintiff believes the complaint pleads fraud with the requisite specificity, Plaintiff is willing to amend the complaint to allege further facts that show that Allstate made representations that they did not intend to honor.

### 4) Unfair Competition Cause Of Action

It is Plaintiff's position that the complaint sufficiently pleads facts sufficient to state a claim for violation of California Business & Professions Code § 17200.

### 5) RICO Cause Of Action

It is Plaintiff's position that the complaint sufficiently alleges facts that show Allstate violated the RICO statutes by "using its considerable leverage to prevent third party auto-repair shops from inspecting or repairing ALLSTATE-insured post-collision vehicles." *Compl.*, ¶91. It is clear from the complaint that Defendant Allstate associated with the third party auto-repair shops and prohibited them from replacing the seatbelts in Allstate insured vehicles. In addition, the complaint alleges, "ALLSTATE adopted uniform policies and practices that actually or constructively notified ALLSTATE affiliated auto-repair shops that ALLSTATE was unwilling to authorize the post-collision repair or inspection of seat belts and/or seat belt parts in Plaintiff and Class Members' ALLSTATE-insured vehicles. ALLSTATE further refused to authorize payment or pay for the inspection, repair, or replacement of seat belts or seat belt parts by auto-repair shops during the Class Period." *Compl.*, ¶22. These acts by Allstate furthered their fraud upon their insureds and supported Allstate in breaching their contractual duties.

### 6) Dismissal of Allstate Insurance Company and Allstate Property and Casualty Insurance Company

All claims in the complaint are made against all three Defendants due to their intertwined relationship. Without appropriate discovery it is impossible to ascertain which of the three companies are responsible for each aspect of Allstate's insurance policies, underwriting, claims processing, and final claims denials. After conducting sufficient

Sonia Martin, Esq.
Mark Hanover, Esq.
Sonnenschein Nath & Rosenthal LLP
Page 5

discovery, Plaintiff is happy to readdress the issue and dismiss those defendants who are not involved in the underwriting, claims processing, and final claims denials of Allstate's auto insurance policies. However, it is too early to address this issue at the pleading stage when absolutely no discovery has been conducted.

We welcome a conference call to discuss these matters further. We are available for a conference call on Friday June 20 at 11:00 am. We could also be available on June 27th. If you have any questions, please do not hesitate to contact our office.

Very truly yours,

Wendy C. York

WCY:kmm